# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MISSOURI

| | | |
|---|---|---|
| WESTERN HERITAGE INSURANCE COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 4:13-CV-00034-DGK |
| | ) | |
| PARRISH LOVE d/b/a ASPHALT WIZARDS, and FUN SERVICES OF KANSAS CITY, INC., | ) | |
| | ) | |
| Defendants. | ) | |

## FUN SERVICES OF KANSAS CITY, INC.'S BRIEF IN OPPOSITION TO WESTERN HERITAGE'S MOTION FOR SUMMARY JUDGMENT

## Table of Contents

INTRODUCTION ........................................................................................................1

I.      SUMMARY OF MATERIAL UNDISPUTED FACTS ......................................1

II.     RESPONSE TO WHIC'S STATEMENT OF FACTS.........................................2

III.    ARGUMENT .......................................................................................................9

        A.      THE UNDERLYING ACTION TRIGGERS COVERAGE ...................9

        B.      WHIC WAIVED ITS COVERAGE DEFENSES ...................................9

        C.      WHIC CANNOT PROVE THAT COVERAGE EXCLUDED OR
                OTHERWISE PRECLUDED UNDER THE POLICIES.........................9

                1.      The "Violation of Statutes" Exclusion Does Not Obviate
                        WHIC's Coverage Obligations For The Conversion Claim........9

                2.      The "Deductible" Does Not Extinguish WHIC's Coverage
                        Obligation ...................................................................................15

                        a.      The Presence of the Deductible Neither Relieves
                                WHIC of Its Duty to Defend Nor of Its Duty to Pay......15

                        b.      The Deductible is Ambiguous .........................................17

                                i.      The Deductible Does Not Clearly and
                                        Ambiguously Apply Per Each Fax Sent .............17

                                ii.     In All Events, Both the Alleged TCPA Claim
                                        And the Alleged Conversion Claim Allow For
                                        A Potential Recovery in Excess of the Deductible
                                        Amount ..............................................................21

                3.      The "Prior Publication" Exclusion Does Not Eliminate
                        WHIC's Coverage Obligation.....................................................22

CONCLUSION.............................................................................................................24

## FEDERAL CASES

*Amerisure Mut. Ins. Co. v. Paric Corp.*, 2005 WL 2708873
(E.D. Mo. Oct. 21, 2005) ........................................................................................ *passim*

*Capitol Indem. Corp. v. Miles*, 978 F.2d 437 (8th Cir. 1992)........................................20

*Colbert County Hospital v. Bellefonte Ins. Co.*, 725 F.2d 651 (11th Cir. 1984) ............20

*Everett Assocs. Inc. v. Transcontinental Ins. Co.*, 56 F.Supp.2d 874
(N.D. Cal. 1999)..............................................................................................................23

*Hartford Acc. and Indem. Co. v. Beaver*, 466 F.3d 1289 (11th Cir. 2006) ....................11

*Home Ins. Co. of Illinois v. Spectrum Info. Tech.*, 930 F.Supp. 825 (E.D.N.Y. 1996)...18

*Howard v. Russell Stover Candies, Inc.*, 649 F.2d 620 (8th Cir. 1981)..........................17

*Missouri ex rel. Nixon v. American Blast Fax, Inc.*, 323 F.3d 649 (8th Cir. 2003)........21

*Muscemi v. Schwegmann Giant Super Markets*, 332 F.3d 339 (5th Cir. 2003)..............20

*Nationwide Mut. Ins. Co. v. Harris Med. Assoc., LLC*, -- F.Supp.2d --,
2013 WL 5341498 (E.D. Mo. Sept. 23, 2013)................................................................10

*North American Biologicals Inc. v. Illinois Employers Ins. Of Wausau*,
931 F.2d 839 (11th Cir. 1991) ..................................................................................19, 20

*Nutmeg Ins. Co. v. Employers Ins. Co. of Wausau*, 2006 WL 453235
(N.D. Tex. 2006)..............................................................................................................23

*Previews, Inc. v. California Union Ins. Co.*, 640 F.2d 1026 (9th Cir. 1981).................19

*Shapiro Sales Co. v. Alcoa, Inc.*, 2006 WL 2228987 (E.D. Mo. Aug. 3, 2006)..... *passim*

*Universal Underwriters Ins. Co. v. Lou Fusz Automotive Network, Inc.*,
300 F.Supp.2d 888 (E.D. Mo. Jan. 21, 2004) .........................................................11, 15

*Universal Underwriters Ins. Co. v. Lou Fusz Automotive Network, Inc.*,
401 F.3d 876 (8th Cir. 2005) .........................................................................................22

*U.S. Fidelity & Guar. Ins. Co. v. Commercial Union Midwest Ins. Co.*,
430 F.3d 929 (8th Cir. 2005) .........................................................................................16

## STATE CASES

*Acuity Ins. Co. v. Blackhawk Paving, Inc.*, Case No. 08 CH 35830
(Cir. Ct. of Cook Cty., Ill. Dec. 7, 2011) ........................................................................10

*Aetna Cas. & Sur. Co. v. Haas*, 422 S.W.2d 316 (Mo. 1968) ........................................17

*Allianz Ins. Co. v. Guidant Corp.*, 884 N.E.2d 405 (Ind. App. 2008) .....................15, 16

*Auto Club Inter-Ins. Exch. v. Medrano*, 83 S.W.3d 632 (Mo. App. 2002).......................9

*Beaumont-Gribin-Von Dyl Management Co. v. California Union Ins. Co.*,
63 Cal.App.3d 617, 134 Cal.Rptr. 25 (1976)...................................................................20

*Boston Gas Co. v. Century Indem. Co.*, 454 Mass. 337, 910 N.E.2d 290 (2009)...........15

*Burns v. Smith*, 303 S.W.3d 505 (Mo. 2010).............................................................9, 17

*City of Idaho Falls v. Home Indem. Co.*, 888 P.2d 383 (Idaho 1994) ...........................18

*City of Lee's Summit v. Missouri Public Entity Risk Management*, 390 S.W.3d 214
(Mo. App. 2012) .............................................................................................................11

*Columbia Cas. Co. v. HIAR Holdings LLC*, No. SC 93026, 411 S.W.3d 258,
2013 WL 4080770 (Mo. Aug. 13, 2013) ................................................................. *passim*

*Columbia Mut. Ins. Co. v. Cutter Industries, Inc.*, Case No. 08 MR 899
(Cir. Ct. for the 19th Jud. Cir., Lake Cty., July 29, 2011) ...............................................10

*Crossman v. Yacubovich*, 290 S.W.3d 775 (Mo. App. 2009).........................................17

*Custom Hardware Eng'g & Consulting, Inc. v. Assurance Co. of Am.*,
295 S.W.3d 557 (Mo. App. 2009) ..................................................................................11

*Farmland Indus., Inc. v. Republic Ins. Co.*, 941 S.W.2d 505 (Mo. banc 1997) .............17

*Fun Services v. Parrish Love d/b/a Asphalt Wizards*, Case No. 0816CV00064
(Jackson Co., Missouri) ...............................................................................................6, 8

*G.M. Sign, Inc. v. State Farm Fire & Casualty Co.*, Case No. 11 MR 315
(Cir. Ct. for the 19th Jud. Cir., Lake Cty., Aug. 30, 2011) .............................................10

*Green v. Markel Ins. Co.*, Case No. 09 MR 1373 (Cir. Ct. for the 19th Jud. Cir.,
Lake Cty., Sept. 28, 2012) ..................................................................................10, 12, 13

*Harleysville Mut. Ins. Co. v. Buzz Off Insect Shield, LLC*, 664 S.E.2d 317
(N.C. App. 2008) ...................................................................................................23

*Illinois Cas. Co. v. Bia, Inc.*, Case No. 09 MR 844
(Cir. Ct. for the 19th Jud. Cir., Lake Cty., Jan. 24, 2012)................................10

*Illinois Cas. Co. v. Wellington Homes, Inc.*, Case No. 09 MR 843
(Cir. Ct. for the 19th Jud. Cir., Lake Cty., Oct. 11, 2011) .............................10

*Ins. Corp. of Hanover v. Shelborne Assocs.*, 389 Ill.App.3d 795
(Ill. App. 2009) ...................................................................................................11

*Karen S. Little, LLC v. Drury Inns, Inc.*, 306 S.W.3d 577 (Mo. App. 2010) ............8, 21

*Keck v. American Family Mut. Ins. Co.*, 299 S.W.3d 63 (Mo. App. 2009)...................11

*Kirk King, King Construction v. Continental Western Ins. Co.*, 123 S.W.3d 259
(Mo. App. 2003) .................................................................................................17

*Lexington Ins. Co. v. Lexington Healthcare Group, Inc.*, 68 A.2d 1121
(Conn. 2013) ...............................................................................................15, 16

*McCormack Baron Mgmt. Serv., Inc. v. Am. Guar. & Liab. Ins. Co.*, 989 S.W.2d 168
(Mo. 1999) ..........................................................................................................17

