## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MISSOURI

WESTERN HERITAGE INSURANCE          )
COMPANY,                            )
                                    )
        Plaintiff,          )
                                    )
v.                                  )    CASE NO. 4:13-CV-00034-DGK
                                    )
PARRISH LOVE d/b/a ASPHALT          )
WIZARDS, and FUN SERVICES OF KANSAS )
CITY, INC.,                         )
                                    )
        Defendants.         )


## FUN SERVICES OF KANSAS CITY, INC.'S BRIEF
## IN SUPPORT OF ITS CROSS-MOTION FOR SUMMARY JUDGMENT

# Table of Contents

INTRODUCTION ................................................................................................................1

I.     SUMMARY OF MATERIAL UNDISPUTED FACTS ......................................2

II.    PROCEDURAL STANDARDS ..........................................................................5

III.   ARGUMENT .......................................................................................................5

        A.     WHIC HAS WAIVED ITS COVERAGE DEFENSES BY
             UNDERTAKING THE DEFENSE OF ASPHALT WIZARDS IN
             THE UNDERLYING ACTION UNCONDITIONALLY, WITHOUT
             RESERVING ITS RIGHTS TO CONTEST COVERAGE ON ANY
             BASES ....................................................................................................5

        B.     THE UNDERLYING ACTION INDISPUTABLY TRIGGERS
             COVERAGE........................................................................................10

        C.     COVERAGE ALSO IS AVAILABLE UNDER THE "PRODUCTS-
             COMPLETED OPERATIONS HAZARD" ..........................................12

        D.     WHIC CANNOT MEET ITS BURDEN TO PROVE THAT ANY
             PROVISION OF THE POLICIES EXCLUDES OR OTHERWISE
             PRECLUDES COVERAGE ..................................................................15

CONCLUSION................................................................................................................17

FEDERAL CASES

*Amerisure Mut. Ins. Co. v. Paric Corp.*, 2005 WL 2708873
(E.D. Mo. Oct. 21, 2005) ..............................................................................16

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) .................................................5

*Central Armature Works, Inc. v. American Motorists Ins. Co.*, 520 F.Supp. 283
(D.D.C. 1980) ......................................................................................................8

*City of Carter Lake v. Aetna Casualty & Sur. Co.*, 604 F.2d 1052 (8th Cir. 1979)..........6

*Cynosure, Inc. v. St. Paul Fire & Marine Ins. Co.*, 645 F.3d 1 (1st Cir. 2011)..............12

*Enterprise Bank v. Magna Bank*, 92 F.3d 743 (8th Cir. 1996) .........................................5

*Harford Mut. Ins. Cos. V. Agean, Inc.*, 2011 WL 2295036 (M.D.N.C. June 8, 2011)...12

*Hooters of Augusta, Inc. v. Am. Global Ins. Co.*, 157 Fed. Appx. 201
(11th Cir. 2005)..................................................................................................12

*Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574 (1986) ...............5

*Owners Ins. Co. v. European Auto Works, Inc.*, 695 F.3d 814 (8th Cir. 2012)........11, 12

*Park Univ. Enters., Inc. v. Am. Cas. Co. of Reading, PA*, 442 F.3d 1239
(10th Cir. 2006)..................................................................................................12

*Prime TV, LLC v. Travelers Ins. Co.*, 223 F.Supp.2d 744 (M.D.N.C. 2002) ................12

*Shapiro Sales Co. v. Alcoa, Inc.*, 2006 WL 2228987 (E.D. Mo. Aug. 3, 2006).............16

*The Cincinnati Ins. Co. v. All Plumbing, Ins. Services, Parts and Installation*,
2013 WL 5665195 (D.D.C. Oct. 18, 2013) ...............................................................8, 9

*Torgerson v. City of Rochester*, 643 F.3d 1031 (8th Cir. 2011) ......................................5

*Universal Underwriters Ins. Co. v. Lou Fusz Automotive Network, Inc.*,
401 F.3d 876 (8th Cir. 2005) ........................................................................11

*W. Rim Inv. Advisors, Inc. v. Gulf Ins. Co.*, 96 Fed. Appx. 960 (5th Cir. 2004) ............12

**STATE CASES**

*Auto Club Inter-Ins. Exch. v. Medrano*, 83 S.W.3d 632 (Mo. App. 2002) ..................... 15

*Auto-Owners Ins. Co. v. Tax Connection Worldwide, LLC*, 2012 WL 6049361 (Mich. App. Dec. 4, 2012) ............................................................................................. 12

*Bogle v. Farm Bureau Mut. Ins. Co.*, 199 Kan. 707, 433 P.2d 407 (1967) ..................... 7

*Brooner & Assoc. v. Western Cas. & Sur.*, 760 S.W.2d 445 (Mo. App. 1988) ........... 6, 7

*Burns v. Smith*, 303 S.W.3d 505 (Mo. 2010) .................................................................. 15

*Cobbins v. General Acc. Fire & Life Assur. Corp., Ltd.*, 53 Ill.2d 285 (1972) ............. 13

*Columbia Cas. Co. v. HIAR Holdings LLC*, 2010 TCPA Rep. 2048 (Mo. Cir. Ct. May 18, 2011) ....................................................................................... 11, 13

*Columbia Cas. Co. v. HIAR Holdings LLC*, 2011 WL 8826010 (Mo. Cir. Ct. Nov. 29, 2011) ...................................................................................... 13, 14

*Columbia Cas. Co. v. HIAR Holdings LLC*, No. SC 93026, 2013 WL 4080770 (Mo. Aug. 13, 2013) ............................................................................................ 10, 11, 12

