UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI

| WESTERN HERITAGE INSURANCE COMPANY, | ) | |
|---|---|---|
| Plaintiff, | ) ) ) | |
| v. | ) ) | CASE NO. 4:13-CV-00034-DGK |
| PARRISH LOVE d/b/a ASPHALT WIZARDS, et al., | ) ) ) | |
| Defendants. | ) | |

## WHIC'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

### I. INTRODUCTION

Fun Services' arguments in opposition to Western Heritage Insurance Company's ("WHIC") Summary Judgment Motion fail as a matter of law. WHIC's policies contain a $1,000 "per claim" and per person deductible. As the deductible clearly states, WHIC owes no payment until the $1,000 per-claim deductible is paid. Here, the underlying class members are seeking only $500 per TCPA claim. Since this is well under the $1,000 per-claim deductible, WHIC owes no payment obligation as a matter of law. Fun Services' attempt to avoid this result by relying on cases involving materially *different* deductible provisions is unavailing.

Fun Services is also barred by estoppel from arguing that the class members are seeking "actual" damages rather than $500 in statutory damages. Judicial estoppel precludes a party from taking inconsistent positions in successive court proceedings. Here, Fun Services convinced the underlying court to grant class certification by arguing that the class members were uniformly seeking $500 in statutory damages and cannot now claim that the class members are seeking "actual" damages. Fun Services has also not shown and cannot show that the "actual damages" from sending an unsolicited fax would exceed $500 per fax.

In its argument that the "prior publication" exclusion is inapplicable, Fun Services relies on cases that have been *reversed* and which involve the distinct "duty to defend." Unlike the

cases on which Fun Services relies, WHIC is not arguing that the prior publication exclusion applies based on allegations in the pleadings, but that the insured sent the first faxed ad in February of 2005, before the May 2005 through May 2007 policies commenced. Thus, the prior publication exclusion applies to bar any indemnity obligation as a matter of law.

Finally, Fun Services cites no viable authority for its argument that the conversion claim falls outside the scope of the TCPA exclusion. Circuit court cases from Illinois are not binding on this Court, and the appellate courts that have considered the issue have held conversion claims *do* fall under the TCPA exclusion because they involve the same conduct. Regardless, conversion could not be covered under the policies. It does not involve "accidental" conduct as required for "property damage" coverage. Conversion is also not among the enumerated personal and advertising injury offenses, and does not involve any of the elements of an invasion of privacy offense.

## II. WHIC'S REPLY TO FUN SERVICES' ADDITIONAL FACTS

Paragraphs 1, 8, 16 and 17 are admitted by WHIC for purposes of this summary judgment motion only.

Paragraph 2 is uncontroverted as the document speaks for itself as to its contents. However, the conversion claim is irrelevant to WHIC's arguments insofar as the courts have held such claims are subject to the TCPA exclusion.

Paragraph 3 is uncontroverted that the policies were issued, but controverted as Fun Services has the wrong inception/expiration date of 5/12 (rather than 5/18). *See* Doc. 67-2, p. 944; Doc. 67-3, p. 1081; Doc. 67-4, p. 992.

Paragraph 4 is controverted. The fact is incomplete and does not set forth the full policy terms. It is also irrelevant to this Opposition because Fun Services does not make any arguments concerning the products-completed operations issue in the Opposition. *See* Docs. 67-2 – 67-4.

Paragraph 5 is uncontroverted that the policy provides PD and AI/PI coverage subject to the stated terms, conditions and exclusions and that the policy speaks for itself. However, controverted as the purported fact is not an accurate and full characterization of the policy language. Among other things, it fails to mention the "occurrence" requirement for "property damage" coverage. *See* Docs. 67-2 – 67-4.

Paragraph 6 is controverted. This constitutes an incomplete characterization of the policy terms and is irrelevant because Fun Services does not discuss the products-completed operations issue in its Opposition. The policies speak for themselves as to their terms, limitations and exclusions. *See* Docs. 67-2 – 67-3.

Paragraphs 9, 10, 11, 12 and 13 are uncontroverted to the extent WHIC sent the June 26, 2008 letter. However, they are controverted as Fun Services attempts to mischaracterize the intent. *See* Doc. 67-15. Also, they are irrelevant to the extent Fun Services is not a party to the contract and lacks standing to seek an adjudication as to the duty to defend. In addition, a party is not permitted to bring non-covered claims within the scope of coverage through the doctrines of "waiver" or "estoppel."

