**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF MISSOURI**

| | | |
|---|---|---|
| WESTERN HERITAGE INSURANCE COMPANY, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | CASE NO. 4:13-CV-00034-DGK |
| | ) | |
| PARRISH LOVE d/b/a ASPHALT WIZARDS, FUN | ) | |
| SERVICES OF KANSAS CITY, INC. DOES 1-50, | ) | |
| | ) | |
| Defendants | ) | |

## OPPOSITION OF WHIC TO FUN SERVICES' CROSS-MOTION FOR SUMMARY JUDGMENT

# TABLE OF CONTENTS

I.      INTRODUCTION ........................................................................................ 1

II.     RESPONSE TO UNCONTROVERTED MATERIAL FACTS OF FUN SERVICES ............................................................................................... 3

III.    STATEMENT OF ADDITIONAL UNCONTROVERTED MATERIAL FACTS ....................................................................................................... 5

IV.     FUN SERVICES LACKS STANDING AS A STRANGER TO THE INSURANCE CONTRACT, AND ITS ATTEMPT TO CONFLATE THE SEPARATE DUTIES TO DEFEND AND INDEMNIFY SHOULD BE REJECTED .......................................................................................... 11

V.      A THIRD PARTY LIKE FUN SERVICES CANNOT SEEK TO CREATE AN INSURANCE CONTRACT WHERE NONE EXISTS THROUGH A WAIVER OR ESTOPPEL THEORY ....................................................... 13

VI.     FUN SERVICES' ATTEMPT TO AVOID WHIC'S $1,000 PER-CLAIM AND PER-PERSON DEDUCTIBLE IS UNAVAILING ................................. 15

VII.    FUN SERVICES' EFFORT TO AVOID THE TCPA EXCLUSION SIMILARLY FAILS ................................................................................... 17

VIII.   FUN SERVICES' ARGUMENTS CONCERNING THE FIRST PUBLICATION EXCLUSION ARE BASED ON BAD LAW AND/OR INAPPOSITE CASES ....................................................................................................... 18

IX.     FUN SERVICES' ARGUMENT THAT THE FAXED ADS CONSTITUTED A PRODUCTS-COMPLETED OPERATIONS RISK IS WITHOUT MERIT 19

X.      CONCLUSION ...................................................................................... 22

# TABLE OF AUTHORITIES

**Page**

**Federal Cases**

*Alea London Ltd v. American Home Serv., Inc.*
638 F.3d 768 (11th Cir. 2011) ........................................................... 15

*Amerisure Mut. Ins. Co. v. Paric Corp.*
2005 WL 2708873 (E.D. Mo.) ........................................................... 12

*Matagorda Ventures, Inc. v. Travelers Lloyds Ins. Co.*
203 F. Supp. 2d 704 (S.D. Tex. 2001) ............................................. 19

*Shapiro Sales Co. v. Alcoa, Inc.*
2006 WL 2228987 (E.D. Mo.) ........................................................... 12

*St. Paul Fire & Marine Ins. Co. v. Children's Hosp. Nat. Medical Ctr.*
670 F. Supp. 393 (D.D.C. 1987) ........................................................ 14

**State Cases**

*Adams v. Manchester Ins. and Indem. Co.*
385 S.W.2d 359 (Mo. App. 1964) ..................................................... 18

*Berry v. Massachusetts Bonding & Ins. Co.*
221 S.W. 748 (Mo. App. 1920) ......................................................... 14

*Brooner & Associates v. Western Casualty*
760 S.W.2d 445 (Mo. W.D. 1988) .................................................... 14

*Brown v. State Farm Mut. Auto. Ins. Co.*
776 S.W.2d 384 (Mo. en banc 1989) ................................................ 13

*Cobbins v. General Accident Fire & Life Ins. Corp., Ltd.*
53 Ill. 2d 285 (1972) ......................................................................... 20

*Columbia Cas. Co. v. HIAR Holdings, LLC*
411 S.W.3d 258 (Mo. banc 2013) ...............................................21-22

*Farmers Ins. Co. v. Miller*
926 S.W.2d 104 (Mo. App. E.D. 1996) ............................................ 11

*GM Sign, Inc. v. Auto–Owners Ins. Co.*
2012 WL 4840592 (Mich. Ct. App. Oct.11, 2012) .......................... 17

*Holland Corp. v. Maryland Cas. Co.*
775 S.W.2d 531 (Mo. App. W.D. 1989) ........................................... 13

ii

*Hunt v. Estate of Hunt*
348 S.W.3d 103 (Mo. App. W.D. 2011) ...........................................................17

*Hussman v. Government Employees Ins. Co.*
768 S.W.2d 585 (Mo. App. 1989) ...................................................................13

*Jacore Systems, Inc. v. Central Mut. Ins. Co.*
194 Ga. App. 512 (Ga. App. 1990) ...............................................................14

*State ex rel. KelCor, Inc. v. Nooney Realty Trust, Inc.*
966 S.W.2d 399 (Mo. Ct. App. 1998) ...........................................................16

*Linenschmidt v. Continental Cas. Co.*
356 Mo. 914 (Mo. Sup. Ct. 1947) .................................................................14

*Lacks v. R. Rowland & Co.*
718 S.W.2d 513 (Mo. App. E.D. 1986).........................................................17

*McCormack Baron Mgmt Servs, Inc. v. American Guar. Liab. Ins. Co.*
989 S.W.2d 168 (Mo. banc 1999) .................................................................11

*New York State Thruway Auth. v. KTA-Tator Eng'g Servs.*
78 A.D.3d 1566 (N.Y. 2010)..........................................................................16

*Reedy Industries, Inc. v. Hartford Ins. Co.*
715 N.E.2d 728 (1st Dist. 1999).....................................................................15

*State Farm Mut. Auto. Ins. Co. v. Allen*
744 S.W.2d 782 (Mo. 1988) ..........................................................................11