*New York State Thruway Authority v. KTA-Tator Engineering Svcs., P.C.*,
78 A.D. 1566, 913 N.Y.S.2d 438 (N.Y. A.D. 2010)........................................16

*Nicor, Inc. v. Assoc. Elec. And Gas Ins. Svcs. Ltd.*, 223 Ill.2d 407 (2006)...................13

*Niswonger v. Farm Bur. Town & Country Ins. Co. of Missouri*, 992 S.W.2d 308
(Mo. App. 1999) .................................................................................................13

*Pekin Ins. Co. v. XData Solutions, Inc.*, 2011 IL App (1st) 102769
(Ill. App. 2011) ...................................................................................................11

*Penzer v. Transportation Ins. Co.*, 29 So.3d 1000 (Fla. 2010)......................................20

*Shelter Mut. Ins. Co. v. Ballew*, 203 S.W.3d 789 (Mo. App. 2006) ..............................23

*Superior Equip. Co. v. Md. Cas. Co.*, 986 S.W.2d 477 (Mo. App. 1998) .....................17

*Terra Nova Ins. Co. v. Fray-Witzer*, 869 N.E.2d 565 (Mass. 2007)........................18, 20

*Truck Ins. Exchange v. Prairie Framing, LLC*, 162 S.W.3d 64
(Mo. App. 2005) ........................................................................................11, 15, 17

*Unigard Ins. Co. v. United States Fidelity & Guaranty Co.*, 111 Idaho 891, 728 P.2d 780 (1986).................................................................................................19

*Valley Forge Ins. Co. v. Swiderski Elecs., Inc.*, 223 Ill.2d 352, 860 N.E.2d 307 (Ill. 2006)....................................................................................11, 22

*Westport Ins. Corp. v. Jackson Nat. Life Ins. Co.*, 387 Ill. App. 3d 408 (Ill. App. 2008) ....................................................................................................13

*Wilkinson & Son, Inc. v. Providence Washington Ins. Co.*, 124 N.J. Super. 466, 307 A.2d 639 (1973) ...............................................................................................19

## STATUTES, RULES, AND LEGISLATIVE HISTORY

47 U.S.C. § 227...............................................................................................6, 8

47 U.S.C. § 227(b)(3)(B) ...............................................................................8, 21

## OTHER PUBLICATIONS

137 Cong. Record S16205 (daily ed. Nov. 7, 1991)......................................................21

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI**

| | | |
|---|---|---|
| WESTERN HERITAGE INSURANCE | ) | |
| COMPANY, | ) | |
| | ) | |
|        Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.: 1:12-cv-00851 |
| | ) | |
| PARRISH LOVE d/b/a ASPHALT | ) | |
| WIZARDS, and FUN SERVICES OF KANSAS | ) | |
| CITY, INC., | ) | |
| | ) | |
|        Defendants. | ) | |

**FUN SERVICES OF KANSAS CITY, INC.'S BRIEF IN OPPOSITION
TO WESTERN HERITAGE'S MOTION FOR SUMMARY JUDGMENT**

## Table of Contents

INTRODUCTION ...................................................................................................1

I.     SUMMARY OF MATERIAL UNDISPUTED FACTS ......................................1

II.    RESPONSE TO WHIC'S STATEMENT OF FACTS........................................2

III.   ARGUMENT ....................................................................................................9

     A.    THE UNDERLYING ACTION TRIGGERS COVERAGE ...................9

     B.    WHIC WAIVED ITS COVERAGE DEFENSES ...................................9

     C.    WHIC CANNOT PROVE THAT COVERAGE EXCLUDED OR
          OTHERWISE PRECLUDED UNDER THE POLICIES ........................9

          1.    The "Violation of Statutes" Exclusion Does Not Obviate
               WHIC's Coverage Obligations For The Conversion Claim ........9

          2.    The "Deductible" Does Not Extinguish WHIC's Coverage
               Obligation ...............................................................................15

              a.    The Presence of the Deductible Neither Relieves
                    WHIC of Its Duty to Defend Nor of Its Duty to Pay ......15

              b.    The Deductible is Ambiguous ........................................17

                    i.    The Deductible Does Not Clearly and
                        Ambiguously Apply Per Each Fax Sent .............17

                    ii.    In All Events, Both the Alleged TCPA Claim
                        And the Alleged Conversion Claim Allow For
                        A Potential Recovery in Excess of the Deductible
                        Amount ...............................................................21

          3.    The "Prior Publication" Exclusion Does Not Eliminate
               WHIC's Coverage Obligation.....................................................22

CONCLUSION..................................................................................................24

## FEDERAL CASES

*Amerisure Mut. Ins. Co. v. Paric Corp.*, 2005 WL 2708873
(E.D. Mo. Oct. 21, 2005) ........................................................................................ *passim*

*Capitol Indem. Corp. v. Miles*, 978 F.2d 437 (8th Cir. 1992)........................................20

*Colbert County Hospital v. Bellefonte Ins. Co.*, 725 F.2d 651 (11th Cir. 1984) ............20

*Everett Assocs. Inc. v. Transcontinental Ins. Co.*, 56 F.Supp.2d 874
(N.D. Cal. 1999)................................................................................................................23

*Hartford Acc. and Indem. Co. v. Beaver*, 466 F.3d 1289 (11th Cir. 2006) ....................11

*Home Ins. Co. of Illinois v. Spectrum Info. Tech.*, 930 F.Supp. 825 (E.D.N.Y. 1996)...18

*Howard v. Russell Stover Candies, Inc.*, 649 F.2d 620 (8th Cir. 1981).........................17

*Missouri ex rel. Nixon v. American Blast Fax, Inc.*, 323 F.3d 649 (8th Cir. 2003)........21

*Muscemi v. Schwegmann Giant Super Markets*, 332 F.3d 339 (5th Cir. 2003)..............20

*Nationwide Mut. Ins. Co. v. Harris Med. Assoc., LLC*, -- F.Supp.2d --,
2013 WL 5341498 (E.D. Mo. Sept. 23, 2013)..................................................................10

*North American Biologicals Inc. v. Illinois Employers Ins. Of Wausau*,
931 F.2d 839 (11th Cir. 1991) ...................................................................................19, 20

*Nutmeg Ins. Co. v. Employers Ins. Co. of Wausau*, 2006 WL 453235
(N.D. Tex. 2006)...............................................................................................................23

*Previews, Inc. v. California Union Ins. Co.*, 640 F.2d 1026 (9th Cir. 1981).................19

*Shapiro Sales Co. v. Alcoa, Inc.*, 2006 WL 2228987 (E.D. Mo. Aug. 3, 2006)..... *passim*

*Universal Underwriters Ins. Co. v. Lou Fusz Automotive Network, Inc.*,
300 F.Supp.2d 888 (E.D. Mo. Jan. 21, 2004) ...........................................................11, 15

*Universal Underwriters Ins. Co. v. Lou Fusz Automotive Network, Inc.*,
401 F.3d 876 (8th Cir. 2005) ...........................................................................................22

*U.S. Fidelity & Guar. Ins. Co. v. Commercial Union Midwest Ins. Co.*,
430 F.3d 929 (8th Cir. 2005) ...........................................................................................16

# STATE CASES

*Acuity Ins. Co. v. Blackhawk Paving, Inc.*, Case No. 08 CH 35830
(Cir. Ct. of Cook Cty., Ill. Dec. 7, 2011) ....................................................................10

*Aetna Cas. & Sur. Co. v. Haas*, 422 S.W.2d 316 (Mo. 1968) .......................................17

*Allianz Ins. Co. v. Guidant Corp.*, 884 N.E.2d 405 (Ind. App. 2008) .....................15, 16

*Auto Club Inter-Ins. Exch. v. Medrano*, 83 S.W.3d 632 (Mo. App. 2002)......................9

*Beaumont-Gribin-Von Dyl Management Co. v. California Union Ins. Co.*,
63 Cal.App.3d 617, 134 Cal.Rptr. 25 (1976)...................................................................20

*Boston Gas Co. v. Century Indem. Co.*, 454 Mass. 337, 910 N.E.2d 290 (2009)...........15

*Burns v. Smith*, 303 S.W.3d 505 (Mo. 2010)............................................................9, 17

*City of Idaho Falls v. Home Indem. Co.*, 888 P.2d 383 (Idaho 1994) ...........................18

*City of Lee's Summit v. Missouri Public Entity Risk Management*, 390 S.W.3d 214
(Mo. App. 2012) ..............................................................................................................11

*Columbia Cas. Co. v. HIAR Holdings LLC*, No. SC 93026, 411 S.W.3d 258,
2013 WL 4080770 (Mo. Aug. 13, 2013) ............................................................... *passim*

*Columbia Mut. Ins. Co. v. Cutter Industries, Inc.*, Case No. 08 MR 899
(Cir. Ct. for the 19th Jud. Cir., Lake Cty., July 29, 2011) .............................................10

*Crossman v. Yacubovich*, 290 S.W.3d 775 (Mo. App. 2009).......................................17

*Custom Hardware Eng'g & Consulting, Inc. v. Assurance Co. of Am.*,
295 S.W.3d 557 (Mo. App. 2009) ...................................................................................11