*Erie Ins. Exchange v. Lake City Indus. Prods., Inc.*, 2012 WL 1758706 (Mich. App. May 17, 2012) .......................................................................................... 12

*Fleishour v. Stewart Title Guar. Co.*, 743 F.Supp.2d 1060 (E.D. Mo. 2010) ................ 10

*Fun Services v. Parrish Love d/b/a Asphalt Wizards*, Case No. 0816CV00064 (Jackson Co., Missouri) ................................................................................................. 2

*Hankins v. State Farm Mut. Auto. Ins. Co.*, 139 S.W.2d 829 (Mo. App. 1964) .............. 7

*Ins. Corp. of Hanover v. Shelborne Assocs.*, 389 Ill.App.3d 795 (Ill. App. 2009) ........................................................................................................... 12

*McCormack Baron Mgmt. Serv., Inc. v. Am. Guar. & Liab. Ins. Co.*, 989 S.W.2d 168 (Mo. 1999) ................................................................................................................... 10

*McDonough v. Liberty Mut. Ins. Co., Inc.*, 921 S.W.2d 90 (Mo. App. 1996) ............... 10

*Motorists Mut. Ins. Co. v. Dandy-Jim, Inc.*, 912 N.E.2d 659 (Ohio App. 2009) ........... 12

*Pekin Ins. Co. v. XData Solutions, Inc.*, 2011 IL App (1st) 102769
(Ill. App. 2011) ...........................................................................................12

*Penzer v. Transportation Ins. Co.*, 29 So.3d 1000 (Fla. 2010) .......................11

*Pink v. Knoch*, 103 S.W.3d 221 (Mo. App. 2003) ...........................................6

*Safeco Ins. Co. of America v. Rogers*, 968 S.W.2d 256 (Mo. App. 1998) ......6

*Sawyer v. West Bend Mut. Ins. Co.*, 821 N.W.2d 250 (Wis. App. 2012) .......12

*Scottsdale Ins. Co. v. Ratliff*, 927 S.W.2d 531 (Mo. App. 1996)....................10

*Terra Nova Ins. Co. v. Fray-Witzer*, 869 N.E.2d 565 (Mass. 2007)...............11

*TIG Ins. Co. v. Dallas Basketball, Ltd.*, 129 S.W.3d 232 (Tex.App.Ct. 2004J)..............12

*Valley Forge Ins. Co. v. Swiderski Elecs., Inc.*, 223 Ill.2d 352,
860 N.E.2d 307 (Ill. 2006) ..............................................................................11

## STATUTES, RULES, AND LEGISLATIVE HISTORY

47 U.S.C. § 227.................................................................................................2

Fed.R.Civ.P. 56(c) ............................................................................................5

Local Rule 56.1(a) ............................................................................................2

V.A.M.S. 379.845 ...........................................................................................16

V.A.M.S. 379.845(2) .......................................................................................16

## OTHER PUBLICATIONS

Allan D. Windt, Insurance Claims & Disputes: Representation of Insurance
Companies & Insureds § 2.14 (5th ed. 2011) ...................................................6

James M. Davis and Paul Walker-Brigth, Insurers' Use of Boilerplate Affirmative
Defenses and Rule 11-Where's the Outrage, 15 Coverage 1, American Bar
Association Section of Litigation (Jan./Feb. 2005) ..........................................8

Jerold Oshinsky & Theodore A. Howard, Practitioner's Guide to the Law of Ins.
Coverage § 2.05 (2nd ed. 1998 & Supp. 2007) ...........................................7, 8

Judith F. Goodman & Sue C. Jacobs, Law & Practice of Insurance Coverage

Litigation § 8.9 (David L. Leitner et al. eds. 2007) ......................................................6, 7

Lee R. Russ & Thomas F. Segalia, Couch on Insurance § 202.48 (3d ed. 2000).............7

Peter Kalis, et al., Policyholder's Guide to the Law of Ins. Coverage § 24.04
(1998 & Supp. 2007)..........................................................................................................7

Plaintiff Western Heritage Insurance Company ("WHIC") collected premiums from its insured, Parrish Love d/b/a Asphalt Wizards ("Asphalt Wizards"). Now, however, when Asphalt Wizards calls on WHIC to honor its contractual obligations under the Policies of insurance for which it paid, WHIC disclaims its duties and seeks to extinguish those obligations, and thereby abandon Asphalt Wizards, through a whirlwind of premature elocution and smokescreens. It should not be rewarded for those efforts.

The Missouri Supreme Court and the Eighth Circuit Court of Appeals each have found coverage for the claims at issue under the same or substantially similar policy language as that at issue here. There is absolutely no merit to WHIC's effort to escape its contractual duties to its insured, Asphalt Wizards, and particularly its duty to defend, on the basis of a premature rush to declare the coverage questions presented in this case.

Even if that were not the case, WHIC undertook the defense of Asphalt Wizards for the Underlying Action unconditionally. WHIC provided the defense, through counsel it retained, for more than five years before purporting to inform Asphalt Wizards that WHIC believed the defense was subject to a reservation of rights, and the claimed basis therefor. Having defended for an extended period without properly and clearly reserving its rights, WHIC waived its attempt to escape its duty to defend and coverage defenses.