Paragraphs 14-15 are uncontroverted to the extent WHIC sent the October 29, 2012 letter and the document speaks for itself, but they are controverted as the contents are not fully or accurately characterized here. *See* Doc 67-18. Also, they are irrelevant to the extent Fun Services is not a party to the contract and lacks standing to seek an adjudication as to the duty to

defend. In addition, a party is not permitted to bring non-covered claims within the scope of coverage through the doctrines of "waiver" or "estoppel."

Paragraph 18 is uncontroverted to the extent the responsive pleading speaks for itself. But, the fact is irrelevant insofar as there is no argument in the Opposition that WHIC failed to provide proper notice of any endorsement. The same holds true as to the argument regarding regulatory approval. As to the argument regarding a purported conflicted defense, Fun Services lacks standing to make such an argument.

Additionally, Fun Services admits paragraphs 1, 2, 22, 24, 27, 28 and 29 and, though it "objects" to paragraphs 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 26 and 30 as containing "legal conclusions," Fun Services nevertheless admits that the documents cited contain the statements set forth in these paragraphs. Fun Services also did not respond Paragraph 24 and therefore has admitted this fact.

Fun Services' attempt to controvert paragraph 21, 23, 25 cannot be justified. In response to 21, Fun Services mischaracterizes the contents of Doc. 67-15, which speaks for itself, and its "objection" is immaterial because a party cannot seek to create coverage that does not otherwise exist through the doctrines of "waiver" and "estoppel." In response to 23, Docs. 67-1 & 67-13 speak for themselves and reveal that there are no transmission reports showing the class members received the faxes in question. In response to 25, Doc. 67-17 speaks for itself and references, in the last paragraph of page 14, 13,267 "unique" fax numbers. Therefore, Fun Services' attempt to "dispute" Fact No. 25 is not well-taken.

III. **FUN SERVICES ATTEMPTS TO BLUR THE DISTINCTION BETWEEN THE DUTY TO DEFEND AND THE SEPARATE DUTY TO INDEMNIFY FAILS**

Fun Services' attempt to confuse the issues by arguing that WHIC owed a "duty to defend" based on "potential" coverage fails as Fun Services has not disputed and cannot dispute,

4

it is a stranger to the insurance contract. As such, it lacks standing to seek an adjudication that WHIC owed any "duty to defend." *Farmers Ins. Co. v. Miller*, 926 S.W.2d 104, 107 (Mo. App. E.D. 1996). Moreover, WHIC does not seek a ruling on the "duty to defend" in its Motion. [Doc. 67.] Rather, WHIC has been defending and continues to defend in the underlying action, albeit under a reservation of rights. (WHIC UF 22, 26.) At issue is whether WHIC owes a duty to <u>indemnify</u> (*i.e.*, to pay damages), based on its $1,000 per claim deductible, the TCPA exclusion and/or the prior publication exclusion. The duty to indemnify does not depend on whether there is a "potential" for coverage. Instead, it requires a showing of <u>actual coverage</u>. *See McCormack Baron Mgmt Servs, Inc. v. American Guar. Liab. Ins. Co.*, 989 S.W.2d 168, 173 (Mo. banc 1999). Fun Services cannot demonstrate actual coverage and, consequently, it argues at length that there was a "duty to defend" based on "potential" coverage. The Court should reject Fun Services' attempt to deflect from the true issue of whether there is "actual" coverage.

Fun Services also argues that this Motion is "premature" as the insured's liability has not been determined. However, the coverage defenses at issue are wholly independent of the insured's liability. Regardless of whether or not the insured is found liable for sending the unsolicited faxes, the $1,000 per-claim deductible, the prior publication and TCPA exclusions apply under the terms of the policies.

### IV. FUN SERVICES' ATTEMPT TO CREATE COVERAGE THROUGH A "WAIVER" THEORY FAILS UNDER MISSOURI LAW

Fun Services' argument that WHIC "waived" the right to rely on its policy provisions and exclusions by ostensibly failing to reference them in its June 26, 2008 letter is without merit. Missouri law is clear that "waiver and estoppel are not available to bring risks within the coverage of an insurance policy that are not covered by its terms or are excluded from that policy." *See Holland Corp. v. Maryland Cas. Co.*, 775 S.W.2d 531, 535 (Mo. App. W.D. 1989)

5

(the rationale for this rule is that neither the doctrines of waiver nor estoppel may be used to create a new contract for the parties). Further, it is incorrect that there were no policy defenses referenced in the initial June 26, 2008 letter. The letter expressly referenced the $1,000 per-claim deductible. (WHIC UF 15.) WHIC later supplemented its reservation to invoke the TCPA and prior publication exclusions. (WHIC UF 26, Doc. 67-18, p. 7.) Notably, the insured did not challenge these reservations and continued to accept WHIC's defense under a reservation of rights. Moreover, Fun Services lacks standing to argue WHIC "waived" any right under the policies, since it is not a party thereto.