*Waller v. Truck Ins. Exchange, Inc.*
11 Cal.4th 1 (Cal. 1995) ................................................................................13

*White v. White*
293 S.W.3d 1 (Mo. App. W.D. 2009) . ..........................................................17

*Windmill Nursing Pavilion, Ltd. v. Cincinnati Ins. Co.*
2013 WL 6578786 (Ill. App. 1 Dist.) .......................................................19-22

**Federal Statutes**

Telephone Consumer Protection Act (47 USC § 227) ....................................9

**State Statutes**

Telephone Consumer Protection Act.................................................................8

257.33498

# I. INTRODUCTION

Fun Services' Cross-Motion for Summary Judgment fails on several grounds. First, there is no dispute that Fun Services is a stranger to the insurance contract. As such, Fun Services lacks standing to seek a finding of coverage. Second, Fun Services appears to realize there is no actual coverage. As a result, it attempts to import the broad "duty to defend" standard--which depends on whether there was "potential" for coverage—into this case. Significantly, however, WHIC <u>is defending</u>, albeit under a reservation of rights. WHIC's position is that there is no duty to indemnify, *i.e.*, duty to provide <u>actual coverage</u>.

Moreover, Fun Services has not established and cannot establish any <u>actual coverage</u> as a matter of law. The WHIC policies clearly provide that for WHIC to have a duty to pay, the $1,000 "per-claim" deductible must be exceeded. Here, however, the class claimants are seeking only $500 per TCPA "claim." As such, Fun Services cannot demonstrate that the "per-claim" deductible has been or will be exceeded. Fun Services' attempt to rely on wholly inapposite cases involving <u>different</u> deductible provisions is unavailing.

At a minimum, the Court should find that there is no coverage under the 2006-07 WHIC policy based on the TCPA exclusion. Fun Services attempts to argue the "conversion" claim falls outside the scope of this exclusion. However, the Courts of Appeal have already rejected such an argument. Moreover, "conversion" could not be covered because it is not "accidental" conduct as required for "property damage" coverage, nor does it constitute any of the specifically enumerated "personal and advertising injury" offenses.

Although Fun Services string-cites to innumerable cases for the proposition that TCPA claims are "covered," not one of these cases involves a deductible provision, TCPA exclusion or

prior publication exclusion. [Doc. 91, pp. 10-13.] They are thus facially inapposite and should be disregarded.

Finally, the "prior publication" exclusion precludes "personal and advertising injury" coverage under the 2005-07 policies because it is undisputed the ads in question were first faxed before the policies' inception. Fun Services cannot avoid this result by relying on cases that were overturned on appeal and/or involve the inapplicable "duty to defend."

As for Fun Services' assertion the faxed ads fell under the "products-completed operations" risk such that the separate $2 million aggregate limit for such risks applies, this is likewise without merit. The only appellate court to substantively address this issue flatly rejected the notion that faxed ads constitute the insured's "product" or "work" within the meaning of the products-completed operations hazard.

As a last-ditch effort to establish coverage, Fun Services argues WHIC "waived" its rights by failing to include its coverage defenses in its initial June 26, 2008 letter. As an initial matter, the law is clear that a party cannot create coverage for non-covered risks through the doctrine of "waiver." Further, the June 26, 2008 letter indisputably references the $1,000 per-claim deductible that is dispositive here. Moreover, WHIC subsequently supplemented its reservation to include additional defenses after it became apparent they applied.

As for Fun Services' assertion a coverage determination would be "premature," the authorities on which it relies are inapplicable. They involve a situation in which coverage depends on whether the insured's conduct was negligent, an issue to be decided in the underlying action. Here, the intentionality of the insured's conduct has nothing to do with whether the deductible provision, TCPA exclusion and/or prior publication exclusion apply as a matter of law. As to Fun Services' argument that a determination as to coverage in this action would be

2

"premature" because the underlying action has not been resolved, this likewise fails.  In the cases on which Fun Services relies, the coverage issue is dependent on whether the insured's conduct was "negligent" and thus constituted an "occurrence."  Such a determination could not be made until there was a judgment in the underlying action.  Here, in contrast, the issues of whether the deductible has been met, the TCPA exclusion applies and/or whether the prior publication exclusion applies do not depend on any finding as to the intentionality of the insured's conduct in the underlying action.

## II.    RESPONSE TO UNCONTROVERTED MATERIAL FACTS OF FUN SERVICES

Paragraphs 1, 8, 16 and 17 are admitted by WHIC for purposes of this summary judgment motion only.

Paragraph 2 is uncontroverted as the document speaks for itself as to its contents. However, the conversion claim is irrelevant to WHIC's arguments insofar as the courts have held such claims are subject to the TCPA exclusion.

Paragraph 3 is uncontroverted as to the fact that the policies were issued, but controverted as Fun Services has the wrong inception/expiration date of 5/12 (rather than 5/18). See Doc. 67-2, p. 944; Doc. 67-3, p. 1081; Doc. 67-4, p. 992.

Paragraph 4 is controverted. The fact is incomplete and does not set forth the full policy terms.  *See* Ex. 2, pp. WHIC 953, 970-971; Ex. 3, WHIC 1090, 1106-1107; Ex. 4, WHIC 1024, 1041-1042.

Paragraph 5 is uncontroverted in that the policy provides Property Damage and Advertising Injury/Property Damage coverage subject to the stated terms, conditions and exclusions and that the policy speaks for itself.  However, the purported fact is controverted insofar as it is not an accurate and full characterization of the policy language. Among other

things, it fails to mention the "occurrence" requirement for "property damage" coverage. See Docs. 67-2 – 67-4.

Paragraph 6 is controverted. This constitutes an incomplete characterization of the policy terms. The policies speak for themselves as to their terms, limitations and exclusions. See Docs. 67-2 – 67-3.