*Farmland Indus., Inc. v. Republic Ins. Co.*, 941 S.W.2d 505 (Mo. banc 1997) .............17

*Fun Services v. Parrish Love d/b/a Asphalt Wizards*, Case No. 0816CV00064
(Jackson Co., Missouri) ................................................................................................6, 8

*G.M. Sign, Inc. v. State Farm Fire & Casualty Co.*, Case No. 11 MR 315
(Cir. Ct. for the 19th Jud. Cir., Lake Cty., Aug. 30, 2011).............................................10

*Green v. Markel Ins. Co.*, Case No. 09 MR 1373 (Cir. Ct. for the 19th Jud. Cir.,
Lake Cty., Sept. 28, 2012) ..................................................................................10, 12, 13

*Harleysville Mut. Ins. Co. v. Buzz Off Insect Shield, LLC*, 664 S.E.2d 317
(N.C. App. 2008) ............................................................................................23

*Illinois Cas. Co. v. Bia, Inc.*, Case No. 09 MR 844
(Cir. Ct. for the 19th Jud. Cir., Lake Cty., Jan. 24, 2012).............................10

*Illinois Cas. Co. v. Wellington Homes, Inc.*, Case No. 09 MR 843
(Cir. Ct. for the 19th Jud. Cir., Lake Cty., Oct. 11, 2011) ............................10

*Ins. Corp. of Hanover v. Shelborne Assocs.*, 389 Ill.App.3d 795
(Ill. App. 2009) ...............................................................................................11

*Karen S. Little, LLC v. Drury Inns, Inc.*, 306 S.W.3d 577 (Mo. App. 2010) .............8, 21

*Keck v. American Family Mut. Ins. Co.*, 299 S.W.3d 63 (Mo. App. 2009)....................11

*Kirk King, King Construction v. Continental Western Ins. Co.*, 123 S.W.3d 259
(Mo. App. 2003) ..............................................................................................17

*Lexington Ins. Co. v. Lexington Healthcare Group, Inc.*, 68 A.2d 1121
(Conn. 2013) ...........................................................................................15, 16

*McCormack Baron Mgmt. Serv., Inc. v. Am. Guar. & Liab. Ins. Co.*, 989 S.W.2d 168
(Mo. 1999) ......................................................................................................17

*New York State Thruway Authority v. KTA-Tator Engineering Svcs., P.C.*,
78 A.D. 1566, 913 N.Y.S.2d 438 (N.Y. A.D. 2010).......................................16

*Nicor, Inc. v. Assoc. Elec. And Gas Ins. Svcs. Ltd.*, 223 Ill.2d 407 (2006)...................13

*Niswonger v. Farm Bur. Town & Country Ins. Co. of Missouri*, 992 S.W.2d 308
(Mo. App. 1999) ..............................................................................................13

*Pekin Ins. Co. v. XData Solutions, Inc.*, 2011 IL App (1st) 102769
(Ill. App. 2011) ...............................................................................................11

*Penzer v. Transportation Ins. Co.*, 29 So.3d 1000 (Fla. 2010)......................................20

*Shelter Mut. Ins. Co. v. Ballew*, 203 S.W.3d 789 (Mo. App. 2006) ...............................23

*Superior Equip. Co. v. Md. Cas. Co.*, 986 S.W.2d 477 (Mo. App. 1998) .....................17

*Terra Nova Ins. Co. v. Fray-Witzer*, 869 N.E.2d 565 (Mass. 2007).........................18, 20

*Truck Ins. Exchange v. Prairie Framing, LLC*, 162 S.W.3d 64
(Mo. App. 2005) ....................................................................................11, 15, 17

*Unigard Ins. Co. v. United States Fidelity & Guaranty Co.*, 111 Idaho 891, 728 P.2d 780 (1986) ..................................................................................................19

*Valley Forge Ins. Co. v. Swiderski Elecs., Inc.*, 223 Ill.2d 352, 860 N.E.2d 307 (Ill. 2006) ..................................................................................11, 22

*Westport Ins. Corp. v. Jackson Nat. Life Ins. Co.*, 387 Ill. App. 3d 408 (Ill. App. 2008) ...........................................................................................................13

*Wilkinson & Son, Inc. v. Providence Washington Ins. Co.*, 124 N.J. Super. 466, 307 A.2d 639 (1973) .................................................................................................19

## STATUTES, RULES, AND LEGISLATIVE HISTORY

47 U.S.C. § 227 ..................................................................................................6, 8

47 U.S.C. § 227(b)(3)(B) ...................................................................................8, 21

## OTHER PUBLICATIONS

137 Cong. Record S16205 (daily ed. Nov. 7, 1991) ..............................................21

Before the Court is an insurance coverage dispute over whether unsolicited facsimile claims are covered by the Policies issued by Western Heritage Insurance Company ("WHIC"). WHIC collected premiums from its insured, Parrish Love d/b/a Asphalt Wizards ("Asphalt Wizards"). Now, however, when Asphalt Wizards calls on WHIC to honor its contractual obligations under the Policies of insurance for which it paid, WHIC disclaims its duties and seeks to extinguish those obligations, and thereby abandon Asphalt Wizards, through a whirlwind of premature elocution and smokescreens. It should not be rewarded for those efforts.

The large majority of jurisdictions to have addressed the question under WHIC's policy language have found coverage, including the Missouri Supreme Court. *See Columbia Casualty Company v. HIAR Holdings, L.L.C.*, 411 S.W.3d 258 (Mo. Aug. 13, 2013). Coverage thus exists, as a matter of law.

There is no merit to WHIC's effort to escape its contractual duties to Asphalt Wizards, and particularly its duty to defend, moreover, on the basis of a premature rush to declare the coverage questions presented here. Even if that were not the case, WHIC waived its coverage defenses by undertaking the defense of Asphalt Wizards for the Underlying Action unconditionally.

WHIC further argues that its coverage obligations – both defense and indemnity – are somehow excused based on its belated assertion that: (1) the Policies also purportedly incorporate a "deductible" provision; (2) one of the Policies also purportedly contains an exclusion for claims arising out of violations of statutes; and (3) the Policies exclude the claims under a "prior publication" exclusion. Even if they weren't waived, WHIC cannot meet its burden to prove they apply here. Fun Services' motion for summary judgment should be granted.

## I.    SUMMARY OF MATERIAL UNDISPUTED FACTS

Fun Services adopts and incorporates its statement of material facts found at pp. 2-4 of its

brief in support of its motion for summary judgment ("Opening Brief").

## II.     RESPONSE TO WHIC'S STATEMENT OF FACTS

In accordance with LR 56.1(a), Fun Services responds to WHIC's Statement of Facts as follows:

Fun Services does not contest or otherwise object to the following paragraphs of WHIC's statement of facts: 1, 2, 22, 24, 27, 28, and 29. Fun Services specifically objects to the following paragraphs of WHIC's statement of facts:

Par. 3. WHIC's assertion in this paragraph appears to be a legal conclusion and is not fully supported by the record citation. Fun Services does not contest, however, that the cited pages of the Policies include wording that appears to have been added by "stamp" and which states "This is evidence of insurance procured and developed under the Missouri Surplus Lines Laws" and "This insurer is not licensed by the state of Missouri and is not subject to its supervision." WHIC Ex. 2, p. WHIC 00944; WHIC Ex. 3, p. WHIC 01081; WHIC Ex. 4, p. WHIC 00992.

Par. 4.  WHIC's assertion in this paragraph appears to be a legal conclusion and is not fully supported by the record citation. Fun Services does not contest, however, that the cited pages reflect that the Policies' insuring agreement for Coverage A provides: "We will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies." WHIC Ex. 2, p. WHIC 00956; WHIC Ex. 3, p. WHIC 01093; WHIC Ex. 4, p. WHIC 01028.

Par. 5.  WHIC's assertion in this paragraph appears to be an incomplete characterization of the definition that appears on the pages referenced in the record citation. Fun Services does not contest, however, that the cited pages of the Policies include a definition of the term "occurrence," and that WHIC has quoted a portion of that definition. WHIC Ex. 2, p. WHIC 00969; WHIC Ex.

3, p. WHIC 01106; WHIC Ex. 4, p. WHIC 01041.

Par. 6.  WHIC's assertion in this paragraph appears to be a legal conclusion and is not supported by the record citation. Fun Services does not contest, however, that the cited pages are an endorsement form, form number WHI 21-0467 (02/04), and that the form contains the title "Non-Stacking of Limits Endorsement." Fun Services also does not contest that the form contains the quoted language. WHIC Ex. 3, p. WHIC 01123; WHIC Ex. 4, p. WHIC 01059.

Par. 7.  WHIC's assertion in this paragraph appears to be a legal conclusion and is not supported by the record citation. Fun Services does not contest, however, that the cited pages reflect that the Policies' insuring agreement for Coverage B provides: "We will pay those sums that the insured becomes legally obligated to pay as damages because of 'personal and advertising injury' to which this insurance applies." WHIC Ex. 2, p. WHIC 00960-00961; WHIC Ex. 3, p. WHIC 01097-01098; WHIC Ex. 4, p. WHIC 01032-1033.