This Court should declare, on the basis of the allegations of the Petition in the Underlying Action and the pertinent Policies, that WHIC has a duty to defend, has waived or is estopped from avoiding the duty to defend, and that WHIC also has a duty to indemnify Asphalt Wizards for the Underlying Action. Summary judgment in favor of Fun Services and Asphalt Wizards is thus warranted and appropriate. WHIC's motion for summary judgment also should be denied.

# I.    SUMMARY OF MATERIAL UNDISPUTED FACTS

In accordance with LR 56.1(a), Fun Services provides the following statement of material, undisputed facts:

1.    On January 7, 2008, Fun Services commenced a civil class action captioned "*Fun Services of Kansas City, Inc., individually and on behalf of a class of similarly-situated persons v. Parrish Love d/b/a Asphalt Wizards*," Case No. 0816 CV 00064, in the Circuit Court of Jackson County, Missouri (the "Underlying Action"). (WHIC Ex. 14.)

2.    The Petition in the Underlying Action alleges that Asphalt Wizards violated the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, by sending unsolicited junk faxes to Fun Services and other members of the alleged Class. The Underlying Action also asserts a cause of action for common law conversion. (WHIC Ex. 14.)

3.    WHIC issued consecutive annual commercial general liability insurance policies to Asphalt Wizards, including those covering the periods: (1) May 12, 2004 through May 12, 2005; (2) May 12, 2005 through May 12, 2006; and (3) May 12, 2006 through May 12, 2007 (collectively the "Policies"). (WHIC Exs. 2, 3, 4.)

4.    Each of the Policies contains a $2 million "general aggregate" limit for all damages other than "bodily injury" or "property damage" claims that fall under the "products-completed operations hazard," and an additional $2 million limit for "bodily injury" or "property damage" claims that fall under the "products-completed operations hazard." (WHIC Exs. 2, 3, 4.)

5.    The Policies provide general liability coverage for damages because of "bodily injury" and "property damage" (CGL Coverage A) and for "personal and advertising injury" (CGL Coverage B). (WHIC Ex. 2, at p. WHIC 00956, 0960-00961; WHIC Ex. 3, at p. WHIC 01093, 01097-01098; WHIC Ex. 4, at p. WHIC 01028, 01032-01033.)

6.     CGL Coverage A (for "bodily injury" and "property damage") includes both coverage under the policy's general aggregate limits and also "products-completed operations" coverage, with a separate policy limit. (WHIC Ex. 2, at p. WHIC 00970; WHIC Ex. 3, at p. WHIC 01106; WHIC Ex. 4, at p. WHIC 01041.)

7.     Each of the Policies contains a $2 million "general aggregate" limit for all damages other than "bodily injury" or "property damage" claims that fall under the "products-completed operations hazard," and an additional $2 million limit for "bodily injury" or "property damage" claims that fall under the "products-completed operations hazard." (WHIC Ex. 2, at p. WHIC 00953; WHIC Ex. 3, at p. WHIC 01090; WHIC Ex. 4, at p. WHIC 01024.)

8.     Asphalt Wizards tendered the Underlying Action to WHIC for coverage. (*See* WHIC Ex. 15.)

9.     In response to the tender, WHIC agreed to provide a defense for Asphalt Wizards, and informed Asphalt Wizards of that fact by letter dated June 26, 2008. (*See* WHIC Ex. 15.)

10.     That letter was just more than one page in length. It did ***not*** state or imply that WHIC was reserving any rights to contest coverage, or that the defense was being provided subject to a reservation of rights. (*See* WHIC Ex. 15.)

11.     The June 26, 2008 letter noted only that the amount of compensatory damages sought might exceed the limits of liability provided in Asphalt Wizards' Policies. (*See* WHIC Ex. 15.)

12.     The letter also "reminded" Asphalt Wizards "that your policy deductible is $1,000.00." (*See* WHIC Ex. 15.)

13.     The letter issued by WHIC on June 26, 2008, specifically stated that WHIC had retained the law firm of Brown & James to defend Asphalt Wizards in the Underlying Action. (*See* WHIC Ex. 15.)

14.     More than four years thereafter, WHIC issued a second letter dated October 29, 2012, in which WHIC acknowledged that it had been defending Asphalt Wizards in the Underlying Action since its original June 26, 2008 correspondence, and further stated ***for the first time*** that it was providing that defense "subject to a reservation of rights." (WHIC Ex. 18.)

15.     The 12-page October 29, 2012 letter purported to list a litany of purported coverage defenses about which WHIC had not apprised Asphalt Wizards in the June 26, 2008 letter. (*Compare* WHIC Ex. 14 with WHIC Ex. 18.)

16.     On January 14, 2013, WHIC filed its original complaint in this declaratory judgment action. (Dkt. # 1.)

17.     Thereafter, on June 7, 2013, WHIC filed a First Amended Complaint. (Dkt. # 31.)

18.     In its responsive pleading to the First Amended Complaint, Fun Services averred three separate Affirmative Defenses. Specifically, Fun Services alleged that: (1) that WHIC failed to provide proper reduction in coverage notice to Asphalt Wizards regarding the insertion of the certain exclusion endorsement into a renewal policy and, therefore, that endorsement is not validly part of the policy; (2) that WHIC failed to  properly receive regulatory approval for the exclusion and therefore that endorsement is not validly part of the policy; and that (3) WHIC failed to disclose conflicts of interest or offer Asphalt Wizards an independent counsel and therefore it has waived its right to contest coverage. (Dkt. # 34.)