V. **FUN SERVICES' ATTEMPT TO CIRCUMVENT WHIC'S $1,000 PER-CLAIM DEDUCTIBLE PROVISION IS UNAVAILING**

   A. **Fun Services' Attempt to Rely on *Different* Deductible Provisions Fails**

Had Fun Services seen fit to reference the <u>actual language</u> of the $1,000 per-claim deductible, it would have been starkly clear that WHIC owes no duty. The deductible states that WHIC owes no duty to pay defense or indemnity amounts until the $1,000 "per claim" deductible has been paid: "The Company's obligations under the coverages afforded by this policy to pay damages on behalf of the Insured *apply only to the amount of damages in excess of the deductible amount stated above* [$1,000] ." This deductible, by its terms, applies on a per-claim *and per-person* basis: "The deductible amount applies to all damages *sustained by one person or organization* as the result of any one claim." (Emphasis added.) (WHIC UF 9.) Since the class claimants are seeking $500 per TCPA claim, there is no coverage under the $1,000 per-claim deductible. Even if the deductible applied only "per-claimant" (which it does not according to its clear terms), Fun Services would need to prove that each class member received at least 3 faxes (3 X $500 = $1,500) during a given policy period to show amounts in excess of the annual $1,000 deductible. Fun Services has not made and cannot make such a showing.

Instead, it cites to a string of cases for the proposition that, *generally speaking*, deductibles are different than SIRs. According to Fun Services, deductibles are *typically* different because the insurer is required to pay "first dollar" coverage under a deductible and then seek reimbursement from the insured. [Doc. 90, pp. 15-16.] However, some of Fun Services' own authorities make clear that an insurer has no payment obligation until the deductible is paid: "A deductible. . . is 'the portion of the loss to be borne by the insured *before the insurer becomes liable for payment.*' [citation omitted.]" *Boston Gas Co. v. Century Indem. Co.*, 454 Mass. 337, 341, n.8 (2009) (emphasis added).

Moreover, even assuming that the "general rule" is that an insurer owes first-dollar coverage under a deductible, this has no bearing here. One of the cardinal rules of policy interpretation is to give effect to the parties' intent by enforcing the contract as written, according to the plain and ordinary meaning of its language. *See Dibben v. Shelter Ins. Co.*, 261 S.W.3d 553 (Mo. App. W.D. 2008). As such, it is of no import what other, different policies may provide. This is clear from one of the cases on which Fun Services relies. In *New York State Thruway Auth. v. KTA-Tator Eng'g Servs.*, 78 A.D.3d 1566, 1567-78 (N.Y. 2010), on which Fun Services relies, the Court addressed a deductible provision similar to the one at issue. The deductible applied to both defense and indemnity costs, and stated the policy limits applied only "in excess of" the deductible. Given the language of the provision–which made clear that the insurer owed no duty to pay until the deductible was paid–the *Thruway* court opined the provision was in effect an SIR: "Inasmuch as the policy explicitly provided that the $100,000 would not reduce the policy limit, *it cannot be said that the policy contained a deductible that would be subtracted from the policy limits*." *Id.* at 1568 (emphasis added). Likewise, here, the deductible provision has an effect similar to a standard SIR, in which the insurer owes no

7

obligation to pay defense or indemnity amounts until the per-claim and per-person deductible of $1,000 is met.

### B. Fun Services' Assertion That Only One Deductible Applies Is Without Merit

Fun Services' argument that only a single deductible applies to the underlying action relies on cases involving deductible provisions wholly distinguishable from the one at bar. As stated above, the deductible provision here plainly states that the deductible is $1,000 "per claim," and applies "to all damages sustained *by one person or organization* as the result of any one claim." Since the deductible provision applies both "per claim" and to all damages to "any one person," it is clear the provision cannot possibly apply to all class claimants as a whole. In fact, courts applying a "per claimant" deductible have refused to find a single deductible applicable to a TCPA class action involving multiple claimants. *See Alea London Ltd v. American Home Serv., Inc.*, 638 F.3d 768, 772-75 (11th Cir. 2011); *see also Capitol Indemnity Corp. v. Miles,* 978 F.2d 437, 438-39 (8th Cir. 1992) (multiple claims asserted by subrogee subject to multiple per-claim deductibles); *Musmeci v. Schwegmann Giant Super Markets*, 332 F.3d 339, 355 (5th Cir. 2003) (class action subject to multiple per-claim SIRs).