Paragraphs 9, 10, 11, 12 and 13 are uncontroverted to the extent WHIC sent the June 26, 2008 letter. However, they are controverted as Fun Services attempts to mischaracterize the intent of the letter. See Doc. 67-15. Also, the facts are irrelevant to the extent Fun Services is not a party to the contract and lacks standing to seek an adjudication as to the duty to defend. In addition, a party is not permitted to bring non-covered claims within the scope of coverage through the doctrines of "waiver" or "estoppel." In fact, the courts specifically hold that a third party like Fun Services cannot seek to create a contract between itself and the insurer through the doctrines of waiver or estoppel.

Paragraphs 14-15 are uncontroverted to the extent WHIC sent the October 29, 2012 letter and the document speaks for itself, but they are controverted as the contents are not fully or accurately characterized here. See Doc 67-18. Also, they are irrelevant to the extent Fun Services is not a party to the contract and lacks standing to seek an adjudication as to the duty to defend. In addition, a third party is not permitted to seek to create coverage where none exists through the doctrines of "waiver" or "estoppel."

Paragraph 18 is uncontroverted to the extent the responsive pleading speaks for itself. However, the fact is irrelevant insofar as there is no argument in the Cross-Motion as to regulatory approval. Similarly, Fun Services lacks standing to make such an argument concerning a purported conflicted defense (which is also not made in the Cross-Motion).

### III.    <u>STATEMENT OF ADDITIONAL UNCONTROVERTED MATERIAL FACTS</u>

1.    Defendant Parrish Love d/b/a Asphalt Wizards ("Asphalt Wizards") provides asphalt and paving services in the greater Metropolitan Kansas City area. Ex. 1, Deposition of Parrish Love, p. 41:22-25.

2.    Plaintiff Western Heritage Insurance Company ("WHIC") issued three consecutive commercial general liability policies to named insured Parrish Love d/b/a Asphalt Wizards that were effective from May 18, 2004 through May 18, 2007 (collectively, "WHIC Policies"):

    a.    Policy No. SCP0510323, effective from May 18, 2004 to May 18, 2005 ("2004-05 Policy"). Ex. 2.

    b.    Policy No. SCP0553453, effective from May 18, 2005 to May 18, 2006 ("2005-06 Policy"). Ex. 3.

    c.    Policy No. SCP0600069, effective from May 18, 2006 to May 18, 2007

    d.    ("2006-07 Policy"). Ex. 4.

3.    Western Heritage is a surplus lines insurer in the State of Missouri. Ex. 2, p. WHIC 00944; Ex. 3, p. WHIC 01081; Ex. 4, p. WHIC 00992.

4.    The 2004-2007 WHIC Policies cover amounts the insured becomes legally obligated to pay as a result of "property damage" caused by an "occurrence" as the policies define those terms. Ex. 2, p. WHIC 00956; Ex. 3, p. WHIC 01093; Ex. 4, p. WHIC 01028.

5.    The 2004-07 WHIC policies define "occurrence" to include "continuous or repeated exposure to substantially the same general harmful conditions." Ex. 2, p. WHIC 00969; Ex. 3, p. WHIC 01106; Ex. 4, p. WHIC 01041.

257.33498

6. The 2005-07 WHIC Policies contain an endorsement entitled "Non-Stacking of Limits Endorsement," which states in pertinent part: "If any Coverage Form, Coverage Part of policy issued to you by us or any company affiliated with us apply to the same claim for damages, the maximum Limit of Insurance for Liability Coverage under all of the Coverage Forms, Coverage Parts of policies shall not exceed the highest applicable Limit of Insurance available under any one Coverage Form, Coverage Part or policy." Ex. 3, p. WHIC 01123; Ex. 4, p. WHIC 01059.

7. The 2004-2007 WHIC Policies cover amounts the insured becomes legally obligated to pay as a result of specifically enumerated "advertising injury" offenses as defined in the policies. Ex. 2, p. WHIC 00960-00961; Ex. 3, p. WHIC 01097-01098; Ex. 4, p. WHIC 01032-1033.

8. The 2004-2007 WHIC Policies contain a $1 million per occurrence limit and a $2 million general aggregate limit. Ex. 2, p. WHIC 00953; Ex. 3, p. WHIC 01090; Ex. 4, p. WHIC 01024.

9. The 2004-07 WHIC Policies each contain a Deductible Liability Insurance Endorsement that sets forth a $1,000 "per-claim" deductible applicable to "all damages sustained by one person or organization as the result of any one claim." Ex. 2, p. WHIC 00976; Ex. 3, p. WHIC 01116; Ex. 4, p. WHIC 01052.

10. The 2004-07 WHIC Policies each contain a "prior publication" exclusion that negates coverage for "'personal and advertising injury' arising out of oral or written publication of material whose first publication took place before the

beginning of the policy period.'" Ex. 2, p. WHIC 00961; Ex. 3, p. WHIC 01098; Ex. 4, p. WHIC 01033.

11.     The 2004-07 WHIC Policies define the "products-completed operations hazard" to include "property damage" occurring away from the insured's premises and arising out of the insured's "product" or "work" as the policy defines those terms, as long as such work has been "completed." Ex. 2, p. WHIC 00970; Ex. 3, p. WHIC 01106; Ex. 4, p. 01041.

12.     The 2004-07 WHIC Policies define the insured's "product" to mean, in pertinent part:   "any good or products, other than real property, manufactured, sold, handled, distributed or disposed of by: [¶] (a) You; (b) Others trading under your name; or (c) A person or organization whose business or assets you have acquired;  and  [¶]  (2)  Containers  (other  than  vehicles),  materials,  parts  or equipment furnished in connection with such goods or products.  [¶] Includes (1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of 'your product'; and [¶] (2) The providing of or failure to provide warnings or instructions."  Ex. 2, p. WHIC 00970-00971; Ex. 3, p. WHIC 01107; Ex. 4, p. 01042.