Par. 8.  WHIC's assertion in this paragraph appears to be a legal conclusion and is not fully supported by the record citation. Fun Services does not contest, however, that the cited pages reflect that the Commercial General Liability Coverage Part Declarations show, among others, the following limits of insurance: "Each Occurrence Limit  $1,000,000"; "Personal & Advertising Injury Limit   $1,000,000 Any One Person or Organization"; "General Aggregate Limit $2,000,000"; and "Products/Completed Operations Aggregate Limit $2,000,000". WHIC Ex. 2, p. WHIC 00953; WHIC Ex. 3, p. WHIC 01090; WHIC Ex. 4, p. WHIC 01024.

Par. 9.  WHIC's assertion appears to be a legal conclusion and is not fully supported by the record citation. Fun Services does not contest, however, that the cited pages are an endorsement, form number WHI 21-0128 (03/99), which contains the title "Deductible Liability Insurance." Fun Services also does not contest that the form contains, among others, the quoted language. WHIC

3

Ex. 2, p. WHIC 00967; WHIC Ex. 3, p. WHIC 01116; WHIC Ex. 4, p. WHIC 01052.

Par. 10. WHIC's assertion appears to be a legal conclusion and is not fully supported by the record citation. Fun Services does not contest, however, that the cited pages include an exclusion "c," applicable to Coverage B, which is titled "Material Published Prior To Policy Period" and which states "'Personal and advertising injury' arising out of oral or written publication of material whose first publication took place before the beginning of the policy period." WHIC Ex. 2, p. WHIC 00961; WHIC Ex. 3, p. WHIC 01098; WHIC Ex. 4, p. WHIC 01033.

Par. 11. WHIC's assertion in this paragraph appears to be an incomplete characterization of the definition that appears on the pages referenced in the record citation. Fun Services does not contest, however, that the cited pages of the Policies include a definition of the term "products-completed operations hazard," and that WHIC has quoted a portion of that definition. WHIC Ex. 2, p. WHIC 00970; WHIC Ex. 3, p. WHIC 01106; WHIC Ex. 4, p. WHIC 01041.

Par. 12. WHIC's assertion in this paragraph appears to be an incomplete characterization of the definition that appears on the pages referenced in the record citation. Fun Services does not contest, however, that the cited pages of the Policies include a definition of the term "product," and that WHIC has quoted a portion of that definition. WHIC Ex. 2, p. WHIC 00970-00971; WHIC Ex. 3, p. WHIC 01107; WHIC Ex. 4, p. WHIC 01042.

Par. 13. WHIC's assertion in this paragraph appears to be an incomplete characterization of the definition that appears on the pages referenced in the record citation. Fun Services does not contest, however, that the cited pages of the Policies include a definition of the term "work," and that WHIC has quoted a portion of that definition. WHIC Ex. 2, p. WHIC 00971; WHIC Ex. 3, p. WHIC 01107; WHIC Ex. 4, p. WHIC 01042.

4

Par. 14. WHIC's assertion in this paragraph appears to be an incomplete characterization of the definition that appears on the pages referenced in the record citation. Fun Services does not contest, however, that the cited pages of the Policies include a definition of the term "advertisement," and that WHIC has quoted a portion of that definition. WHIC Ex. 2, p. WHIC 00967; WHIC Ex. 3, p. WHIC 01104; WHIC Ex. 4, p. WHIC 01039.

Par. 15. WHIC's assertion in this paragraph appears to be a legal conclusion and is not fully supported by the record citation. Fun Services does not contest, however, that the cited page is an endorsement form, form number CG 00 67 03 05, and that the form contains the title "Exclusion—Violation of Statutes That Govern E-Mails, Fax, Phone Calls or Other Methods of Sending Material or Information." Fun Services also does not contest that WHIC has quoted a portion of that form. WHIC Ex. 4, p. WHIC 01043.

Par. 16. WHIC's assertion in this paragraph appears to be a legal conclusion and is not fully supported by the record citation. WHIC's assertion in this paragraph also appears to be an attempt to prematurely raise and conclusively determine in this insurance coverage issues of fact material to underlying liability that have not yet been resolved in the Underlying Action. *See Amerisure Mut. Ins. Co. v. Paric Corp.*, 2005 WL 2708873 (E.D. Mo. Oct. 21, 2005); *Shapiro Sales Co. v. Alcoa, Inc.*, 2006 WL 2228987 (E.D. Mo. Aug. 3, 2006). Fun Services does not contest, however, that the cited page is a Profax invoice dated February 22, 2005. WHIC Ex. 5.

Par. 17. WHIC's assertion in this paragraph is not fully supported by the record citation. WHIC's assertion also appears to be an attempt to prematurely raise and conclusively determine in this insurance coverage issues of fact material to underlying liability that have not yet been resolved in the Underlying Action. *See Amerisure*, 2005 WL 2708873; *Shapiro Sales*, 2006 WL 2228987. Fun Services does not contest, however, that Mr. Barnett testified at his deposition that

5

"Parrish Love facilitated [provided] the list to Profax." WHIC Ex. 13, p. 22:4-12.

Par.18. WHIC's assertion in this paragraph appears to be a legal conclusion and is not fully supported by the record citation. WHIC's assertion in this paragraph also appears to be an attempt to prematurely raise and conclusively determine in this insurance coverage issues of fact material to underlying liability that have not yet been resolved in the Underlying Action. *See Amerisure*, 2005 WL 2708873; *Shapiro Sales*, 2006 WL 2228987. Fun Services does not contest, however, that the cited WHIC exhibits 5, 6, 7, 8, 9, 10, 11 and 12 are Profax invoices.

Par. 19. WHIC's assertion in this paragraph appears to be a legal conclusion and is not fully supported by the record citation. WHIC's assertion in this paragraph also appears to be an attempt to prematurely raise and conclusively determine in this insurance coverage issues of fact material to underlying liability that have not yet been resolved in the Underlying Action. *See Amerisure*, 2005 WL 2708873; *Shapiro Sales*, 2006 WL 2228987. Fun Services does not contest, however, that the cited WHIC exhibits 5, 6, 7, 8, 9, 10, 11 and 12 are Profax invoices.

Par. 20. WHIC's assertion in this paragraph appears to be an incomplete characterization of the document referenced in the record citation. Fun Services does not contest, however, that on January 7, 2008, Fun Services commenced a civil class action captioned "*Fun Services of Kansas City, Inc., individually and on behalf of a class of similarly-situated persons v. Parrish Love d/b/a Asphalt Wizards*," Case No. 0816 CV 00064, in the Circuit Court of Jackson County, Missouri; that the Petition in that action alleges that Asphalt Wizards violated the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, by sending unsolicited junk faxes to Fun Services and other members of the alleged Class; and that the Petition also alleges a cause of action for common law conversion. WHIC Ex. 14.

Par. 21. WHIC's assertion in this paragraph appears to be a legal conclusion and is not

6

fully supported by the record citation. Fun Services does not contest, however, that Asphalt Wizards tendered the Underlying Action to WHIC for coverage. Fun Services also does not contest that WHIC responded to the tender by the cited letter dated June 26, 2008, in which WHIC agreed to provide a defense for Asphalt Wizards, and further stated that WHIC had retained the law firm of Brown & James to defend Asphalt Wizards in the Underlying Action. The letter did not communicate that WHIC was reserving any rights to contest coverage, or that the defense was being provided subject to a reservation of rights. WHIC Ex. 15.

Par. 23. WHIC's assertion in this paragraph appears to be a mischaracterization of the testimony that appears on the cited pages and thus is not supported by the record citation. More particularly, the cited testimony from Mr. Barnett does not state that Profax was "unable to locate any fax transmission reports." Likewise, the cited testimony from Mr. Love does not state that Asphalt Wizards was "unable to locate any fax transmission reports." WHIC's assertion in this paragraph thus appears to be an attempt to prematurely raise and conclusively determine in this insurance coverage issues of fact material to underlying liability that have not yet been resolved in the Underlying Action. *See Amerisure*, 2005 WL 2708873; *Shapiro Sales*, 2006 WL 2228987. WHIC Ex. 13, p. 22; WHIC Ex. 1, p. 90-91.

Par. 25. WHIC's assertion in this paragraph appears to be a mischaracterization of the document that appears on the cited pages and thus is not supported by the record citation. More particularly, the Order granting class certification in the Underlying Action, to which WHIC cites, does not contain the statement "Fun Services asserts there were 13,267 'unique' fax numbers on the list Asphalt Wizards sent to Profax." WHIC's assertion in this paragraph thus appears to be an attempt to prematurely raise and conclusively determine in this insurance coverage issues of fact material to underlying liability that have not yet been resolved in the Underlying Action. *See*

*Amerisure*, 2005 WL 2708873; *Shapiro Sales*, 2006 WL 2228987. WHIC Ex. 17, p. 14.