## II.     PROCEDURAL STANDARDS

The standards for summary judgment are well settled. The moving party has the burden to establish both the absence of a genuine issue of material fact and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Enterprise Bank v. Magna Bank*, 92 F.3d 743, 747 (8th Cir. 1996). Summary judgment should be granted when, viewing the evidence in the light most favorable to the nonmoving party and giving the nonmoving party the benefit of all reasonable inferences, there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Torgerson v. City of Rochester*, 643 F.3d 1031, 1043 (8th Cir. 2011).

## III.    ARGUMENT

### A.     WHIC HAS WAIVED ITS COVERAGE DEFENSES BY UNDERTAKING THE DEFENSE OF ASPHALT WIZARDS IN THE UNDERLYING ACTION UNCONDITIONALLY, WITHOUT RESERVING ITS RIGHTS TO CONTEST COVERAGE ON ANY BASIS

By letter dated June 26, 2008, WHIC: (1) acknowledged Asphalt Wizards' tender of the Underlying Action; (2) agreed unconditionally to provide a defense to Asphalt Wizards in the Underlying Action; and (3) informed Asphalt Wizards that it had retained the firm of Brown & James as defense counsel to defend Asphalt Wizards in the Underlying Action. (WHIC Ex. 15.) The June 26, 2008 letter did not state or imply that WHIC was defending subject to a reservation of its rights to contest coverage. (*See id.*) The letter did not inform Asphalt Wizards of any potential coverage defenses. (*See id.*) To the contrary, the letter: (1) stated only that the damages sought in the Underlying Action might exceed applicable policy limits; and (2) "reminded" Asphalt Wizards "that your policy deductible is $1,000.00." (*See id.*)

Having unconditionally undertaken the defense without reserving its rights, WHIC waived its coverage defenses and its belated effort to reverse course and deny a defense.

"Under Missouri law, an insurer may choose to undertake the defense of its insured and reserve its right to later disclaim coverage, provided it gives the insured notice of a reservation of rights." *Pink v. Knoch*, 103 S.W.3d 221, 227-28 (Mo. App. 2003) (quoting *Safeco Ins. Co. of America v. Rogers*, 968 S.W.2d 256, 258 (Mo. App. 1998)). Where an insurer fails to provide notice to the insured that its defense of the action is subject to a reservation of its right to assert non-liability, the insurer forfeits its right to rely upon its policy provisions and is barred from disclaiming coverage. *Rogers*, 968 S.W.2d at 258 (citing *Brooner & Assoc. v. Western Cas. & Sur.*, 760 S.W.2d 445, 447 (Mo. App.1988); *see also City of Carter Lake v. Aetna Casualty & Sur. Co.*, 604 F.2d 1052, 1060 n.7 (8th Cir. 1979) ("Reservation of rights is a means by which prior to determination of the liability of the insured, the insurer seeks to suspend the operation of waiver and estoppel. When coverage is in doubt, the insurer may offer to defend the insured, reserving all of its policy defenses in case the insured is found liable."). All of WHIC's defenses to coverage were waived long ago under well settled law. The Court need look no further.

The very "purpose of reservation of rights letters is to enable insureds to make informed decisions as to whether they should, because of the existence of conflicts of interest between themselves and their insurers, take some action in order to protect their interests." Allan D. Windt, Insurance Claims & Disputes: Representation of Insurance Companies & Insureds § 2.14 (5th ed. 2011). "An insurer, therefore, should set out in its reservation of rights letter every reason of which it is aware, or should then be aware, why the insured might not ultimately be entitled to coverage." *Id.* (footnote omitted); *see also* Judith F. Goodman & Sue C. Jacobs, Law & Practice of Insurance Coverage Litigation § 8.9 (David L. Leitner et al. eds 2007) ("General statements that purport to

reserve all rights a carrier might have under its policy are inadequate. The insurer must specifically identify and quote all relevant policy language and all of the coverage defenses upon which it is relying."); Lee R. Russ & Thomas F. Segalia, Couch on Insurance § 202.48 (3d ed. 2000) ("The insurer's reservation of rights letter must contain all applicable coverage defenses.").

It follows that to meet its obligation, the "insurer must avoid ambiguity in the reservation of rights" letter. Goodman & Jacobs § 8.9. In order to do so, certain elements should be included in a reservation of rights letter, including: (i) specific identification of the policy at issue; (ii) a description of the claims or allegations in the complaint, including details of the facts known at that time; (iii) citation and quotation of each policy provision forming the basis of the insurer's coverage defenses, including an explanation of why each provision could cause denial of coverage; (iv) a specific reservation of the insurer's right to change its coverage position and to assert defenses based on any of the policy provisions, even if not specifically set forth in the letter; (v) a detailed explanation of the claim investigation that will be undertaken to determine the insurer's ultimate coverage decision and when that decision should be expected; and (vi) an advisement of any issues that actually or potentially give rise to a conflict of interest between the insurer and insured. *See* Peter Kalis, *et al.*, Policyholder's Guide to the Law of Ins. Coverage § 24.04 (1998 & Supp. 2007); Jerold Oshinsky & Theodore A. Howard, Practitioner's Guide to the Law of Ins. Coverage § 2.05 (2nd ed. 1998 & Supp. 2007); Goodman & Jacobs § 8.9.