The authorities on which Fun Services attempts to rely involve distinct deductible language. *City of Idaho Falls v. Home Indem. Co.*, 126 Idaho 604, 610 (1995) (deductible applied to claims "arising out of the same or related wrongful acts"; no "per claim" or "per claimant" language at issue); *Beaumont-Gribin-Von Dyl Mgt. Co. v. California Union Ins. Co.*, 63 Cal. App. 3d 617, 623-25 (1976) ("per-claim" deductible *can* apply separately to multiple claims within the same action[1], but the *following* deductible language is ambiguous because the

---

[1] The Court in *Beaumont-Gribin-Von Dyl Mgt. Co. v. California Union Ins. Co.*, 63 Cal.App.3d 617, 624-25 recognized that the "per claim" deductible provision in *Lamberton v. Travelers Indem. Co.*, 325 A.2d 104 (Del. 1974) may have applied to each claimant separately, but that the deductible language in *Lamberton* was significantly different than the language before it.

8

term "claim" has two different meanings: "It is agreed that in the event of a claim the deductible amount shown in the Schedule shall be deducted from the total amount resulting from each claim and the company shall be liable only for the difference between such deductible amount and the amount of insurance otherwise applicable to such claim"[2]); *see also Previews, Inc. v. California Union Ins. Co.*, 640 F.2d 1026, 1029 (9th Cir. 1981); *North American Biologicals Inc. v. Illinois Employers Ins. of Wausau*, 931 F.2d 839, 841 (11th Cir. 1991) (per-claim deductible would have applied separately to each class member, <u>but the class was never certified so as to establish there was more than one "claim" at issue</u>); *Unigard Ins. Co. v. U.S. Fidelity & Guar. Co.*, 111 Idaho 891, 894 (1986) (deductible provision applied to "all property damage sustained by one person or organization *as the result of any one occurrence*"); *see also Wilkinson & Son., Inc. v. Providence Washington Ins. Co.*, 124 N.J. Super. 466, 468, 473, 307 A.2d 636 (1973) (same deductible language regarding "occurrence"; damage to multiple units during one cleaning procedure was one "occurrence"). Since the authorities on which Fun Services relies do not involve a per-claim and per-claimant deductible, they are inapposite and should be disregarded.

### C.     <u>Fun Services Is Judicially Estopped from Arguing that it is Seeking "Actual" Rather Than Statutory Damages to Avoid the Effect of the Deductible</u>

The Court should reject Fun Services' effort to avoid the impact of WHIC's deductible by asserting that the class may seek "actual" damages. Under the doctrine of judicial estoppel, a party may not take a position that benefits it in an earlier proceeding, only to take a contrary position in a subsequent proceeding. *See, e.g., State ex rel. Kelcor, Inc. v. Nooney Realty Trust*, 966 S.W.2d 399, 403 (Mo. App. E.D. 1998). This type of "playing fast and loose with the

---

[2] The *Beaumont-Gribin-Von Dyl Mgt. Co. v. California Union Ins. Co.*, 63 Cal.App.3d 617, 624-25 (Cal. 1976) Court explained that the term "claim" must have different meanings within the paragraph because otherwise "the total amount resulting from each claim" would merely be the claim itself and no totaling would be necessary. Since the meaning of the term was thus ambiguous, the Court construed it against the insurer, to mean the insured's claim for coverage.