13.     The 2004-07 WHIC Policies define the insured's "work" to mean:  "(1) Work or operations performed by you or on your behalf; and [¶] (2) Materials, parts or equipment furnished in connection with such work or operations.  [¶]  Includes [¶] (1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of 'your work', and [¶] (2)  The providing

7

of or failure to provide warnings and instructions." Ex. 2, p. WHIC 00971; Ex. 3, p. WHIC 01107; Ex. 4, p. 01042.

14. The 2004-07 WHIC Policies define the term "advertisement," in pertinent part, as follows: "'Advertisement' means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters." Ex. 2, p. WHIC 00967; Ex. 3, p. WHIC 01104; Ex. 4, p. 01039.

15. The 2006-07 WHIC Policy contains an Endorsement entitled Exclusion-Violation of Statutes That Govern E-Mails, Fax, Phone Calls or Other Methods of Sending Material or Information, which excludes coverage for, *inter alia*, "property damage" or "personal and advertising injury" "arising directly or indirectly out of any action or omission that violates or is alleged to violate. . . The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law. . . ." Ex. 4, p. WHIC 01043.

16. In 2005, Asphalt Wizards hired a company known as Profax to fax a one-page advertisement for asphalt and paving services to companies in the greater Metropolitan Kansas City area. Ex. 5.

17. Asphalt Wizards provided Profax with an Excel list containing the names, addresses and fax numbers of companies to whom Profax was to send the ad. Ex. 13, Deposition of Andrew Barnett, p. 21:23-22:3.

18. According to Profax's invoices, Profax successfully sent 44,642 faxes on behalf of Asphalt Wizards from February of 2005 to March of 2008. Exs. 5-12.

8

19. Profax's invoices indicate that the 44,642 faxes were sent in eight batches as follows:

    a.     February 22, 2005 - 1452 sent. Ex. 5.

    b.     February 24, 2005 - 1683 sent. Ex. 6.

    c.     April 25, 2006 - 8282 sent. Ex. 7.

    d.     June 15, 2006 - 8052 sent. Ex. 8.

    e.     August 22, 2006 - 8279 sent. Ex. 9.

    f.     December 11, 2006 - 5325 sent. Ex. 10.

    g.     July 25, 2007 - 5871 sent. Ex. 11.

    h.     March 31, 2008 - 5698 sent. Ex. 12.

20. On January 7, 2008, a company known as Fun Services of Kansas City, Inc., brought a class action alleging Asphalt Wizards violated the Telephone Consumer Protection Act (47 USC §227) by sending unsolicited faxes ("*Fun Services* action"). Ex. 14.

21. Asphalt Wizards tendered its defense to Western Heritage, who accepted the defense under a reservation of rights that specifically referenced the $1,000 per-claim deductible in June of 2008. Ex. 15.

22. Western Heritage appointed the law firm of Brown & James to defend the Fun Services action. Ex. 15.

23. During discovery in the *Fun Services* action, Asphalt Wizards and Profax stated they were unable to locate any fax transmission reports showing the identity of the fax recipients. Ex. 1, Deposition of Parrish Love, p. 90:14-22; Ex. 13, Deposition of Andrew Barnett, pp. 22:17-24:18.

257.33498

24. Asphalt Wizards' principal, Parrish Love, testified that he gave one of five Excel lists containing fax numbers to Profax, but he did not recall which one. Ex. 16.

25. Fun Services asserts there were 13,267 "unique" fax numbers contained in the five Excel lists stored on Parrish Love's computer. Ex. 19, p. 14.

26. Fun Services represented in its Motion for Class Certification in the underlying action that the case was appropriate for class certification because all of the class members were seeking only $500 in statutory damages: "From the perspective of the court system and the class members, a class action is superior to individual actions because the maximum recovery for each class member is only $500 and the TCPA does not allow for fee shifting." Ex. 18, p. 17.

27. The underlying Class Certification Order stated that the class was seeking statutory damages under the TCPA: "Plaintiff and the other class members seek statutory damages under the TCPA." Ex. 19, p. 9.

28. On October 29, 2012, Western Heritage sent Asphalt Wizards a reservation of rights letter indicating it would defend the Fun Services action under a reservation of rights and referencing, *inter alia*, the "per-claim" deductible of $1,000 under the 2004-07 WHIC Policies. Ex. 20.

29. On January 14, 2013, Western Heritage filed the instant Declaratory Relief action seeking a determination it owed no duty to defend or indemnify the underlying Fun Services action under the policy terms and provisions and governing law. [Doc. 1.]

30. On February of 2013, the Fun Services action was stayed pending the outcome of the Declaratory Relief Action pursuant to the stipulation of the parties. [Ex. 21.]

31.  On June 7, 2013, Western Heritage filed the operative First Amended Petition in the Declaratory Relief Action.  [Doc. 31.]

32.  On June 14, 2013, Western Heritage sent a supplemental reservation of rights letter again referencing the "prior publication" exclusion applicable to "personal and advertising injury" claims under the 2005-07 policies.  (Ex. 17.)

33.  Fun Services claims that Asphalt Wizards is responsible for statutory damages in the amount of $500 for each of the faxes Profax allegedly sent on Asphalt Wizards' behalf from February of 2005 to March of 2008.  Ex. 18, p. 17; Ex. 22, pp. 8-9.

## IV.  FUN SERVICES LACKS STANDING AS A STRANGER TO THE INSURANCE CONTRACT, AND ITS ATTEMPT TO CONFLATE THE SEPARATE DUTIES TO DEFEND AND INDEMNIFY SHOULD BE REJECTED

Fun Services' request for a declaration of "coverage" under the policy fails.  First, it is has not disputed and cannot dispute that it is a stranger to the insurance contract.  As such, it lacks standing to seek an affirmative determination as to "coverage."  *Farmers Ins. Co. v. Miller*, 926 S.W.2d 104, 107 (Mo. App. E.D. 1996); *see also State Farm Mut. Auto. Ins. Co. v. Allen*, 744 S.W.2d 782, 785-86 (Mo. 1988).