Par. 26. WHIC's assertion in this paragraph appears to be a legal conclusion and is not fully supported by the record citation. Fun Services does not contest, however, that the cited document is a letter dated October 29, 2012 addressed to Mr. Parrish Love. WHIC Ex. 18.

Par. 30. WHIC's assertion in this paragraph appears to be an incomplete characterization of the document referenced in the record citation, as well as the operative pleading on which this Court must base its determination of WHIC's duty to defend. Fun Services does not contest, however, that on January 7, 2008, Fun Services commenced a civil class action captioned "*Fun Services of Kansas City, Inc., individually and on behalf of a class of similarly-situated persons v. Parrish Love d/b/a Asphalt Wizards*," Case No. 0816 CV 00064, in the Circuit Court of Jackson County, Missouri; that the Petition in that action alleges that Asphalt Wizards violated the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, by sending unsolicited junk faxes to Fun Services and other members of the alleged Class; and that the Petition also alleges a cause of action for common law conversion. The TCPA provides, alternatively, for recovery by an aggrieved party of the ***higher*** of actual damages, or statutory liquidated damages of $500 per violation. 47 U.S.C. § 227(b)(3)(B); *Karen S. Little, L.L.C. v. Drury Inns, Inc.*, 306 S.W.3d 577, 581 (Mo. App. 2010). Likewise, the damages recoverable for conversion are not limited. A party can recover whatever actual or consequential damages result from the receipt of the unsolicited fax. The referenced document, WHIC Ex. 20, merely states that the class seeks TCPA statutory damages; it does not preclude other recovery under Count II of the Underlying Petition. The Class' recovery has not been determined in the Underlying Action. WHIC's assertion thus appears to be an attempt to prematurely raise and conclusively determine in this insurance coverage issues of fact material to underlying liability that have not yet been resolved in the Underlying Action. *See*

8

*Amerisure*, 2005 WL 2708873; *Shapiro Sales*, 2006 WL 2228987. WHIC Exs. 14, 20.

## III.   ARGUMENT

### A.   THE UNDERLYING ACTION TRIGGERS COVERAGE

As discussed in Fun Services' Opening Brief (pp. 10-15), coverage is triggered for both "property damage," and "personal and advertising injury" coverage under the Policies. Fun Services incorporates that discussion here. *See Columbia Cas. Co. v. HIAR Holdings LLC*, No. SC 93026, 411 S.W.3d 258 (Mo. Aug, 13, 2013). The Underlying Action alleges the same claims as in *HIAR*. The Policies are essentially identical as well. As such, *HIAR* conclusively resolves the question of whether the claims are covered by the Policies.

### B.   WHIC WAIVED ITS COVERAGE DEFENSES

As discussed in Fun Services' Opening Brief (pp. 5-10), WHIC assumed the underlying defense unconditionally. Fun Services incorporates that discussion here. Thus, even if one or more of its arguments had merit, WHIC has waived its right to contest coverage. On that basis alone, WHIC must defend, and also pay any judgment in the Underlying Action, as a matter of law.

### C.   WHIC CANNOT PROVE THAT COVERAGE IS EXCLUDED OR OTHERWISE PRECLUDED UNDER THE POLICIES

WHIC seeks to escape its obligations to Asphalt Wizards by invoking certain exclusionary and limitations provisions. It is WHIC's burden to prove those provisions unambiguously remove the claims from coverage entirely. *See Burns v. Smith*, 303 S.W.3d 505, 509 (Mo. 2010); *Auto Club Inter–Ins. Exch. v. Medrano*, 83 S.W.3d 632, 638 (Mo. App. 2002). Even if its defenses were not waived, and they are, WHIC cannot meet that burden.

#### 1.   The "Violation Of Statutes" Exclusion Does Not Obviate WHIC'S Coverage Obligations For The Conversion Claim

WHIC claims the policy covering the 2006-07 coverage period added an exclusionary

9

endorsement barring coverage for TCPA claims. *See* WHIC Ex. 4, at p. WHIC 01043. WHIC thus seeks to induce the Court to leap to the unjustified conclusion that the endorsement, in its last policy, precludes any possibility of coverage for the Underlying Action. As a preliminary matter, the Court need not consider the last policy in order to find a duty to defend since WHIC must defend the entire underlying action as long as any of its policies obligate it to do so. Moreover, WHIC's position is contrary to the weight of authorities that have considered the specific question.

The title of the exclusion relied upon by WHIC is "Exclusion—Violation of Statutes That Govern E-Mails, Fax, Phone Calls or Other Methods of Sending Material or Information." (WHIC Ex. 4, at p. WHIC 01043.) On its face, the exclusion is applicable to "DISTRIBUTION OF MATERIAL IN VIOLATION OF STATUTES." The TCPA claim is only one of two alleged causes of action, however. The exclusion, by its terms, applies to liability for violation of that specific statute, not to the conversion claim, which is not a statutory claim at all.

That is the conclusion of the overwhelming majority of courts that have considered the question, including this Court. *See Nationwide Mut. Ins. Co. v. Harris Med. Assoc., LLC*, -- F.Supp.2d --, 2013 WL 5341498, Case No. 4:13-CV-7 (E.D. Mo. Sept. 23, 2013).[1] As each of those courts held, the exclusion does not affect coverage for the conversion claim. *Id.*; Exs. A through G. These courts' reasoning is well supported under Missouri law.

An insurer must defend an entire case if there is even one potentially covered cause of

---

[1]     *See Green v. Markel Ins. Co.*, Case No. 09 MR 1373 (Cir. Ct., 19th Jud. Cir., Lake Cty., Sept. 28, 2012) (Exhibit A); *Columbia Mut. Ins. Co. v. Cutter Indus., Inc.*, Case No. 08 MR 899 (Cir. Ct., 19th Jud. Cir., Lake Cty., July 26, 2011) (Exhibit B); *G.M. Sign, Inc. v. State Farm Fire & Cas. Co.*, Case No. 11 MR 315 (Cir. Ct., 19th Jud. Cir., Lake Cty., Aug. 30, 2011) (Exhibit C); *Illinois Cas. Co. v. Wellington Homes, Inc.*, Case No. 09 MR 844 (Cir. Ct., 19th Jud. Cir., Lake Cty., Oct. 11, 2011) (Exhibit D); *Illinois Cas. Co. v. Bia, Inc.*, Case No. 09 MR 843 (Cir. Ct., 19th Jud. Cir., Lake Cty., Jan. 24, 2012) (Exhibit E); *Acuity Ins. Co. v. Blackhawk Paving, Inc.*, Case No. 08 CH 35830 (Cir. Ct. of Cook Cty., Dec. 7, 2011) (Exhibit F). *See* Complaints, Exhibit G.

action. *E.g., Lou Fusz*, 300 F.Supp.2d at 893. The underlying complaint must be construed liberally; any doubts must be resolved in favor of the insured. *See Custom Hardware Eng'g & Consulting, Inc. v. Assurance Co. of Am.*, 295 S.W.3d 557, 561 (Mo. App. 2009); *City of Lee's Summit v. Missouri Pub. Entity Risk Mgmt*, 390 S.W.3d 214, 219 (Mo. App. 2012).

Policy language must be given its plain and ordinary meaning; any ambiguities must be resolved in favor of the insured. *Keck v. Amer. Fam. Mut. Ins. Co.*, 299 S.W.3d 63, 65-66 (Mo. App. 2009). A provision that purports to exclude or limit coverage must be read narrowly and will be applied only where its terms are clear, definite, and specific. *Lou Fusz*, 300 F.Supp.2d at 893; *Truck Ins. Exchange v. Prairie Framing, LLC*, 162 S.W.3d 64, 87 (Mo. App. 2005).

In resolving the duty to defend a class action, courts look to the proposed class. *See, e.g., Hartford Acc. and Indem. Co. v. Beaver*, 466 F.3d 1289, 1293 (11th Cir. 2006); *Valley Forge Ins. Co. v. Swiderski Elecs., Inc.*, 223 Ill.2d 352, 368 (2006). Where the allegations of harm give rise to a potential for coverage, the insurer has a duty to defend. *Beaver*, 466 F.3d at 1293; *see Lou Fusz*, 300 F.Supp.2d at 893.

Courts have found coverage for conversion claims in cases that also include TCPA claims. An insurer has a duty to defend a conversion claim based on the receipt of an unwanted fax. *See Shelborne*, 389 Ill.App.3d at 800-803; *XData*, 2011 IL App (1st) 102769. Here, Fun Services alleged that Asphalt Wizards "knew or should have known" that its misappropriation of paper, toner, and employee time was wrongful and without authorization. (WHIC Ex. 14, ¶ 35; *see also* ¶ 12). These are the same allegations that courts have held triggered a duty to defend under property damage coverage. *See, e.g., Shelborne*, 389 Ill.App.3d at 801-03; *XData*, 2011 IL App (1st) 102769. *See also Hiar*, 411 S.W.3d at 268-69.