Applying these principles leads to the conclusion that a reservation of rights letter must indicate each specific coverage defense to be asserted by the insurer, or else the insurer is barred from raising them later. *See Brooner*, 760 S.W.2d at 447–48 (insured must be "fully-notified" by insurer's reservation of right to avoid waiver); *Hankins*, 379 S.W.2d at 831 (Mo. App.1964) (insurer's reservation of its rights must be "clear" to avoid waiver). *See, e.g., Bogle v. Farm Bureau*

*Mut. Ins. Co.*, 199 Kan. 707, 711-12 (Kan. 1967) ("where an insurance company under a liability policy takes charge of the only defense which may then be imposed to an action on which liability rests … it will be estopped from thereafter questioning the claim because it was beyond the terms of the policy or because of a breach of a noncoverage clause, unless it gives notice of its right to set up the defense of noncoverage under an adequate and proper nonwaiver and reservation of rights notice to the insured."); *Central Armature Works, Inc. v. American Motorists Ins. Co.*, 520 F. Supp. 283, 288 n. 4 (D. D.C. 1980) (insurer's failure to mention a particular exclusion when it reserved its rights under the policy barred it from later raising the omitted exclusion in litigation as a basis to avoid its duties under the policy). *See also* Oshinsky & Howard § 2.05; 7C Appleman, Ins. Law and Practice § 4694, at 353 (notice to an insured of a reservation of rights is insufficient unless it makes specific reference to the policy defense being relied upon); James M. Davis and Paul Walker–Bright, Insurers' Use of Boilerplate Affirmative Defenses and Rule 11—Where's the Outrage, 15 Coverage 1, American Bar Association Section of Litigation (Jan./ Feb.2005) ("if the insurer fails to set forth specific defenses in its reservation of rights letter, it may be held to have waived those defenses or be estopped from asserting them at a later stage.").

The recent decision in *The Cincinnati Ins. Co. v. All Plumbing, Inc. Service, Parts Installation*, 2013 WL 5665195 (D. D.C. Oct. 18, 2013) is illustrative. Cincinnati Insurance had defended All Plumbing against an earlier, separate TCPA lawsuit filed by a different plaintiff, Love The Beer, which subsequently was settled and dismissed. *Id.* at * 1. Cincinnati Insurance issued a reservation of rights letter in connection with the Love The Beer lawsuit. *Id.* Cincinnati Insurance undertook the defense of the second lawsuit filed by FDS, however, without reserving its rights. *Id.* at * 2. In its Motion for Summary Judgment, FDS contended that Cincinnati Insurance

had waived its ability to disclaim coverage under the terms of the Policy because it assumed its insured's defense without properly reserving its rights. *Id.* at *4. The court agreed. *Id.*

In reaching its conclusion, the court noted:

> It is 'well settled that an insurer undertaking the defense of an insured against a litigious assertion of an unprotected liability, without a disclaimer of contractual responsibility and a suitable reservation of its rights, is foreclosed from thereafter taking refuge in the policy provisions exempting the liability from coverage.'

*Id.* at * 4. Since "Cincinnati Insurance did not communicate any reservation of rights to All Plumbing and Shafik upon assuming the defense against FDS' claims," the court held Cincinnati Insurance had "waived all defenses to coverage." *Id.* at *5. Cincinnati Insurance was thus precluded "from asserting any defenses to coverage of the FDS action" and summary judgment finding coverage was warranted. *Id.* at * 6.[1]

The circumstances presented here are closely comparable, and the same result warranted. The June 26, 2008 letter was sent to Asphalt Wizards contemporaneously with WHIC's retention of defense counsel to defend them in the Underlying Action. In that letter, however, WHIC did not communicate any reservation of rights, did not inform Asphalt Wizards of any potential defenses to coverage that WHIC would assert, and did not state clearly that the defense was provided subject to any reservation. In sum, WHIC undertook the defense of its insured without a disclaimer of contractual responsibility and without a clear reservation of its rights. Having failed to specifically

---

[1] The Court also rejected Cincinnati Insurance's contention that its failure to properly reserve rights was inconsequential because it filed its coverage action, holding that the five-month delay was not justified and could not remediate the failure to properly notify the insureds that it would disclaim coverage. WHIC may similarly point to its letter dated October 29, 2012 (WHIC Ex. 18), and its filing of the instant coverage lawsuit on January 14, 2013, as somehow curing its omission. However, those acts took place 52 months and 55 months after WHIC unconditionally assumed the defense here, respectively. Just as the five-month delay was unjustified in *All Plumbing*, and could not avoid waiver, neither a 52 nor 55 month delay here is in any way remotely justifiable.

reserve its rights to contest coverage under the Policies, on any articulated basis, WHIC is barred from raising them as a defense in this action.

## B.     THE UNDERLYING ACTION INDISPUTABLY TRIGGERS COVERAGE

WHIC seeks a declaration extinguishing its obligations under the Policies it issued to Asphalt Wizards. It is not entitled to any such declaration. To the contrary, this Court can and should declare, as a matter of law, that coverage exists for the Underlying Action.

Under Missouri law, a determination of an insurer's coverage obligations is made on the basis of a review of the allegations of the underlying complaint and the insurance policy. *See McCormack Baron Mgmt. Serv., Inc. v. Am. Guar. & Liab. Ins. Co.*, 989 S.W.2d 168, 170-71 (Mo. 1999); *McDonough v. Liberty Mut. Ins. Co., Inc.*, 921 S.W.2d 90, 93 (Mo. App. 1996); *Fleishour v. Stewart Title Guar. Co.*, 743 F.Supp.2d 1060, 1066 (E.D. Mo. 2010). If the underlying complaint alleges facts which state a claim potentially or arguably within the policy's coverage, there is a duty to defend. *McDonough*, 921 S.W.2d at 93; *Fleishour*, 743 F.Supp.2d at 1066. The presence of any potentially insured claims in complaint gives rise to a duty to defend, even though claims beyond coverage may also be present. *Scottsdale Ins. Co. v. Ratliff,* 927 S.W.2d 531, 534 (Mo. App. 1996); *Fleishour*, 743 F.Supp.2d at 1066.