9

courts" is not countenanced. Here, Fun Services represented in its Class Certification Motion that the case was appropriate for class certification because all of the class members were seeking only $500 in statutory damages: "From the perspective of the court system and the class members, a class action is superior to individual actions because *the maximum recovery for each class member is only $500* and the TCPA does not allow for fee shifting." (Emphasis added.) (WHIC UF 30 and Ex. A, p. 17.) Moreover, the underlying Court's Order granting class certification relied on Fun Services' representation in that regard: "Plaintiff and the other class members *seek statutory damages under the TCPA*." (Emphasis added.) (Ex. B, p. 9.) Since Fun Services was able to obtain class certification by arguing that the class members uniformly sought $500 in statutory damages, it is judicially estopped from seeking to take the contradictory position here. Further, Fun Services has not demonstrated and cannot demonstrate that any "actual" damages would exceed $500 per fax. An unsolicited fax might use some of the recipient's paper, toner, ink, equipment and personnel time. As even Fun Services' cases state, this might cost the recipient $100 per year. *See Missouri v. American Blast Fax*, 323 F.3d 649, 655 (8th Cir. 2003); *Universal Underwriters Ins. Co. v. Lou Fusz Auto. Network*, 401 F.3d 876, 881 (8th Cir. 2005). Clearly, $100 a year falls far short of the $1,000 required to meet WHIC's per-claim deductible. Further, Fun Services has not provided a scintilla of evidence that each class claimant's actual damages in this case exceeded $1,000 per fax.

VI. <u>**FUN SERVICES' ATTEMPT TO AVOID THE TCPA EXCLUSION FAILS**</u>

Fun Services struggles to avoid the effect of the TCPA exclusion in the 2006-07 policy by arguing that the "conversion" claim falls outside the scope of the exclusion. Significantly, Fun Services is unable to cite any viable authority for such a proposition. It relies solely on state court decisions from Illinois that are non-precedential. *See, e.g., White v. White*, 293 S.W.3d 1,

14 (Mo. App. W.D. 2009) (circuit court judgments are not binding authority). Moreover, the courts of appeal have held that conversion claims fall within the scope of the TCPA exclusion because they are based on the same conduct. *See GM Sign, Inc. v. Auto–Owners Ins. Co.*, 2012 WL 4840592, 1, *4 (Mich. Ct. App. Oct.11, 2012) ("[T]he common law tort and Illinois consumer protection claims asserted in GM Sign's complaint arise from the same conduct that underlies GM Sign's TCPA claim.").

Even assuming the conversion claim did fall outside of the TCPA exclusion, it could not be covered. The elements of a conversion claim are (1) the plaintiff owned the property; (2) the defendant took possession of the property with the *intent* to exercise some control over it; and (3) the defendant thereby deprived the plaintiff of the right to possession." *Hunt v. Estate of Hunt*, 348 S.W.3d 103, 113 (Mo. App. W.D. 2011). Thus, conversion claims require an "*intentional* exercise of dominion*" over property. *See Lacks v. R. Rowland & Co.*, 718 S.W.2d 513, 520–21 (Mo. App. E.D. 1986). Intentional conduct cannot constitute an "occurrence," or "accident" as required for "property damage" coverage. Moreover, conversion does not involve any of the required elements of any of the enumerated "personal and advertising injury" offenses. Converting another's property has nothing to do with any "privacy" violation. As such, even if the "conversion" claims did not fall within the scope of the TCPA exclusion, there could be no indemnity coverage for such claims.

## VII. THE FIRST PUBLICATION PRECLUDES COVERAGE BECAUSE THE RISK HAD *ALREADY MATERIALIZED* PRIOR TO THE 2005-07 POLICIES

Fun Services' tortured argument regarding the prior publication exclusion is based on reversed and/or inapplicable legal authorities. WHIC's prior publication exclusion unambiguously precludes coverage for "'personal or advertising injury' arising out of oral or written publication of material whose first publication took place before the beginning of the

11

policy period." (WHIC UF 10.) The prior publication exclusion is designed to advance the purpose of insurance, which is to protect against unknown or fortuitous events. *See, e.g., Matagorda Ventures, Inc. v. Travelers Lloyds Ins. Co.*, 203 F.Supp.2d 704, 716 (S.D. Tex. 2001). Here, the risk had already occurred prior to the 2005-07 policies, *i.e.*, Profax had allegedly sent the insured's faxed ad thousands of times. Thus, there could be no "personal and advertising injury" coverage when Profax sent the same ad during the 2005-07 policy period. Fun Services' argument that each claimant suffered a distinct invasion of its seclusionary interest is a red herring. The exclusion does not require that the <u>same injury</u> be suffered. It requires that the same <u>material</u> be published before and after the policy incepts. Here, the same faxed ad was sent prior to and during the 2005-07 policy period.