Second, Fun Services improperly seeks to fuse together the legally distinct concepts of the duty to defend and the duty to indemnify.  The duty to defend depends on whether there was a "potential" for coverage under the policy.  *See McCormack Baron Mgmt Servs, Inc. v. American Guar. Liab. Ins. Co.*, 989 S.W.2d 168, 170, 173 (Mo. banc 1999).  In contrast, the duty to indemnify (*i.e.*, to pay a judgment or settlement) depends on whether there was actual coverage.  *Id.* (the duty to defend and the duty to indemnify are separate and require separate analysis).  Instead of setting forth this distinction, Fun Services simply seeks a determination as

11

to "coverage." It then attempts to take advantage of the far broader "duty to defend" standard by citing to innumerable "duty to defend" cases.

In addition, its assertion that any coverage determination would be "premature" is without basis. Fun Services itself stipulated to stay the underlying action pending a determination as to coverage in the within action. The outcome of the underlying action has no bearing on the coverage issues to be adjudicated here. Regardless of whether or not the insured is found liable for sending unsolicited faxes, the $1,000 per-claim deductible provision, the TCPA exclusion and the "prior publication" exclusion preclude coverage by their clear terms.

Furthermore, the cases on which Fun Services relies to argue that a coverage determination is "premature" are non-citable because they are unpublished federal decisions that pre-date 2007. *See* FRAP 32 and 8th Cir. Local Rule 32.1A ("Unpublished opinions are decisions which a court designates for unpublished status. They are not precedent. Unpublished opinions issued on or after January 1, 2007, may be cited in accordance with FRAP 32.1. Unpublished opinions issued before January 1, 2007, generally should not be cited."). Furthermore, they are readily distinguishable on their facts. In *Amerisure Mut. Ins. Co. v. Paric Corp.*, 2005 WL 2708873, *6 (E.D. Mo.), the coverage issue depended on whether the insured's conduct was adjudged to be negligent, or an "occurrence" as required for property damage coverage. In contrast, here, a determination that the deductible has not been met and/or that the TCPA and prior publication exclusions apply does not depend on a finding as to the nature of the insured's conduct. In *Shapiro Sales Co. v. Alcoa, Inc.*, 2006 WL 2228987, *2-3 (E.D. Mo.), the court refused to decide whether there was a duty to indemnify on the indemnitor's motion to dismiss because such an issue went to the merits of the action. The court did, however, invite the indemnitor to file a summary judgment motion (as WHIC has done here). *Id. *3.*

257.33498

As for Fun Services' argument that a number of courts have found "coverage" for TCPA claims, this is misleading at best. [Doc. 91, pp. 10-13.] None of the cases relied upon by Fun Services for this proposition mention the $1,000 per-claim deductible, the TCPA exclusion or the prior publication exclusion. The cases thus have no bearing on whether these provisions apply to preclude coverage in this case.

**V.      A THIRD PARTY LIKE FUN SERVICES CANNOT SEEK TO CREATE AN INSURANCE CONTRACT WHERE NONE EXISTS THROUGH A WAIVER OR ESTOPPEL THEORY**

Appearing to recognize that there is no coverage, Fun Services argues at length that WHIC "waived" its right to deny coverage. Against evidence to the contrary, Fun Services argues that WHIC did not raise any of the coverage defenses in its initial June 26, 2008 letter. [Doc. 90, p. 9; Doc. 91, pp. 5-10.] As an initial matter, "waiver" is the intentional relinquishment of a known right. It only exists when there is clear conduct showing that the insurer <u>intended</u> to relinquish its defenses to coverage. *See, e.g., Brown v. State Farm Mut. Auto. Ins. Co.*, 776 S.W.2d 384, 388 (Mo. en banc 1989). The fact that an insurer asserts some coverage defenses in its initial letter and not others is <u>not</u> tantamount to a "waiver" of the additional defenses as a matter of law. *See Waller v. Truck Ins. Exchange, Inc.*, 11 Cal.4th 1, 33 (Cal. 1995) (emphasis added).

Moreover, Missouri law is clear that "waiver and estoppel are not available to bring risks within the coverage of an insurance policy that are not covered by its terms or are excluded from that policy." *Holland Corp. v. Maryland Cas. Co.*, 775 S.W.2d 531, 535 (Mo. App. W.D. 1989). "The rationale for this rule is that neither the doctrines of waiver nor estoppel may be used to create a new contract for the parties." *Id.*; *see also Hussman v. Government Employees Ins. Co.*, 768 S.W.2d 585, 587 (Mo. App. 1989) ("An insurer is not required to provide coverage where the effect would be that of providing coverage where none existed under the policy's terms").

257.33498

This is especially true when the party attempting to claim "waiver" is a <u>third party</u> who lacks any contractual privity with the insurer. *See Linenschmidt v. Continental Cas. Co.*, 356 Mo. 914, 926 (Mo. Sup. Ct. 1947) (third party could not attempt to create coverage for the claims against the insured under the doctrine of "waiver."); *see also Berry v. Massachusetts Bonding & Ins. Co.*, 221 S.W. 748, 751 (Mo. App. 1920) (a stranger to the insurance contract could not claim the insurer was estopped from denying coverage; estoppel cannot create a cause of action and the third party could not have believed a defense or indemnity was owed to him). Here, Fun Services is not a party to the insurance contract. As such, there is no contractual obligation running from WHIC to Fun Services as a matter of law. Fun Services' attempt to manufacture such an obligation through the doctrine of "waiver" fails. The authorities on which Fun Services seeks to rely are uniformly distinguishable in that the party claiming "waiver" was an <u>insured</u> under the policy. Further, Fun Services' argument that the initial June 26, 2008 letter did not reference any policy defenses is belied by the evidence. The June 26, 2008 letter expressly referenced the $1,000 per-claim and per-person deductible, among other policy limitations. (WHIC AUF 21.) When further information became available through discovery in the underlying matter, WHIC supplemented its reservation to invoke additional defenses, including the TCPA and prior publication exclusions.[1] (WHIC AUF 28.) Further, the insured made no objection to the defense under a reservation, and thereby acquiesced to a defense under a reservation of rights. *See, e.g., Brooner & Associates v. Western Casualty*, 760 S.W.2d 445, 448 (Mo. W.D. 1988); *Jacore Systems, Inc. v. Central Mut. Ins. Co.*, 194 Ga. App. 512, 514 (Ga.