The conversion claim is independently sufficient in the absence of the TCPA and seeks

independent damages. Therefore, that claim does not "arise out of" any TCPA violation. Though a TCPA claim is alleged in the Underlying Action, and it shares some of the factual predicates, a claim for conversion has different elements and therefore arises out of actions and omissions, separate from the TCPA claim. Because of this, there was the potential that Asphalt Wizard's conduct would ultimately prove not to be violative of the TCPA yet actionable for conversion (or *vice versa*). *See Green*, Ex. A, at p. 1 ("It is possible that there could be facts proved establishing that there was no violation of the TCPA, and yet there could be actionable conversion").

A conversion claim does not depend on whether the fax was an advertisement, or whether there was an established business relationship between the sender and recipient. The conversion claim thus is based on one fact common to the TCPA claim—that Asphalt Wizards sent a fax to Fun Services—but beyond that is premised on different facts. It does not rely on the TCPA as the source of rights at issue, and it seeks separate damages. Thus, Asphalt Wizards could be found to have violated the TCPA but not be liable for conversion—or *vice versa*. Therefore, because the duty to defend exists if *any* claim offers *any potential* for coverage, WHIC has a duty to defend the conversion claim, even under the 2006-07 policy with the exclusion.

As discussed, Count II of the Petition in the Underlying Action does *not* arise out of alleged violations of the TCPA; it arises out of receipt of the subject faxes, something that is not even an element of the TCPA claim. Because the exclusion does not clearly and specifically exclude the conversion claim here, it should not be applied to bar coverage for it.

Here, the exclusion in question is titled "Violation of Statutes." This title clearly indicates that the exclusion WHIC was inserting was an exclusion of *statutory* claims. Thus, the language "arising out of" the TCPA can and should reasonably read to apply to liability claims alleged under that statute. This reading is reinforced by the listing of several other separate statutes in the

12

exclusion and by the language of the catchall subsection 3.[2]

Subsection 3 reads: "Any **statute, ordinance or regulation** other than the TCPA or CAN-SPAM Act of 2003, that prohibits or limits the sending, transmitting, communicating or distributing of material or information." WHIC's choice of this limiting language is consistent with the interpretation of the exclusion as confined to specific statutory claims. Here, only the TCPA claim qualifies. Conversion, of course, is not a statutory claim at all.

Comparing the "Violation of Statutes" exclusion here with similar exclusions used by other insurers provides further support for the interpretation that WHIC's exclusion is narrowly tailored and does not exclude the remaining conversion claim. *See Green*, Ex. A, pp. 1-2 ("This Court will not read this exclusion so broadly, particularly where … other carriers have written far clearer and unambiguous exclusions for any action that includes a TCPA count."). For example, St. Paul Fire & Marine Insurance Company has used the following exclusionary endorsement language:

**UNSOLICITED COMMUNICATION ENDORSEMENT**

The following is added to the Exclusions – What This Agreement Won't Cover section. This change excludes coverage.

**Unsolicited communication.** We won't cover injury or damage or medical expenses that result from any actual or alleged violation of any law or regulation that restricts or prohibits the transmitting of unsolicited communication.

Nor will we cover any other injury or damage alleged in a claim or suit that also alleges any such violation.

*Unsolicited communication* means any communication, in any form, that:

- Is received by any person or organization; and

---

[2]    What "at first blush might appear unambiguous in the insurance contract might not be such in the particular factual setting in which the contract was issued." *Niswonger v. Farm Bur. Town & Country Ins. Co. of Missouri,* 992 S.W.2d 308, 318-19 (Mo. App. 1999); *see also Nicor, Inc. v. Assoc. Elec. and Gas Ins. Svcs. Ltd.*, 223 Ill.2d 407, 417 (2006). While the title of a coverage form or endorsement "may not be an operative term of the policy, the title clearly indicates the type of [coverage or exclusion].… And, as seen, the type of [coverage or exclusion] is germane to determining the meaning of policy language." *Westport Ins. Corp. v. Jackson Nat. Life Ins. Co.*, 387 Ill. App. 3d 408, 412 (Ill. App. 2008).

- Such person or organization didn't ask to receive.

*See* St. Paul Endorsement, Exhibit H. There are key differences between this broader exclusion and the narrow statutory violation exclusion used by WHIC. First, its title announces that it is excluding claims based on "unsolicited communications" as opposed to "Violation of Statutes." Second, WHIC's exclusion is confined to "property damage" and "personal and advertising injury" "arising out of… the [TCPA]." Third, the St. Paul version excludes "other injury or damage alleged in a claim or suit that also alleges" a TCPA violation. This acknowledges that the "injury or damage or medical expenses that result from any actual or alleged violation" language in the first paragraph of the St. Paul exclusion—language that is already broader than the language in the WHIC exclusion—is insufficient on its own to exclude damages from other independent causes of action based in part on conduct that would form a basis for a statutory claim.

Another insurer, Travelers Indemnity Company, has filed the following exclusion:

**EXCLUSION—UNSOLICITED COMMUNICATIONS**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

This insurance does not apply to "bodily injury", "property damage", "personal injury", "advertising injury" or "website injury" arising out of unsolicited communications by or on behalf of any insured. Unsolicited communications means any form of communication, including but not limited to facsimile, electronic mail, posted mail or telephone, in which the recipient has not specifically requested the communication. Unsolicited communications also include but are not limited to communications which are made or allegedly made in violation of the Telephone Consumer Protection Act and any amendments, and/or local or state statutes that bar, prohibit or penalize such communications.

*See* Travelers Endorsement, attached as Exhibit I. This exclusion likewise excludes all claims based on "unsolicited communications," regardless of whether based on a statutory violation.

Despite the fact that this language was on file with the various state departments of insurance and available well before the WHIC Policies were issued, *see* Ex. H at 8/04 creation date

14

(found in footer); Ex. I at 2004 copyright, WHIC elected to use the more narrow language that it did. This evidences a conscious decision not to exclude other claims in a lawsuit alleging a violation of the TCPA—a decision that a consumer of insurance may well have noted.

The aforementioned courts found that the "Violation of Statutes" exclusion did not reach a conversion claim under similar policy language. Those decisions were well founded in the bedrock canon of insurance policy construction law: that grants of coverage are construed broadly and exclusions construed narrowly. *See Lou Fusz*, 300 F.Supp.2d at 893; *Prairie Framing,* 162 S.W.3d at 87. This Court should hold likewise.

### 2. The "Deductible" Does Not Extinguish WHIC'S Coverage Obligations

WHIC also claims a deductible of $1,000 "per claim" eliminates all coverage obligations, including its duty to defend. That premise is without basis. First, any coverage defenses were waived when WHIC decided to defend unconditionally. Second, a deductible does not operate in the manner claimed by WHIC. Third, this provision does not clearly and unambiguously preclude the possibility of coverage and therefore does not eliminate a duty to defend.

### a. The Presence Of The Deductible Neither Relieves WHIC Of Its Duty To Defend Nor Of Its Duty To Pay

WHIC's attempt to escape its contractual duty to defend and indemnify on the basis of a projected application of a deductible fails, *ab initio*, because WHIC misapprehends the nature and effect of a policy "deductible." Although WHIC seeks to treat the terms "deductible" and "self-insured retention" ("SIR") as interchangeable, they are not. Deductibles and self-insured retentions generally serve the same purpose—to shift a portion of the risk from the insurer to the insured—but they are different creatures, and each term has a different meaning and effect. *See, e.g.*, *Lexington Ins. Co. v. Lexington Healthcare Group, Inc.*, 68 A.2d 1121, 1143, n. 25 (Conn. 2013); *Boston Gas Co. v. Century Indem. Co.*, 454 Mass. 337, 910 N.E.2d 290, 294 n. 8 (2009); *Allianz*

15

*Ins. Co. v. Guidant Corp.*, 884 N.E.2d 405, 410, n.2 (Ind. App. 2008). In *Allianz*, the Court of Appeals succinctly explained the pertinent distinction between a deductible and an SIR:

> [a] policy with a deductible obliges the insurer to respond to a claim from dollar one (*i.e.*, immediately upon tender), subject to the insurer's right to later recoup the amount of the deductible from the insured. A policy subject to a SIR, in contrast, obliges the policyholder itself to absorb expenses up to the amount of the SIR, at which point the insurer's obligation is triggered.

*Allianz*, 884 N.E.2d 405, 410, n.2 (Ind. App. 2008).

In *Lexington*, the Court similarly found: "a major distinction between a deductible and a self-insured retention is that, in the case of the latter, 'the insurer's full policy limits will be available to respond to a loss after the [SIR] has been satisfied,' whereas, with the former, the deductible's amount 'is subtracted from the policy limits, thereby reducing the amount of available insurance.'" 68 A.2d 1121, 1143, n. 23, 25 (Conn. 2013). *See N.Y. State Thruway Auth. v. KTA-Tator Eng. Svcs., P.C.*, 78 A.D. 1566, 1567, 913 N.Y.S.2d 438, 440 (N.Y. A.D. 2010) (same). *See also U.S. Fidelity & Guar. Ins. Co. v. Commercial Union Midwest Ins. Co.*, 430 F.3d 929, 937-38 (8th Cir. 2005) (defining SIR "as '[t]he amount of an otherwise-covered loss that is not covered by an insurance policy and that usually must be paid before the insurer will pay benefits'").