Here, coverage is triggered for both "property damage," and "personal and advertising injury" coverage under the Policies, based on the allegations of the Underlying Action.

On August 13, 2013, the Missouri Supreme Court rendered a decision in which it definitively concluded, under Missouri law, that junk faxing claims are covered under general liability insurance policies. *See Columbia Cas. Co. v. HIAR Holdings LLC*, No. SC 93026, __ S.W.3d __, 2013 WL 4080770 (Mo. Aug, 13, 2013). The Complaint in the Underlying Action, here, alleges essentially the same claims at issue in HIAR. The pertinent provisions of the Policies

are essentially identical as well. As such, then *HIAR* decision conclusively resolves the question of whether the Underlying Action alleges claims covered by the Policies.

*HIAR* arose out of an underlying class action lawsuit alleging that the insured, HIAR, had violated the TCPA by sending unsolicited junk advertising faxes. HIAR was insured by Columbia Casualty Company ("Columbia"). HIAR tendered the underlying action to Columbia, which denied coverage and refused to defend. Columbia later sought a declaratory judgment that its policy did not provide coverage. The trial court entered judgment in favor of the claimant class, holding that the insurer wrongly had refused to defend and was liable to indemnify the insured by paying the full amount of the resulting settlement, plus interest. *See Columbia Cas. Co. v. HIAR Holdings, LLC*, 2010 TCPA Rep. 2048 (Mo. Cir. Ct. May 18, 2011), *aff'd by* 2013 WL 4080770.

The Missouri Supreme Court affirmed the trial court. In particular, the Court held that: (1) Columbia had wrongly refused to defend HIAR (2013 WL 4080770, at * 4); (2) a TCPA statutory damage award is not a penalty or a fine (*id.* at * 4-7); (3) coverage existed under the policy for "property damage" coverage, including "products-completed operations" coverage (*id.* at * 7-8); (4) coverage existed under the policy for "advertising injury" (*id.* at * 8-9); and (5) coverage for TCPA claims is not contrary to Missouri public policy (*id.* at * 13-14).

The Eighth Circuit also has issued definitive rulings finding coverage for comparable claims. *See Underwriters Ins. Co. v. Lou Fusz Automotive Network, Inc.*, 401 F.3d 876, 880 (8th Cir. 2005); *Owners Ins. Co. v. European Auto Works, Inc.*, 695 F.3d 814, 818-22 (8th Cir. 2012).

In fact, the majority of jurisdictions to have addressed the question under WHIC's policy language have found coverage, including the only four state supreme courts to consider it. *See HIAR*; *Penzer v. Transp. Ins. Co.*, 29 So.3d 1000 (Fla. 2010); *Terra Nova Ins. Co. v. Fray-Witzer*, 869 N.E.2d 565 (Mass. 2007); *Valley Forge Ins. Co. v. Swiderski Elecs., Inc.*, 860 N.E.2d 307 (Ill.

2006). Also finding coverage are the Fifth, Tenth, and Eleventh Circuit Courts of Appeals. *See Owners Ins. Co. v. European Auto Works, Inc.*, 695 F.3d 814 (8th Cir. 2012); *W. Rim Inv. Advisors, Inc. v. Gulf Ins. Co.*, 96 Fed. Appx. 960 (5th Cir. 2004); *Park Univ. Enters.,* Inc. *v. Am. Cas. Co. of Reading, PA*, 442 F.3d 1239 (10th Cir. 2006); *Hooters of Augusta, Inc. v. Am. Global Ins. Co.*, 157 Fed. Appx. 201 (11th Cir. 2005). *See Cynosure, Inc. v. St. Paul Fire & Marine Ins. Co.*, 645 F.3d 1, 4 (1st Cir. 2011). *See also Harford Mut. Ins. Cos. v. Agean, Inc.*, 2011 WL 2295036 (M.D. N.C. June 8, 2011); *Prime TV, LLC v. Travelers Ins. Co.*, 223 F. Supp. 2d 744, 751-52 (M.D.N.C. 2002). Many state appellate courts also have found coverage. *See, e.g., Auto-Owners Ins. Co. v. Tax Connection Worldwide, LLC*, 2012 WL 6049361 (Mich. App. Dec. 4, 2012); *Sawyer v. West Bend Mut. Ins. Co.*, 821 N.W.2d 250 (Wis. App. 2012); *Erie Ins. Exchange v. Lake City Indus. Prods., Inc.*, 2012 WL 1758706, *3 (Mich. App. May 17, 2012); *Pekin Ins. Co. v. XData Solutions, Inc.*, 2011 IL App (1st) 102769 (Ill. App. 2011); *Motorists Mut. Ins. Co. v. Dandy-Jim, Inc.*, 912 N.E.2d 659 (Ohio App. 2009); *Ins. Corp. of Hanover v. Shelborne Assocs.*, 389 Ill.App.3d 795 (Ill. App. 2009); *TIG Ins. Co. v. Dallas Basketball, Ltd.*, 129 S.W.3d 232 (Tex. App. Ct. 2004).

There is no dispute that the Policies contain terms identical to the policy evaluated by the Missouri Supreme Court in *HIAR*. (*See* WHIC Exs. 2, 3, 4, *generally*.) *HIAR* controls. Coverage exists, as a matter of law.