In addition, the authorities on which Fun Services relies are bad law and/or inapposite. *Columbia Cas. Co. v. HIAR Holding, LLC*, 411 S.W.3d 258 (Mo. banc 2013) and *Valley Forge Ins. Co. v. Swiderski Electronics, Inc.*, 223 Ill.2d 352, 860 N.E.2d 307 (2006) do not even mention the prior publication exclusion, much less hold it inapplicable. Moreover, a case is not authority for an issue not addressed. *See, People v. Parnell*, 16 Cal. App. 4th 862, 872 (1993). *Nutmeg Ins. v. Wausau*, 2006 WL 453225 (N.D. Tex.) is unpublished and non-citable under FRAP 32 and 8th Cir. Local Rule 32.1A. In addition, *Nutmeg* contains little substantive analysis and simply relies on *Everett Assocs. Inc. v. Transcontinental Ins. Co.*, 56 F. Supp. 2d 874, 885 (N.D. Cal. 1999). In turn, *Everett* was *reversed* on appeal and is not good law. *Everett v. Transcontinental*, 35 Fed. Appx. 450 (9th Cir. 2002). Further, both *Nutmeg* and *Everett* involved the issue of whether the "prior publication" exclusion precluded a *duty to defend*. *Harleysville Mut. Ins. Co. v. Buzz Off Insect Shield*, 190 N.C. App. 28 (N.C. 2010) was also reversed on appeal. In fact, the North Carolina Supreme Court expressly struck down *Harleysville*'s finding

regarding the prior publication exclusion, holding there was no duty to defend based on other issues and the prior publication exclusion was <u>not</u> properly at issue. *Harleysville Mut. Ins. Co. v. Buzz Off Insect Shield*, 364 N.C. 1, 28 (Sup. Ct. N.C. 2010) (emphasis added). This Court should reject Fun Services' reliance on bad law and distinguishable cases.

## VIII. <u>CONCLUSION</u>

Fun Services cannot avoid an adverse finding through legal gymnastics. This Court should grant summary judgment or at a minimum partial summary judgment to WHIC.

Respectfully submitted,

WALDECK, GOLDSTEIN & PATTERSON, P.A.

By: /s/ Meagan L. Patterson
    Meagan L. Patterson, MO #58234
    Kelly M. Cochran, MO #64458
    5000 W. 95th Street, Suite 350
    Prairie Village, KS 66207
    Telephone: (913) 749-0300
    Facsimilie: (913) 749-0301
    E-Mail: meaganp@wgpkc.com
    E-Mail: kellyc@wgpkc.com

SELMAN BREITMAN LLP
    Alan B. Yuter (Pro Hac Vice; CA SBN 101534)
    Rachel E. Hobbs (Pro Hac Vice; CA SBN 186242)
    11766 Wilshire Boulevard, Sixth Floor
    Los Angeles, CA 90025
    Telephone: (310) 445-0800/Fax: (310) 473-2525
    E-Mail: ayuter@selmanbreitman.com
    E-Mail: rhobbs@selmanbreitman.com
**ATTORNEYS FOR PLAINTIFF/ COUNTERCLAIM DEFENDANT**

## CERTIFICATE OF SERVICE

       I certify that on December 30, 2013, I electronically filed the foregoing document with the Court using the CM/ECF system, which sent notice of electronic filing to the following:

Max Margulis
Margulis Law Group
28 Old Belle Monte Road
Chesterfield, MO 63017
Email: maxmargulis@margulislaw.com

David Oppenheim
Jeffrey Berman
Anderson & Wanca
3701 Algonquin Road, Suite 760
Rolling Meadows, IL 60008
Email: doppenheim@andersonwanca.com
Email: jberman@andersonwanca.com

Barbara Frankland
Rex Sharp
Gunderson Sharp LLP
5301 West 75th Street
Prairie Village, KS 66208
Email: bfrankland@midwest-law.com
Email: rsharp@midwest-law.com

Phillip A. Bock
Bock & Hatch LLC
134 N. LaSalle St., Ste. 1000
Chicago, IL 60602
P: 312.658.5500
Email: phil@bockhatchllc.com
**ATTORNEYS FOR FUN SERVICES
 OF KANSAS CITY, INC.**

John Sommer
19049 East Valley View Parkway, Suite B
Independence, MO 64055
johnsommerlaw@sbcglobal.net
**ATTORNEY FOR PARRISH LOVE d/b/a ASPHALT WIZARDS**

                                            /s/ Meagan L. Patterson
                                       **ATTORNEYS FOR PLAINTIFF**