---

[1] An insurer does not "waive" its policy defenses under policies not referenced in its reservation of rights letter. *St. Paul Fire & Marine Ins. Co. v. Children's Hosp. Nat. Medical Ctr.*, 670 F. Supp. 393, 402 (D.D.C. 1987).

257.33498

App. 1990) (by not objecting to a reservation of rights letter and by permitting appellee to go forward with its defense of the suit, the insured is deemed to have consented to the letter's terms).

## VI.  FUN SERVICES' ATTEMPT TO AVOID WHIC'S $1,000 PER-CLAIM AND PER-PERSON DEDUCTIBLE IS UNAVAILING

As to the deductible issue, Fun Services incorporates by reference the arguments set forth in its Opposition to WHIC's own Motion for Summary Judgment [Doc. No. 90, p. 16; Doc. 90, pp. 15-22].  WHIC responded to those arguments in detail in its Reply Brief in Support of its Motion for Summary Judgment, which WHIC also incorporates herein by reference.  [Doc. 92, pp. 6-10.]

As set forth in WHIC's Motion for Summary Judgment [Doc. 67, p. 14], it is the burden of the party seeking coverage to establish the deductible has been exceeded.  *See Reedy Industries, Inc. v. Hartford Ins. Co.*, 715 N.E.2d 728, 732 (1st Dist. 1999).  Here, Fun Services cannot meet this burden.  The policies contain an annual per-claim deductible of $1,000.  (WHIC AUF 9.)  Moreover, the underlying claimants are only seeking $500 per TCPA claim.  (WHIC AUF 26; Ex. 21, pp. 8-9).  Since the $500 sought per claim is less than the $1,000 per-claim deductible, Fun Services has not shown and cannot show any amounts in excess of the deductible.

Even if the deductible applied strictly on a per-person basis (which it does not by its terms), Fun Services would not be able to meet its burden.  To establish amounts in excess of the annual $1,000 deductible, Fun Services would have to prove each claimant received in excess of 3 faxes during the same policy year (3 X $500 = $1,500).  Significantly, however, Fun Services has not submitted and cannot submit any such evidence.  As such, the Court should find that Fun Services' claim fails as a matter of law.  *See, Alea London Ltd v. American Home Serv., Inc.*, 638 F.3d 768, 772-75 (11th Cir. 2011) (court granted insurer's motion for summary judgment on the

ground the insured could not establish damages in excess of the applicable "per-claimant" deductible).

Fun Services' arguments to the contrary are unavailing. It avoids referencing the actual deductible language in question. Instead, it argues that generally speaking, deductibles are different from SIRs because deductibles provide "first-dollar" coverage. However, even the cases on which Fun Services relies show that a nominal "deductible" provision like the one in question has the same effect as an SIR based on its wording. *New York State Thruway Auth. v. KTA-Tator Eng'g Servs.*, 78 A.D.3d 1566, 1568 (N.Y. 2010).

As for Fun Services' argument that it is seeking "actual" damages in the underlying action, it is barred from making such an argument under the doctrine of judicial estoppel. "Judicial estoppel prevents a person who states facts under oath during the course of a trial from denying those facts in a second suit, even though the parties in the second suit may not be the same as those in the first." *State ex rel. KelCor, Inc. v. Nooney Realty Trust, Inc.*, 966 S.W.2d 399, 403 (Mo. Ct. App. 1998). "Furthermore, even when the prior statements were not made under oath, the doctrine may be invoked to prevent a party from playing 'fast and loose with the courts.'" *Id*. Here, Fun Services obtained class certification by representing to the underlying court that the class claimants were uniformly seeking statutory damages of $500. (WHIC AUF 26.) The underlying court relied on this representation in granting class certification. (WHIC AUF 27.) Fun Services should not be permitted to now represent to this Court that the class members are in fact seeking "actual" damages. Further, Fun Services has not made and cannot make any showing that the unsolicited faxes in question resulted in "actual" damages exceeding $1,000 per fax in any event. As for Fun Services' assertion that only one deductible applies, Fun Services relies on wholly inapposite cases involving distinct deductible provisions. [Doc. 90, pp.

16

6-9.] Here, the deductible on its face applies per-claim *and per-person*. As such, it goes without saying that a single deductible cannot apply to the underlying action, which involves a multitude of claims and claimants.

## VII. FUN SERVICES' EFFORT TO AVOID THE TCPA EXCLUSION SIMILARLY FAILS

Fun Services incorporates by reference its argument concerning the TCPA exclusion made in its Opposition to WHIC's Summary Judgment Motion. [Doc. 90, pp. 9-14.] Therefore, WHIC incorporates the arguments made in its Reply in Support of its Summary Judgment Motion. [Doc. 92.] As set forth in WHIC's Reply [Doc. 92, pp. 10-11], Fun Services has failed to submit any viable authority in support of its argument that the TCPA exclusion is inapplicable to the "conversion" claim. The Illinois Circuit Court cases on which Fun Services relies are not citable precedent. *See, e.g., White v. White*, 293 S.W.3d 1, 14 (Mo. App. W.D. 2009) ("circuit court judgments are not binding authority"). Moreover, the Courts of Appeal have held that conversion claims <u>do</u> fall within the ambit of the TCPA exclusion, because they arise from the same conduct as the TCPA claims. *See, GM Sign, Inc. v. Auto–Owners Ins. Co.*, 2012 WL 4840592, 1, *4 (Mich. Ct. App. Oct.11, 2012).