In other words, while the deductible reflects an allocation of ultimate responsibility between the insurer and insured, the risk of collection is on the insurer must pay its limits in satisfaction of a judgment, subject to a right to recoup the deductible amount from the insured. The interpretation WHIC urges would impermissibly convert a deductible into an SIR (or a hidden exclusion). If WHIC had wanted to include a SIR in the Policies, it could have done so. It did not. The Court should not rewrite the Policies. Therefore, the presence of a deductible does not relieve WHIC of responsibility to defend its insured or pay any judgment from "dollar one."

16

### b. The Deductible Is Ambiguous

If the allegations in the underlying complaint are potentially within the scope of coverage, then a duty to defend is triggered. *Prairie Framing*, 162 S.W.3d at 79. The duty arises "even though claims beyond coverage may also be present." *King*, 123 S.W.3d at 264, citing *Superior Equip. Co. v. Md. Cas. Co.*, 986 S.W.2d 477, 482 (Mo. App. 1998); *Prairie Framing*, 162 S.W.3d at 79. As explained in *McCormack*, " '[t]o suggest that the insured must prove the insurer's obligation to pay before the insurer is required to provide a defense would make [the duty to defend] provision a hollow promise....' " *McCormack*, 989 S.W.2d at 170. Consequently, in order to extricate itself from a duty to defend, an insurer must prove that there is no possibility of coverage. *McCormack*, 989 S.W.2d at 170; *Prairie Framing*, 162 S.W.3d at 79; *King*, 123 S.W.3d at 264.

In doing so, the Court must give each term of the policy its ordinary, lay meaning unless the policy expressly defines it in a technical manner. *Farmland Indus., Inc. v. Republic Ins. Co.*, 941 S.W.2d 505, 508 (Mo. banc 1997). Any ambiguities are resolved in favor of coverage. *Aetna Cas. & Sur. Co. v. Haas*, 422 S.W.2d 316, 321 (Mo. 1968); *see Howard v. Russell Stover Candies, Inc.*, 649 F.2d 620, 621 (8th Cir. 1981). Particularly, "provisions limiting or cutting down, or avoiding liability in the coverage made in the policy are construed most strongly against the insurer." *Crossman v. Yacubovich*, 290 S.W.3d 775, 779 (Mo. App. 2009). A court "strictly construes exclusionary clauses against the drafter, who also bears the burden of showing the exclusion applies." *Burns v. Smith*, 303 S.W.3d 505, 509 (Mo. 2010).

### i. The Deductible Does Not Clearly And Unambiguously Apply Per Each Fax Sent

The fact that Fun Services has alleged class claims in the Underlying Action (which now have been certified) does not unambiguously establish that there is in fact more than one "claim," subject to the deductible. Application of the undefined term "claim" to an underlying class action

17

leads inevitably to several different interpretations. Since the term "claim" is reasonably susceptible to different interpretations, Missouri law requires the insurance contract be construed in favor of the insured. In other words, the deductible provision is ambiguous as applied in the context of this claim, and must be construed in favor of coverage.

The Policies do not define "claim" or indicate how the term is to be applied in the context of an underlying class action. If it intended to define "claim" to include a demand for relief alleged by a single named plaintiff on behalf of an alleged class, WHIC had every opportunity to do so. It did not. The Court should not re-write the Policies to rectify WHIC's omissions. *See Terra Nova Ins Co v. Fray–Witzer*, 449 Mass 406, 418 (2007) (had the insurers wished to limit their policy coverage they could have drafted their polices to effectuate that intent).

Although WHIC contends the term "claim" is unambiguous, the only authority it cites in support is a case from New York that neither addressed a deductible nor its application to a class action. *See* WHIC Brief at 9, citing *Home Ins. Co. of Illinois v. Spectrum Info. Tech.*, 930 F. Supp. 825, 847 (E.D. N.Y. 1996). The *Spectrum* court addressed the meaning of "claim" in connection with a coverage grant, for purposes of determining whether coverage was properly invoked. *Id.* The policy, moreover, defined "claim" as "a written demand by a third party for monetary damages, including the institution of suit or a demand for arbitration." *Id.* The *Spectrum* court concluded that the meaning of "claim" was unambiguous because there was only one reasonable interpretation in context. *Id.* That is hardly the circumstance presented here. Moreover, if a "claim" here were construed the same as in *Spectrum*, the written demand here would be the entire class action lawsuit below. In that situation, the deductible of $1000 per claim against the claim of the entire class for millions renders the argument pointless.

In *City of Idaho Falls v. Home Indem. Co.*, 888 P.2d 383 (Idaho 1994), for example, the

court addressed the applicability of a deductibility clause containing comparable per-claim language as in the policy at issue here, and actually in the context of a class action. In that case, the insurer, like WHIC here, contended that a deductible applied separately to each member of the class. *Id.* at 388. The court disagreed. It found the term "claim" is ambiguous in context. As such, it held the "policy does not unambiguously provide that the deductible applies separately for each class claimant, and any ambiguity will be resolved against the insurer. *Id.* Therefore, only one deductible would apply for the class action lawsuit. *Id.*

There are several reasonable interpretations of the term "claim," in context, including that the assertion of the claim for recovery by the single named plaintiff, is a single claim, notwithstanding the alleged class. *See, e.g., Previews, Inc. v. California Union Ins. Co.*, 640 F.2d 1026, 1028-29 (9th Cir. 1981) (the deductible provision was thus ambiguous, should be construed against the insurer, and only one deductible applied to the underlying class action, notwithstanding the fact that it sought to recover on behalf of an alleged class); *North American Biologicals Inc. v. Illinois Employers Ins. of Wausau*, 931 F.2d 839 (11th Cir. 1991) (rejecting argument that the allegation of class claims meant there was more than one claim subject to multiple deductibles).

Alternatively, the term "claim" could, reasonably, be construed to invoke the underlying origin of the alleged damages, even where the damages are sought by more than one claimant. *See, e.g., Unigard Ins. Co. v. United States Fidelity & Guar. Co.*, 111 Idaho 891, 728 P.2d 780 (1986) (holding that ninety eight separate injuries inflicted during the course of snow-clearing activity constituted a single claim, within the meaning of a "per claim" deductible clause, rejecting argument that each individual event of damage was a separate claim); *Wilkinson & Son, Inc. v Providence Washington Ins. Co.*, 124 N.J. Super. 466, 307 A.2d 639 (1973) (damage to carpeting in 34 different apartments was subject to a single deductible, because it resulted from a single and

continuous operation, rejecting insurer's argument that there were 34 separate claims).[3]

This is not a case like *Capitol Indem. Corp. v. Miles*, 978 F.2d 437 (8th Cir. 1992), cited by WHIC, involving more than one finite claim asserted by more than one person against an insured, for which the insured sought reimbursement. *Capitol Indem.* did not arise out of an underlying class action. Unlike *Capitol Indem.*, this case does not involve an effort by the insured to "buy up" multiple, separate claims and then, having settled and paid the separate claims, aggregate them solely for purposes of insurance coverage as a sort of "superclaim." *See id.* at 438-39. Rather, there is a single claim for coverage based on only one claim brought by one named plaintiff, Fun Services. Only one claim is made. Only one deductible applies.[4]

Where, as here, courts have reached substantially different interpretations of a word in comparable contexts, it follows that there is more than one reasonable interpretation, and it is ambiguous. *See Terra Nova*, 869 N.E.2d at 573; *Penzer v. Transp. Ins. Co.*, 29 So.3d 1000, 1008 (Fla. 2010) (Pariente, J., concurring). Indeed, WHIC's own argument reflects the futility of its position. WHIC argues two alternative interpretations of "claim" – either that it applies once for each fax sent, or once per each "claimant" who is part of the alleged class. In acknowledging that

---

[3]      An equally-plausible reading of "claim," is a request for indemnification, rather than a claim for damages. *See Beaumont-Gribin-Von Dyl Management Co. v. California Union Ins. Co.*, 63 Cal.App.3d 617, 623–25 (1976) ("claim" is ambiguous; insurer could have clearly defined the deductible and, having failed to do so, the term was construed in favor of coverage).

[4]      None of the cases cited by WHIC in Section III.A.3 of its brief, involves an insurance claim based on an underlying class action. They are inapposite. Finally, WHIC cites one case for the broad proposition that "courts have "rejected" that a "class action constitutes a single 'claim' subject to one deductible." *See* Section III.A.4 of WHIC's brief (citing *Muscemi v. Schwegmann Giant Super Markets*, 332 F.3d 339 (5th Cir. 2003)). Whatever that court may have held, it was addressing an SIR, not a deductible (as was the case it cited, *Colbert County Hosp. v. Bellefonte Ins. Co.*, 725 F.2d 651 (11th Cir. 1984)). As discussed above, there is a material difference between a deductible and an SIR. The more recent decision in *N. American Biologicals Inc. v. Illinois Employers Ins. of Wausau*, 931 F.2d 839 (11th Cir. 1991) is to the contrary, moreover.

there are at least two possible readings of the provision, WHIC concedes the salient point, that the deductible is ambiguous. It necessarily follows that WHIC cannot meet its burden to prove there is no possibility of coverage, based on the application of unambiguous policy terms.