## C. COVERAGE ALSO IS AVAILABLE UNDER THE "PRODUCTS-COMPLETED OPERATIONS HAZARD"

The Missouri Supreme Court just made clear that coverage exists under both "advertising injury" and "property damage" coverages. *HIAR Holdings*, 2013 WL 4080770. *HIAR* further acknowledged and affirmed the trial court holding that the "property damage" aspect fits under the "products-completed operations hazard." *Id.* at *2 n.8, *14. Because the claims are covered under both "advertising injury" and "property damage," and because the "property damage" claims fall

within the "products-completed operations hazard," as discussed below, *both* limits apply to satisfy claims—for a total of $4 million per policy. *See Columbia Cas. Co. v. Hiar Holdings, LLC*, 2010 TCPA Rep. 2048 (Mo. Cir. Ct. May 18, 2011), *aff'd by* 2013 WL 4080770.

The Policies define "products-completed operations hazard" as "all 'bodily injury' and 'property damage' occurring away from premises you own or rent and arising out of 'your product' or 'your work.'" (WHIC Ex. 2, at p. WHIC 00970; WHIC Ex. 3, at p. WHIC 01106; WHIC Ex. 4, at p. WHIC 01041.) The Policies define "your product" as including "any goods or products...distributed...by You [or] Others trading under your name." (WHIC Ex. 2, at p. WHIC 00971; WHIC Ex. 3, at p. WHIC 01107; WHIC Ex. 4, at p. WHIC 01042.) The Policies go on to state that "'your product' includes warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of 'your product.'" (*Id.*) The Policies define "your work" as "[w]ork or operations performed by you or on your behalf; and [m]aterials, parts or equipment furnished in connection with such work or operations." *Id.* The Policies state that "'your work' includes warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of 'your work.'" (*Id.*)

Under coverage provided by the Policies, "[t]he definition of the products' hazard does not permit the interpretation that it applies only to the typical product-liability or defective-product case. It is not so limited. The hazard applies to all product related injuries…." *Cobbins v. General Acc. Fire & Life Assur. Corp., Ltd.*, 53 Ill.2d 285, 292 (1972). Relying on *Cobbins*, the *HIAR* circuit court specifically held that "products-completed operations" coverage applied to underlying unsolicited fax claims indistinguishable from those at issue here. *See HIAR,* 2011 WL 8826010, *aff'd by* 2013 WL 4080770, *2 n.8 and *14 (Mo. Aug. 13, 2013) ("The trial court also determined

that the class's claims were within the plain language of Columbia's policy provisions related to a "products-completed operations hazard….the trial court's judgment is affirmed.").

The *HIAR* circuit court reasoned that:

> It is indisputable that the property damage occurred on the class members' premises, and not on HIAR's. Further, the property damage claims arose out of HIAR's products and its work, as those terms are defined in the Policies. The fax advertisements are materials distributed by HIAR that make statements regarding "the fitness, quality, durability, performance or use of" its hotels. The ad solicited bookings for holiday parties at the Holiday Inn Riverport and stated that the hotel has "a package to work with any size group" and "elegant decor." Likewise, the advertisements were sent as part of HIAR's business operations, and constituted materials furnished in connection with its operations.
>
> *   *   *
>
> The Policy does not define "good" or "product." Dictionary.com defines "product" as including "a thing produced by labor." *See http://dictionary.reference.com/browse/product.* It defines "good" as including "possessions, especially movable effects or personal property." *See http://dictionary.reference.com/browse/good.* An advertisement is certainly those things: it is produced by creative labor and is a tangible piece of personal property. Further, it is undisputable that HIAR's hotel is one of its products. The faxes in question advertised that hotel and made statements regarding the fitness, quality and use of the hotel. Thus, even if the advertisements themselves are not "goods" or "products" as defined by Columbia, they are representations regarding goods or products, as defined. With respect to "your work," Columbia points to the portion of the Policy definition pertaining to when work is completed, a portion of the definition not at issue, and again fails to address the fact that the definition includes representations regarding work. In sum, Columbia has provided neither reason nor authority supporting its view that its broadly drafted coverage definitions do not encompass these claims. [2011 WL 8826010]

As in *HIAR*, it is indisputable that the property damage here occurred on the class members' premises, and not on Asphalt Wizards' premises. Further, the property damage claims arose out of Asphalt's products and its work, as those terms are defined in the Policies. The fax advertisements are materials distributed by Asphalt Wizards that make statements regarding "the fitness, quality, durability, performance or use of" its products and services. Likewise, the advertisements were

sent as part of Asphalt Wizards' business operations, and constituted materials furnished in connection with its operations.

Asphalt Wizards caused faxes to be transmitted to class members, off of Asphalt Wizards' premises, and thereby caused damage to the recipient's property. The advertisements were products and/or work under the definition in the Policies. As discussed, the policy coverage is what it says, with all ambiguities resolved in favor of coverage. Policy language must be given its plain and ordinary meaning, and any ambiguities or equivocal expressions must be resolved in favor of the insured. A policy provision that purports to limit coverage must be read narrowly and will be applied only where its terms are clear, definite, and specific. There is nothing about the Products-Completed Operations coverage that clearly, definitely, and specifically limits it in such a way as to preclude a duty to defend and indemnify here. The Missouri Supreme Court has so held.