Even if the conversion claim did not fall within the TCPA exclusion, conversion is not covered under the policies. Conversion is intentional conduct that does not constitute an "occurrence" as required for "property damage" coverage. *See Hunt v. Estate of Hunt*, 348 S.W.3d 103, 113 (Mo. App. W.D. 2011) (showing elements of conversion include intentional conduct); *Lacks v. R. Rowland & Co.*, 718 S.W.2d 513, 520-21 (Mo. App. E.D. 1986) (same). Further, conversion is not among the enumerated "personal and advertising injury" offenses. [AUF 5.] The elements of conversion have nothing in common with the elements of an invasion of privacy offense.

17

As for Fun Services' argument in a footnote that WHIC did not provide the requisite "notice" of the TCPA exclusion, this is without merit. [Doc. 91, p. 16, fn. 2.] As WHIC explained in its Motion for Summary Judgment, the statute on which Fun Services relies is inapposite. [Doc. 67, pp. 15-17.] The statute on which Fun Services relies, V.A.M.S. 379.845, only applies to (1) first-party property policies (2) issued by admitted Missouri insurers (3) who are seeking to cancel or nonrenew a policy. Here, the policies at issue are liability policies, not property policies. In addition, WHIC is not an admitted carrier but a surplus lines insurer. Further, the issue is not cancellation or renewal, but the inclusion of the TCPA endorsement in the 2006-07 policy.

The applicable statute, which Fun Services fails to reference or address, is V.A.M.S. 384.036. Under V.A.M.S. 384.036, a non-admitted insurer may provide notice of a change in coverage through a policy endorsement (as WHIC indisputably did here). *See Adams v. Manchester Ins. and Indem. Co.*, 385 S.W.2d 359, 366 (Mo. App. 1964) (delivery or receipt of the policy with the attached endorsement that excludes coverage is considered communication to the policyholder of those terms).

## VIII. FUN SERVICES' ARGUMENTS CONCERNING THE FIRST PUBLICATION EXCLUSION ARE BASED ON BAD LAW AND/OR INAPPOSITE CASES

Fun Services incorporates by reference its arguments concerning the first publication exclusion made in its Opposition to WHIC's Summary Judgment Motion [Doc. 90, pp. 22-24]. Therefore, WHIC incorporates its response to these arguments in its Reply in Support of its Motion [Doc. 92, pp. 11-13.] As set forth in WHIC's Reply, the prior publication exclusion precludes coverage for "personal and advertising injury" caused by material that was first published before the inception of the policy. (WHIC AUF 10.) The rationale behind the prior publication exclusion is that insurance is not designed to cover risks that have already

18

materialized.  *See, e.g., Matagorda Ventures, Inc. v. Travelers Lloyds Ins. Co.*, 203 F. Supp. 2d 704, 716 (S.D. Tex. 2001).   Here, it is undisputed that Profax allegedly sent the faxed ads in February of 2005, *before* the 2005-07 WHIC policies incepted in May of 2005.  (WHIC AUF 19(a)(b).)

Fun Services attempts to avoid the application of the exclusion by relying on cases that have been <u>reversed</u> on appeal and/or that involve the inapplicable "duty to defend."  However, this is not a duty to defend case in which WHIC is arguing that the prior publication exclusion "potentially" applies based on the pleadings.  Here, the undisputed facts show the material in question <u>was</u> first published prior to the inception of the 2005-07 policies.  Fun Services' assertion that the exclusion does not apply because each claimant suffered a distinct violation of its seclusionary interest fails.  Whether the prior publication exclusion applies depends on when the material in question was first published, not on the nature of the purported injury.

## IX.  FUN SERVICES' ARGUMENT THAT THE FAXED ADS CONSTITUTED A PRODUCTS-COMPLETED OPERATIONS RISK IS WITHOUT MERIT

Fun Services' assertion that the faxed ads constituted a "products-completed operations" risk such that the separate $2 million aggregate limit for such risks applies is without merit.  The WHIC policies define the "products-completed operations hazard" to mean "property damage" or "bodily injury" arising offsite from the insured's "product" or "work" that has been "completed." (WHIC AUF 11.)

In *Windmill Nursing Pavilion, Ltd. v. Cincinnati Ins. Co.*, 2013 WL 6578786 (Ill. App. 1 Dist.), the only appellate decision of which WHIC is aware that <u>substantively</u> addresses the issue, the Court rejected the notion that that the faxed ads in a TCPA class action fell within the products-completed operations hazard.  The *Windmill* Court reasoned that such ads do not

constitute the insured's "product" or "work" as the policy defines those terms. Rather, the insured's "product" or "work" is the product it manufactures or the service it provides:

> "We agree with the circuit court's determination that the faxed advertisements did not constitute Unitherm's [insured] 'products,' 'goods,' or 'work' under the policy. The faxes were not Unitherm's goods or products and they did not constitute its work or operations, and they were not materials, parts, or equipment furnished in connection with its operations. It is undisputed that Uniterm was not in the business of selling the advertisements themselves. Rather, the faxes were advertisements meant to solicit orders for Unitherm's products, *i.e.*, its iron-on label system. As such, the faxes clearly fell under the definition of 'advertisements' set forth in the policy: 'a notice that is broadcast, telecast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. 'Advertisement' includes a publicity article.' The faxes at issue in this case were notices dispersed to the public regarding its goods and products 'for the purpose of attracting customers.' Because the faxed advertisements did not come within the products-completed operations hazard coverage, the $1 million 'products-completed' limit is therefore unavailable to Windmill [claimant]"

*Id*. at *10. As such, the *Windmill* Court held that the insured's faxed advertisements clearly did not constitute its "work" or "product" as the policy defined those terms, but rather a separately-defined "advertisement."