> ii. **In All Events, Both The Alleged TCPA Claim And The Alleged Conversion Claim Allow For A Potential Recovery In Excess Of The Deductible Amount**

The Underlying Action does not preclude the possibility that one or more aggrieved parties will recover in excess of the deductible. For that reason, alone, WHIC's argument fails.

First, there is no hard-and-fast cap on damages recoverable under the TCPA. The TCPA provides, alternatively, for recovery by an aggrieved party of the ***higher*** of actual damages, or statutory liquidated damages of $500 per violation. 47 U.S.C. § 227(b)(3)(B); *Karen S. Little, L.L.C. v. Drury Inns, Inc.*, 306 S.W.3d 577, 581 (Mo. App. 2010). As the statutory history reflects, moreover, the potential for significant consequential damages exists. The statutory damages amount merely is Congress' attempt to liquidate the damages suffered each time a junk fax is sent by settling on a number that takes into account both the ordinary case, involving a small actual loss, and the extraordinary one, such as a transmission closing the communication network of the pharmacist who is unable to receive an emergency prescription by a doctor, causing a patient to die or the businessman who is unable to receive a contract losing him a deal. "The amount of damages in this legislation is set to be fair to both the consumer and the telemarketer." (137 Cong. Record S16205 (daily ed. Nov. 7, 1991) (statement of Senator Hollings, sponsor of the TCPA).

The Eighth Circuit has specifically recognized the possibility that unsolicited faxes can result in significant actual damages, moreover. *See Missouri ex rel. Nixon v. American Blast Fax, Inc.,* 323 F.3d 649, 654–55 (8th Cir. 2003) (noting that "unsolicited fax advertisements can shift to the recipient more than one hundred dollars per year in direct costs, ... and ... unsolicited fax

21

advertising interferes with company switchboard operations and burdens the computer networks of those recipients who route incoming faxes into their electronic mail systems."); *Lou Fusz*, 401 F.3d at 881. Likewise, the damages recoverable for conversion are not limited. A party can recover whatever actual or consequential damages result from receipt of the unsolicited fax.[5]

Even if the deductible were applicable, the allegations of the Petition in the Underlying Action do not preclude the possibility of one or more aggrieved parties recovering in excess of $1,000 in damages. Because the duty to defend is based on the potential for coverage, therefore, the deductible cannot preclude the existence of a duty to defend. It necessarily follows that WHIC cannot meet its burden to prove there is no possibility of coverage based on the deductible.

### 3. The "Prior Publication" Exclusion Does Not Eliminate WHIC'S Coverage Obligations

WHIC next relies on exclusion for advertising injury "arising out of oral or written publication of material whose first publication took place before the beginning of the policy period." To the extent that the Underlying Action implicates property damage coverage, this exclusion is irrelevant. In any event, each fax transmission is a separate publication unrelated to other transmissions and not dependent on the content of the transmission. *See, e.g., HIAR*, 2013 WL 4080770 at *8-9; *Valley Forge*, 860 N.E.2d at 317-18.

All of the faxes at issue were sent during, not before, the periods of the Policies. Courts have rejected the applicability of this exclusion in similar circumstances: "if some of the advertisements have been published after the beginning of the insured's policy period, then the

---

[5]    Nor is the possibility that some class members received more than two faxes precluded. Although WHIC asserts that Fun Services should be required to prove such claimants exist, that proposition is antithetical to the duty to defend standard and WHIC's burden to prove that no possibility of coverage exists in order to escape its duty to defend. Those facts are at issue in the Underlying Action, and it is premature to base a conclusion that no duty exists on them. *See Amerisure*, 2005 WL 2708873; *Shapiro Sales*, 2006 WL 2228987.

'first publication' exclusion does not apply." *Nutmeg Ins. Co. v. Employers Ins. Co. of Wausau*, Case No. Civ. A. 3:04-CV-1762B, 2006 WL 453235, *11 (N.D. Tex. 2006) (citing *Everett Assocs. Inc. v. Transcontinental Ins. Co.,* 56 F. Supp. 2d 874, 885 (N.D. Cal. 1999) (concluding that the "first publication" exclusion did not prevent coverage where each advertisement was considered separately and some of the advertisements were published after the commencement of the policy period)). No TCPA coverage case has held that this exclusion applies.

In *Harleysville Mut. Ins. Co. v. Buzz Off Insect Shield, L.L.C.*, 664 S.E.2d 317, 321 (N.C. App. 2008), *rev'd on other grounds*, 692 S.E.2d at 623, the court held that the prior publication exclusion did not apply because the insured incurred false advertising claims within both policy periods. The court summarized the claims as "S.C. Johnson also alleged that one such false advertising claim specifically named its OFF! Deep Woods® product. All other alleged false advertising S.C. Johnson complained of was directed toward the whole market of skin-applied insect repellents." *Buzz Off*, 664 S.E.2d at 321. Despite all but one of the offending pieces apparently containing the same content, the court held that the exclusion did not apply. Thus, even if Asphalt Wizards used the same template in successive TCPA-violating fax blasts, something WHIC has not established, the "prior publication" exclusion would not apply here.

Moreover, by its very nature, an exclusion can apply only to claims that are covered by a policy. *See Shelter Mut. Ins. Co. v. Ballew*, 203 S.W.3d 789, 794 (Mo. App. 2006). Thus, determining whether the claims against Asphalt Wizard are excluded involves a two-step process. First, the claim in question must fit within the definition of an "advertising injury," and, second, the claim must also be an "injury [a]rising out of oral or written publication of material whose first publication took place before the beginning of the policy period."

Crucial to understanding exclusion is the phrase "a person's right to privacy" and the nature

23

of the "injury" he suffered because this is the person whose injury must arise from the "first publication." In *HIAR*, the Missouri Supreme Court resolved the meaning of "person" in this context by holding that it included the intended recipient of a junk fax sent in violation of the TCPA. The Court rejected the notion that "a person's right to privacy" was limited to persons who were harmed by disclosure of the material to the recipient. 2013 WL 4080770 at *8-9. Thus, an "advertising injury" could arise from an unsolicited fax advertisement without violating anyone's right to privacy other than the recipient's privacy interest in seclusion. *Id.*

It follows from *HIAR* that the Class members are the "persons" whose rights to privacy were violated in the underlying case and their "injuries" arose only from the junk faxes sent to them by Asphalt Wizards. Thus, the "advertising injury" to which the "first publication" exclusion must be applied in this case is the violation of each individual Class members' own privacy interests in seclusion. But, the "first publication" exclusion only applies to an "injury [a]rising out of oral or written publication of material whose first publication took place before the beginning of the policy period," and the Class members' interests in seclusion cannot possibly have been violated by any junk fax sent at any other time or to any other person. TCPA violations, unlike other advertising injuries, do not cause injury to the same person by repeated disclosure of the same information. In sum, the exclusion is inapplicable.

## CONCLUSION

The Policies issued by WHIC to Asphalt Wizards provides coverage for the underlying claims under two separate CGL coverage parts – CGL Coverage A and CGL Coverage B. Moreover, WHIC's failure to properly reserve its rights waived any coverage defense it might have. Even if that were not so, WHIC's purported defenses fail, as a matter of law, because it cannot prove any of the exclusionary or limitations provisions upon which it seeks to rely clearly

24

and unambiguously preclude any possibility of coverage. For all of these reasons, WHIC's Motion for summary judgment should be denied in its entirety.

Dated: December 13, 2013

FUN SERVICES OF KANSAS CITY, INC.

By: /s/ Rex A. Sharp
   One of Its Attorneys

Rex A. Sharp, MO #51205
Barbara C. Frankland, MO #45223
Gunderson, Sharp, LLP
5301 West 75th Street
Prairie Village, KS 66208
Telephone: 913/901-0505
rsharp@midwest-law.com
bfrankland@midwest-law.com

Max G. Margulis
Margulis Law Group
28 Old Belle Monte Road
Chesterfield, MO 63017
Telephone: (636) 536-7022
Fax: (636) 536-6652
Email: maxmargulis@margulislaw.com

David M. Oppenheim, #6278171IL
Jeffrey A. Berman, #6196251IL
Brian J. Wanca, of Counsel
ANDERSON + WANCA
3701 Algonquin Road, Suite 760
Rolling Meadows, IL 60008
Telephone: (847) 368-1500
Fax: (847) 368-1501
E-Mail: bwanca@andersonwanca.com
jberman@andersonwanca.com
doppenheim@andersonwanca.com

Phillip A. Bock #6224502IL
BOCK & HATCH, LLC
134 N. LaSalle Street, Suite 1000
Chicago, IL 60602
Telephone: (312) 658-5500

25

Fax: (312) 658-5555
E-Mail: phil@bochhatchllc.com

## CERTIFICATE OF SERVICE

I hereby certify that, on December 13, 2013, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send a notice of electronic filing to counsel of record.

/s/ *Rex A. Sharp*