**D. WHIC CANNOT MEET ITS BURDEN TO PROVE THAT ANY PROVISION OF THE POLICIES EXCLUDES OR OTHERWISE PRECLUDES COVERAGE**

WHIC seeks to escape its obligations to asphalt Wizards by relying on the various exclusionary and limitations provisions it has invoked. It is WHIC's burden to prove that those provisions unambiguously remove the claims from coverage entirely. *See Burns v. Smith*, 303 S.W.3d 505, 509 (Mo. 2010); *Auto Club Inter–Ins. Exch. v. Medrano*, 83 S.W.3d 632, 638 (Mo. App. 2002). Even if its defenses were not waived, and they are, WHIC cannot meet that burden.

As discussed in Fun Services' Response Brief (pp. 9-15), the "Violation Of Statutes" exclusion, which purportedly is part of only one of the Policies in any event, and that is disputed, does not obviate WHIC'S coverage obligations for the conversion claim. Fun Services incorporates that discussion here. In sum, the exclusion is ambiguous and, at most, precludes coverage for specific statutory claims. As such, the exclusion would not apply to, or bar coverage

for, the separate and independent claim alleged in the Underlying Action for conversion. It necessarily follows that WHIC cannot meet its burden to prove there is no possibility of coverage, based on the application of unambiguous policy terms, by relying on the "Violation Of Statutes" exclusion.[2]

In addition, as discussed in Fun Services' Response Brief (pp. 15-22), the "Deductible" does not extinguish WHIC'S coverage obligations. Fun Services incorporates that discussion here. In sum, the presence of the deductible in the Policies does not unambiguously relieve WHIC of either its duty to defend or its duty to indemnify. Further, the allegations of the Petition in the Underlying Action do not preclude the possibility of one or more aggrieved parties recovering in excess of the deductible. It necessarily follows that WHIC cannot meet its burden to prove there is no possibility of coverage, based on the application of unambiguous policy terms, by relying on the deductible.[3]

---

[2]    In addition, because WHIC inserted the "Violation of Statutes" exclusion in a renewal policy, WHIC had an obligation under **both** the policy and Missouri law (*see* V.A.M.S. 379.845) to provide notice of the reduction in coverage. The statute provides that notice is required to be sent to the insured "not less than thirty days prior to the cancellation or nonrenewal of any risk under the program to allow ample time for an application for new coverage to be made and a new policy to be written under the program."  V.A.M.S. 379.845(2). A renewal of a policy based on diminished coverage terms is the equivalent of a cancellation or nonrenewal. Fun Services has averred that WHIC provided no notice of reduction in coverage relative to the insertion of the statutory TCPA exclusion in the 2006-07 renewal policy. To date, Fun Services' efforts to obtain discovery germane to that issue has been thwarted. (*See* Dkt. # 80.) Nevertheless, absent proper notice, the exclusion never validly became part of the policy, and cannot be relied upon by WHIC.

[3]    The factual considerations germane to the deductible question overlap substantially with those directly at issue in the Underlying Action, which remains unresolved, and thus it would be premature for this Court to base a determination that no duty exists on that basis. *See Amerisure Mut. Ins. Co. v. Paric Corp.*, 2005 WL 2708873 (E.D. Mo. Oct. 21, 2005); *Shapiro Sales Co. v. Alcoa, Inc.*, 2006 WL 2228987 (E.D. Mo. Aug. 3, 2006).

Likewise, as discussed in Fun Services' Response Brief (pp. 22-24), the "prior publication" exclusion, which applies only to "advertising injury," does not eliminate WHIC's coverage obligations. Fun Services also incorporates that discussion here.

## CONCLUSION

The Policies issued by WHIC to Asphalt Wizards provides coverage for the underlying claims under two separate CGL coverage parts – CGL Coverage A and CGL Coverage B – under Missouri law. Moreover, WHIC's failure to properly reserve its rights waived any coverage defense it might have. Even if that were not so, WHIC's purported defenses fail, as a matter of law, because it cannot prove any of the exclusionary or limitations provisions upon which it seeks to rely clearly and unambiguously preclude any possibility of coverage. For all of these reasons, summary judgment in favor of Fun Services is warranted and appropriate. WHIC's Motion for summary judgment should be denied in its entirety.

Dated: December 13, 2013

FUN SERVICES OF KANSAS CITY, INC.

By: /s/ *Rex A. Sharp*
       One of Its Attorneys

Rex A. Sharp, MO #51205
Barbara C. Frankland, MO #45223
Gunderson, Sharp, LLP
5301 West 75th Street
Prairie Village, KS 66208
Telephone: 913/901-0505
rsharp@midwest-law.com
bfrankland@midwest-law.com

Max G. Margulis
Margulis Law Group
28 Old Belle Monte Road
Chesterfield, MO 63017
Telephone: (636) 536-7022
Fax: (636) 536-6652
Email: maxmargulis@marguilislaw.com

David M. Oppenheim, #6278171IL
Jeffrey A. Berman, #6196251IL
Brian J. Wanca, of Counsel
ANDERSON + WANCA
3701 Algonquin Road, Suite 760
Rolling Meadows, IL 60008
Telephone: (847) 368-1500
Fax: (847) 368-1501
E-Mail: bwanca@andersonwanca.com
jberman@andersonwanca.com
doppenheim@andersonwanca.com


Phillip A. Bock #6224502IL
BOCK & HATCH, LLC
134 N. LaSalle Street, Suite 1000
Chicago, IL  60602
Telephone:  (312) 658-5500
Fax: (312) 658-5555
E-Mail: phil@bochhatchllc.com


## CERTIFICATE OF SERVICE

I hereby certify that, on December 13, 2013, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send a notice of electronic filing to counsel of record.


/s/ *Rex A. Sharp*