The *Windmill* Court also rejected the claimant's contention that the faxed advertisements constituted "representations" concerning the insured's products:

> "Despite Windmill's argument that the products-completed operations hazard coverage applied because the advertisements made representations regarding Unitherm's products, Windmill's TCPA violation claims did not arise out of any representations or warranties and Windmill made no assertions that any representations or warranties were false or caused property damage. Although Windmill cites *Cobbins v. General Accident Fire & Life Ins. Corp., Ltd.*, 53 Ill. 2d 285, 287, 292 (1972), in arguing that product hazard coverage in insurance policies is broad and applies to all product-related injuries, that case nonetheless involved the *product* of the insured (the insured store allegedly negligently sold sparklers to an underage person, who was injured by them off-site). (Emphasis in original.)

*Windmill v. Cincinnati Ins. Co., supra*, 2013 WL 6578786, *11. Therefore, the *Windmill* Court rejected the TCPA claimant's contention that the insured's faxed advertisements fell within the

products-completed operations hazard as purported "representations" concerning the insured's product.

The *Windmill* Court also flatly rejected the claimant's assertion that the definitions of "your work" and "your product" were somehow "ambiguous" and should be construed in favor of coverage:

> "We decline to find that the terms 'your product' and 'your work' are ambiguous, as they are clearly defined by the plain language of the policy. Moreover, as stated, the policy also set forth the definition of 'advertisement,' which unquestionably encompassed the faxed advertisements at issue. An insurance policy is not rendered ambiguous merely because the parties disagree as to its meaning, and we 'will not strain to find ambiguity where none exists.' [Citation omitted.]"

*Id.* at *11. Thus, the *Windmill* Court held that the definitions of "your product" and "your work" were not "ambiguous." As such, the Court found no occasion to decide whether the additional limit applicable to products-completed operations risks applied. *Id.* at *11.

Here, Fun Services' argument that the faxed ads in question constituted the insured's "work" or "product" and/or representations regarding such work are nearly identical to those advanced by the *Windmill* claimant. Likewise, the operative policy terms are nearly identical. Here, as in *Windmill*, the WHIC policies separately define the term "advertisement" to mean a notice about the insured's product <u>for the purpose of attracting customers</u>. (WHIC AUF 14.) As such, this Court should find that under *Windmill*, Fun Services' arguments concerning the products-completed operations hazard lack merit as a matter of law.

In an attempt to avoid this result, Fun Services relies on *Columbia Cas. Co. v. HIAR Holdings, LLC*, 411 S.W.3d 258 (Mo. banc 2013). According to Fun Services, the *HIAR* Court found that the faxed ads fell under the products-completed operations risk. In actuality, the *HIAR* Court was unconcerned with the applicable policy limits because the insurer was held liable for the entire judgment based on its breach of the duty to defend. *Id.* at 273-74. When the

*HIAR* Court did mention the policy limits, it observed only that they were $1 million per occurrence and $2 million in the aggregate. There was no reference to any separate products-completed operations limit. *Id*. at 262, n.5.

Moreover, despite Fun Services' contentions, the *HIAR* Court did not make any substantive determinations concerning the products-completed operations issue. *HIAR* only referenced the products-completed operations risk in passing, noting that the trial court found the faxed ads fell within this risk. Significantly, the *HIAR* Court provided no independent analysis of or substantive comment regarding this finding. *Id*. at 263, n.8, 268. Further, the only appellate court to substantively address the issue, *Windmill, supra*, has found that faxed ads <u>do not</u> fall within the products-completed operations hazard, as explained above.

## X. CONCLUSION

Fun Services has not and cannot establish any coverage under the WHIC policies as a matter of law. Therefore, its Cross-Motion for Summary Judgment should be denied.

Respectfully submitted,

WALDECK, GOLDSTEIN & PATTERSON, P.A.

By: /s/ Meagan L. Patterson
Meagan L. Patterson, MO #58234
Kelly M. Cochran, MO #64458
5000 W. 95th Street, Suite 350
Prairie Village, KS 66207
Telephone: (913) 749-0300
Facsimilie: (913) 749-0301
E-Mail: meaganp@wgpkc.com
E-Mail: kellyc@wgpkc.com

SELMAN BREITMAN LLP
Alan B. Yuter (Pro Hac Vice; CA SBN 101534)
Rachel E. Hobbs (Pro Hac Vice; CA SBN 186242)
11766 Wilshire Boulevard, Sixth Floor
Los Angeles, CA 90025

Telephone: (310) 445-0800/Fax: (310) 473-2525
E-Mail: ayuter@selmanbreitman.com
E-Mail: rhobbs@selmanbreitman.com

**ATTORNEYS FOR PLAINTIFF/ COUNTERCLAIM DEFENDANT**

<u>**CERTIFICATE OF SERVICE**</u>

I certify that on January 6, 2014, I electronically filed the foregoing document with the Court using the CM/ECF system, which sent notice of electronic filing to the following:

Max Margulis
Margulis Law Group
28 Old Belle Monte Road
Chesterfield, MO  63017
Email:  maxmargulis@marguislaw.com

David Oppenheim
Jeffrey Berman
Anderson & Wanca
3701 Algonquin Road, Suite 760
Rolling Meadows, IL  60008
Email: doppenheim@andersonwanca.com
Email:  jberman@andersonwanca.com

Barbara Frankland
Rex Sharp
Gunderson Sharp LLP
5301 West 75th Street
Prairie Village, KS  66208
Email:  bfrankland@midwest-law.com
Email:  rsharp@midwest-law.com

Phillip A. Bock
Bock & Hatch LLC
134 N. LaSalle St., Ste. 1000
Chicago, IL  60602
P:  312.658.5500
Email:  phil@bockhatchllc.com
**ATTORNEYS FOR FUN SERVICES
 OF KANSAS CITY, INC.**

John Sommer
19049 East Valley View Parkway, Suite B
Independence, MO  64055
johnsommerlaw@sbcglobal.net
**ATTORNEY FOR PARRISH LOVE d/b/a ASPHALT WIZARDS**

           /s/ Meagan L. Patterson
           **ATTORNEYS FOR PLAINTIFF**

257.33498

257.33498