## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF MISSOURI
## WESTERN DIVISION

| | | |
|---|---|---|
| WESTERN HERITAGE INSURANCE CO., | ) | |
| | ) | |
| Plaintiff/Counterclaim Defendant, | ) | |
| | ) | |
| v. | ) | No. 4:13-CV-0034-DGK |
| | ) | |
| PARRISH LOVE, d/b/a ASPHALT | ) | |
| WIZARDS, DOES 1-50, | ) | |
| | ) | |
| Defendants, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| FUN SERVICES OF KANSAS CITY, INC., | ) | |
| | ) | |
| Defendant/Counterclaim Plaintiff. | ) | |

## ORDER GRANTING IN PART SUMMARY JUDGMENT MOTIONS

This declaratory judgment action concerns insurance coverage for a class action lawsuit filed by Defendant/Counterclaim Plaintiff Fun Services of Kansas City, Inc. ("Fun Services") against Defendant Parrish Love d/b/a Asphalt Wizards ("Asphalt Wizards") in the Circuit Court of Jackson County, Missouri. Fun Services is suing Asphalt Wizards for allegedly sending unsolicited faxes in violation of the federal Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, and Missouri common law. Fun Services seeks to satisfy any judgment in the Jackson County case with the proceeds from insurance policies issued to Asphalt Wizards by Plaintiff/Counterclaim Defendant Western Heritage Insurance Company ("Western Heritage").

Western Heritage filed suit in this Court seeking a declaration that it has no duty to defend or indemnify Asphalt Wizards in the underlying lawsuit, and Western Heritage named both Asphalt Wizards and Fun Services as defendants. Fun Services responds that Western

Heritage has a duty both to defend and indemnify, and it also asserts counterclaims for "Supplementary Payments" and "Vexatious Refusal to Pay and Attorneys' Fees."[1]

Now before the Court are Western Heritage's and Fun Services' cross-motions for summary judgment (Docs. 66 and 83, respectively). Western Heritage moves for an order on its claim that it owes no duty to indemnify based on various provisions in the policies' deductible endorsements. Alternately, it moves for partial summary judgment on various coverage defenses. Fun Services moves for summary judgment on its claim that Western Heritage has both a duty to defend and indemnify.

For the reasons set forth below, the Court finds: (1) Fun Services lacks standing to assert any counterclaims against Western Heritage; (2) Western Heritage waived any coverage defenses by failing to issue a timely reservation of rights letter to Asphalt Wizards; (3) the policies $1,000 deductible applies on a per-claim and per-person basis; (4) this deductible exceeds the amount of damages that could possibly be awarded to a single class member in the underlying suit, thus Western Heritage owes no duty to indemnify; but (5) the policies require Western Heritage to defend Asphalt Wizards in the underlying lawsuit irrespective of whether the deductible can be met.

Accordingly, the motions are GRANTED IN PART and DENIED IN PART.

## Summary Judgment Standard

A moving party is entitled to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial responsibility of informing the court of the basis for its motion, and it must identify those portions of the record which demonstrate the absence of a genuine issue of material fact. *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042

---

[1] On March 10, 2014, the Court dismissed Fun Services' counterclaim for "Conflicted Defense."

(8th Cir. 2011). If the movant does so, then the nonmovant must respond by submitting evidence demonstrating that there is a genuine issue for trial. *Id.* The court views any factual disputes in the light most favorable to the nonmoving party. *Id.* Decisions concerning credibility determinations, how to weigh the evidence, and what inferences to draw from the evidence, are decisions reserved for the jury, not the judge. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

To establish a genuine issue of fact sufficient to warrant trial, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The nonmoving party must set forth specific facts showing there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). But the nonmoving party "cannot create sham issues of fact in an effort to defeat summary judgment." *RSBI Aerospace, Inc. v. Affiliated FM Ins. Co.*, 49 F.3d 399, 402 (8th Cir. 1995) (citation omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Ricci v. DeStefano*, 557 U.S 557, 585 (2009).

## Undisputed Facts

For purposes of resolving the pending summary judgment motions, the Court finds the relevant undisputed facts to be as follows.[2]

### The Insurance Policies

Defendant Asphalt Wizards provides asphalt and paving services in the Kansas City metropolitan area. Plaintiff Western Heritage is an insurance company that issued three consecutive commercial general liability policies to Asphalt Wizards in effect from May 18,

---

[2] The Court has omitted properly controverted facts, facts that are extraneous to resolution of the pending motions, facts that are not properly supported by admissible evidence, legal conclusions, and argument presented as fact.

2004 through May 18, 2007 ("the Policies").  For purposes of this case, the policies are almost identical, except that the policy in effect from May 18, 2006, to May 18, 2007, also contains an endorsement titled "Exclusion-Violation of Statutes That Govern E-Mails, Fax, Phone Calls or Other Methods of Sending Material or Information."  This endorsement states it excludes coverage for, among other things, "property damage" or "personal and advertising injury" "arising directly or indirectly out of any action or omission that violates or is alleged to violate. . . The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law. . . ."

The Policies cover amounts the insured becomes legally obligated to pay as a result of "property damage" caused by an "occurrence" as defined in the policies.  They define "occurrence" to include "continuous or repeated exposure to substantially the same general harmful conditions."  The Policies also state that "[w]e will pay those sums that the insured becomes legally obligated to pay as damages because of 'personal and advertising injury' to which this insurance applies."  The Policies contain a $1 million per occurrence limit and a $2 million general aggregate limit.

Each of the Policies contain a deductible liability insurance endorsement fixing a $1,000 "per-claim" deductible for "property damage" and "advertising injury" claims which "applies to all damages sustained by one person or organization as the result of any one claim."  Each endorsement states that "[t]he Company's obligations under the coverages afforded by this policy to pay damages on behalf of the Insured apply only to the amount of damages in excess of the deductible amount stated above."  They provide that, "[t]he terms of the policy, including those with respect to the Company's rights and duties with respect to the defense of suits . . . apply irrespective of the application of the deductible amount."  They also state that the deductible amount is comprised of "all damages sustained by one person or organization as the

result of any one claim" and "investigation" and "legal expenses incurred in the handling and investigation of each claim . . . ."[3]

### The Underlying Lawsuit

In 2005, Asphalt Wizards hired a company called Profax to fax a one-page advertisement for asphalt and paving services to companies in the Kansas City metropolitan area. Asphalt Wizards provided Profax with an Excel list containing the fax numbers to which it wanted Profax to send the ad.

According to Profax's invoices, Profax successfully sent 33,073 faxes on Asphalt Wizards behalf, including one to Fun Services, while the Policies were in effect.

On January 7, 2008, Fun Services filed a class action lawsuit in the Circuit Court of Jackson County, Missouri alleging two claims. Count I asserts Asphalt Wizards violated the TCPA by sending unsolicited faxes; Count II asserts it committed common-law conversion by commandeering the class members fax machines in the course of sending unsolicited faxes. For

---

[3] The Policies also contain various exclusions which are the basis for potential coverage defenses and alternate grounds for summary judgment.

The Policies all contain a "prior publication" exclusion negating coverage for "'personal and advertising injury' arising out of oral or written publication of material whose first publication took place before the beginning of the policy period." The Policies define "advertisement," in pertinent part, as "a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters."

The Policies define the "products-completed operations hazard" to include "property damage" occurring away from the insured's premises and arising out of the insured's "product" or "work" as the policy defines those terms, as long as such work has been "completed." The Policies define "product" to mean, in pertinent part: "any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by: (a) You; (b) Others trading under your name; or (c) A person or organization whose business or assets you have acquired; and (2) Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products. Includes (1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of 'your product'; and (2) The providing of or failure to provide warnings or instructions." The Policies define "work" to mean: "(1) Work or operations performed by you or on your behalf; and (2) Materials, parts or equipment furnished in connection with such work or operations. Includes (1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of 'your work', and (2) The providing of or failure to provide warnings and instructions."

the TCPA violations, the class seeks statutory damages in the amount of $500 for each fax sent.[4] On the conversion claims, the class seeks the actual damages resulting from receipt of the unsolicited faxes.

### The June 26, 2008, Letter from Western Heritage

Asphalt Wizards notified Western Heritage of the lawsuit on or about May 1, 2008. On June 26, 2008, Western Heritage mailed Asphalt Wizards a letter acknowledging receipt of the lawsuit. The letter's heading includes a claim number, policy number SCP 0553453, the caption of the Jackson County lawsuit, and a date of loss. The body of the letter states:

> We acknowledge receipt of suit papers in the above referenced case from you on May 1, 2008. This suit has been brought in the Circuit Court of Jackson County, MO, Case NO. 0186CV00064, captioned above. Plaintiff is alleging that you have faxed unsolicited advertisements to persons in Kansas in violation of the Telephone Consumer Protection Act. In addition, plaintiff seeks to establish a class action to represent all other persons in the State of Kansas who likewise received unsolicited faxed ads on behalf of Asphalt Wizards.

> We wish to point out that the amount of compensatory damages sued for is not specific and that it might be in excess of the limits of liability provided by your insurance policy. Your policy provides a limit of liability of $1,000,000.00 each occurrence and $2,000,000.00 aggregate of all claims within the policy year of your policy. This company cannot be responsible for the payment of any amount in excess of these limits of liability in the settlement of any claim or satisfaction of any judgment, which may be rendered.

---

[4] Fun Services denial of this statement of fact is futile. In response to the interrogatory, "Are you seeking statutory damages of $500 per violation from Asphalt Wizards in the underlying class action?" Fun Services answered "Yes." And in response to the interrogatory, "Are you seeking treble damages of $1,500 per violation from Asphalt Wizards in the underlying class action?" Fun Services answered "No." Additionally, in Fun Services' February 23, 2009, motion for class certification, it represented to the court that "a class action is superior to individual actions because the maximum recovery for each class member is only $500 and the TCPA does not allow for fee shifting." In its order granting class certification, the Jackson County Circuit Court observed, "Plaintiff and the other class members seek statutory damages under the TCPA."

Finally, I wish to remind you that your policy deductible is $1,000.00.

We have retained the firm of Brown & James in Kansas City, MO to defend you in this matter. They may be reached at 816-472-0800. The attorneys will communicate with you in due course in the preparation of your defense. In the meantime, we ask that you do not discuss this case with anyone except your own attorney, the above law firm, or a representative of this company. If you have any questions, or wish to discuss this matter with us, please call or write.

If you have any questions or concerns regarding this letter or the handling of this case, please do not hesitate to contact me at the number listed below.

After sending the letter, Western Heritage appointed the law firm of Brown & James to defend the Fun Services action.

**The October 29, 2012 Letter from Western Heritage**

On October 29, 2012, outside counsel for Western Heritage, Selman and Breitman, sent Asphalt Wizards a twelve-page letter by certified mail, return receipt requested. The letter's introduction states:

Western Heritage . . . has asked us to supplement their prior correspondence to you pertaining to your claim for the lawsuit that was originally filed against Parrish Love dba Asphalt Wizards . . . .

Western Heritage agrees to continue providing a defense to Asphalt Wizards in the Fun Services action, *subject to a reservation of rights set forth herein*. As you know, Western Heritage has assigned Davis R. Buchanan of the law firm of Brown & James. We request that you continue to fully cooperate with Mr. Buchanan and his law firm in his defense of Asphalt Wizards.

(Emphasis added.) Section I of the letter, titled "FACTUAL BACKGROUND," summarized the allegations and procedural history of the underlying lawsuit. Section II of the letter, titled

7

"POLICY INFORMATION," identifies each policy and notes that "The policy limits of the . . .

policies are $1 million per occurrence with a general aggregate limit of $2 million subject to a

$1,000 per claim deductible for personal and advertising injury and a $1,000 per claim

deductible for property damage liability."  It then quotes large portions of the policies' relevant

coverage language.

Section III of the letter, titled "WESTERN HERITAGE'S COVERAGE POSITION,"

contains a lengthy, detailed explanation of the insurer's coverage position.  Among other things,

it states:

> Western Heritage hereby agrees to defend Asphalt Wizards in the
> Fun Services action, subject to a reservation of rights.  However,
> with respect to the 2006/2007 policy, coverage for the claim is
> denied on the basis of form CG 00 67 3-05 Exclusion – Violation
> of Statutes That Govern E-Mails, Fax, Phone Calls or Other
> Methods of Sending Material or Information.  It is our view that
> the exclusion applies to bar coverage for distribution of material in
> violation of statutes, including the TCPA, which is specifically
> referenced in the endorsement.  It is our view that this exclusion
> encompasses and bars from coverage all of the allegations against
> Asphalt Wizards in the Fun Services action.
>
> With respect to all of [the] Policies, Western Heritage intends to
> request a judicial declaration regarding the respective rights and
> duties of Western Heritage and Asphalt Wizards under the Policies
> including a determination of whether Asphalt Wizards' claim is
> covered and whether Western Heritage owes Asphalt Wizards a
> duty to defend it in the Fun Services action.  To accomplish this, it
> will be necessary for Western Heritage to file a court action
> requesting such a declaration of rights.
>
> With respect to Western Heritage's present agreement to continue
> to defend Asphalt Wizard's in the Fun Services action, it is subject
> to the following reservation of rights:
>
> 1.  The right to seek a declaration of rights and duties under its
>     policy regarding its defense and/or indemnity obligations;

8

2.  The right to withdraw defense and the right to seek reimbursement for defense fees incurred in defending claims which raise no potential for coverage;

3.  The right to seek reimbursement for any judgment or settlement paid by Western Heritage on the ground that the sums were not paid in connection with covered claims;

4.  The right to rescind the policy, should facts or circumstances be revealed which demonstrate that a right of rescission exists;

5.  The right to amend this reservation of rights letter.

Additionally, with respect to the Fun Services action, Western Heritage hereby specifically reserves its rights with respect to each of the policy provisions and coverage issues that follow. *Please bear in mind that we are not in any way asserting that the allegations against Asphalt Wizards have merit. We are simply stating that Asphalt Wizards' claim, or a portion of it, may not be covered for the following additional reasons*: . . .[listing reasons, quoting relevant language from the policies, and citing relevant caselaw].

(Emphasis in original.)

On January 14, 2013, Western Heritage filed this declaratory judgment action seeking a determination that it owed no duty to defend or indemnify Asphalt Wizards. Neither Defendant asked the Court to exercise its discretion to refrain from hearing this case.

On March 11, 2013, at the parties' request, the Jackson County Circuit Court stayed the underlying litigation pending the outcome of this declaratory judgment action.

9

**Discussion**

As an initial matter, the Court notes that the federal Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202, governs this case.[5] This lawsuit concerns a dispute over an insurance contract the Court is hearing pursuant to its diversity jurisdiction, 28 U.S.C. § 1332, where the Court has been asked to declare the parties' respective rights, status, and obligations. Since the Court possesses subject matter jurisdiction over this dispute, the federal Declaratory Judgment Act and Rule 57 authorize this Court to issue a declaratory judgment as a remedy. 10B Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2754 (3d ed. 1998) ("The Act and Rule 57 are not jurisdictional. They are procedural only and merely grant authority to the courts to use a new remedy in cases over which they otherwise have jurisdiction."). While the Missouri cases cited by Western Heritage supply relevant law, Missouri's Declaratory Judgment Act does not govern here.

**I.      Fun Services lacks standing to assert any counterclaims.**

First, Western Heritage argues that Fun Services is a "stranger" to the policies (that is, it is neither a party to the insurance contracts or an intended third party beneficiary), and so lacks standing to enforce the policies or bring any counterclaims seeking a declaration that Western Heritage has a duty to indemnify Asphalt Wizards in the underlying case.

"A party has standing to bring a claim if it has suffered some actual or threatened injury." *Cnty. of Mille Lacs v. Benjamin*, 361 F.3d 460, 463 (8th Cir. 2004). In a diversity case such as this one, a party bringing claims must establishes standing under both Article III of the United States Constitution *and* the relevant state law. *Wolfe v. Gilmour Mfg. Co.*, 143 F.3d 1122, 1126 (8th Cir. 1998).

---

[5] Since this suit is being heard in federal court, the federal procedural rules apply to this case, even if application of the federal rule might determine the outcome. *Hanna v. Plumer*, 380 U.S. 460 (1965).

10

Although some caselaw suggests Fun Services possesses standing under Article III to bring its counterclaims, *see, e.g., O'Bannon v. Friedman's Inc.*, 437 F. Supp. 2d 490, 494 (D. MD. 2006), Fun Services clearly lacks standing under Missouri law to bring its counterclaims. Under Missouri law, a tort-claimant lacks standing to sue a tort-feasor's insurance company to declare the tort-claimant's rights under a policy until it has obtained a judgment against the insured. *Evanston Ins. Co. v. Harris Med. Assocs., LLC*, No. 4:12CV1646 JCH, 2013 WL 4505298, at *2-3 (E.D Mo. July 10, 2013); *Farmers Ins. Co. v. Miller*, 926 S.W.2d 104 (Mo. Ct. App. 1996). It is undisputed here that Fun Services has not obtained any judgment against Asphalt Wizards or established any other possible basis on which it could pursue its counterclaims against Western Heritage in this declaratory judgment action. Accordingly, all of Fun Services' remaining counterclaims are dismissed without prejudice.[6]

## II. Western Heritage owes no duty to indemnify Asphalt Wizards in the underlying lawsuit because no class member will have more than $1,000 in damages, thus the deductible cannot be met.

First, the parties seek summary judgment on whether Western Heritage owes a duty to indemnify.[7] Western Heritage argues it owes no duty to indemnify Asphalt Wizards because

---

[6] The Court hereby corrects that portion of its previous order (Doc. 98) stating that Federal Rule of Civil Procedure 13(a) required Fun Services to bring any counterclaims in the present action or waive them forever. Although the doctrine of res judicata normally bars a litigant from splitting its claims between two lawsuits, there is an exception that is applicable here in which the relief sought in the first lawsuit is a declaratory judgment. *Allan Block Corp. v. Cnty. Materials Corp.*, 512 F.3d 912, 915-17 (7th Cir. 2008) (Posner, J.).

[7] An insurer's duty to defend is separate from its duty to indemnify and that separate standards govern each duty. "The duty to defend is broader than the duty to indemnify." *McCormack Baron Mgmt. Servs., Inc. v. Am. Guar. Liab. Ins. Co.*, 989 S.W.2d 168, 170 (Mo. 1999). An insurance company has a duty to defend if there is "potential" for coverage under the policy. *Id.* The presence of any potentially insured claims in a complaint gives rise to a duty to defend, even though the claims may not survive a motion to dismiss. *Fleishour v. Stewart Title Guar. Co.*, 743 F. Supp. 2d 1060, 1066 (E.D. Mo. 2010). By contrast, an insurer's duty to indemnify—that is, to pay a judgment or settlement—"is determined by the facts as they are established at trial or . . . some other means, for example through summary judgment or settlement." *McCormack Baron*, 989 S.W.2d at 173. Western Heritage complains that Fun Services is using "coverage defenses" to unfairly conflate the duty to defend with the duty to indemnify. The Court will apply the appropriate standard in its respective discussions of the duty to indemnify and the duty to defend.

each policy contains an annual per-claim deductible of $1,000, and none of the class members in the underlying litigation can possibly establish more than $500 in damages. Western Heritage also seeks partial summary judgment declaring that: (1) it owes no coverage obligation under the 2006-07 policy because this policy contains an express exclusion for TCPA violations like the ones alleged in the underlying action; (2) each of the Policies contain a "prior publication" exclusion applicable to "advertising injury" which bars coverage; and (3) the faxed advertisements Asphalt Wizards allegedly sent do not constitute "products-completed operations" risk under the Policies such that the "products-completed operations" $2 million aggregate limit is inapplicable.

### A. Western Heritage waived its coverage defenses by undertaking Asphalt Wizards' defense without a timely reservation of rights.

Fun Services argues that Western Heritage has waived its coverage defenses in the underlying litigation by undertaking Asphalt Wizards' defense without any reservation of rights.

Western Heritage responds there was no waiver because it "referenced" the $1,000 per-claim deductible in the 2008 letter, and it later supplemented this "reservation" by raising the TCPA and prior publication exclusions in the 2012 letter. Western Heritage contends that even if there had been a waiver, under Missouri law waiver and estoppel may not be used to bring risks within the coverage of an insurance policy that are otherwise excluded from the policy. Finally, it argues that any waiver is irrelevant because Asphalt Wizards did not challenge the reservation of rights invoked in the 2012 letter and so continued to accept Western Heritage's defense under a reservation of rights.

A reservation of rights letter is a means by which, when coverage is in doubt, the insurer offers to defend the insured while reserving some or all of its policy defenses in case the insured is found liable. *City of Carter Lake v. Aetna Cas. & Sur. Co.*, 604 F.2d 1052, 1060 (8th Cir.

1979).  By notifying the insured of its reservation of rights prior to any determination of liability, the insurer suspends the operation of waiver and estoppel.  *Id.*  The purpose of a reservation of rights letter is to enable an insured to make an informed decision as to whether it should, because of a possible conflict of interest between itself and its insurer, take some action in order to protect its interest.  Allan D. Windt, Insurance Claims & Disputes:  Representation of Insurance Companies and Insureds § 2.14 (5th ed. 2011).  If the insurer decides to defend the insured subject to a reservation of rights, the insured may elect to allow the insurer to defend it, or it may refuse to allow a defense under a reservation of rights, instead retaining its own attorney to defend it and perhaps sue the insurer later.  *Safeco Ins. Co. of Am. v. Rogers*, 968 S.W.2d 256, 258 (Mo. Ct. App. 1998).

A typical reservation of rights letter does most, if not all, of the following: (1) identifies the policy at issue; (2) quotes, or at least refers to, the relevant policy provisions and identify any terms, conditions, or exclusions which may bar coverage; (3) refers to specific, relevant allegations in the complaint; (4) identifies which claims may not be covered; (5) explains in detail the basis for the insurer's coverage position; (6) sets forth the proposed arrangement for providing a defense and, depending on the law of the jurisdiction, advises the insured of its right to independent defense counsel; (7) advises the insured of any actual or potential conflicts of interest between the insurer and the insured; (8) reserves the right to withdraw from the defense; (9) contains a general reservation of rights, including the right to assert other defenses the insurer may subsequently learn to exist during further investigation; and (10) uses the words "reservation of rights."  1 Leo Martinez, Marc S. Mayerson & Douglas R. Richmond, New Appleman Insurance Law Practice Guide § 11.11[2][b] (2012); 14 Steven Plitt, Daniel Maldonado, Joshua D. Rogers & Jordan R. Plitt, Couch on Insurance § 202:47 (3d ed. 2013).  In order for a reservation of rights letter to be effective, it must also be timely.  *City of Carter Lake*,

604 F.2d at 1060. The Eighth Circuit has held that a reservation of rights letter sent six months after the insurer knew, or should have known, the facts forming the basis for the denial of coverage, is untimely. *Id.* at 1060-61.

Under Missouri law, where an insurer fails to provide timely notice to the insured that its defense of the action is subject to a reservation of rights, it is precluded from later denying coverage. *Kinnaman-Carson v. Westport Ins. Corp.,* 283 S.W.3d 761, 765 (Mo. 2009); *Brooner & Associates. v. Western Casualty*, 760 S.W.2d 445, 447 (Mo. Ct. App. 1988) (noting reservation of rights must be "timely").

The Court holds that Western Heritage waived its coverage defenses by failing to issue a timely reservation of rights letter to Asphalt Wizards. To begin, the Court finds the 2008 letter to Asphalt Services is not a reservation of rights letter. Although it identifies one of the relevant policies at issue and restates the allegations in the state court petition, it does not provide any other information from which Asphalt Wizards could infer that Western Heritage was defending subject to a reservation of rights. On the other hand, the 2012 letter is a reservation of rights letter because it bears almost all of the indicia of a typical reservation of rights letter. *See* 1 Martinez, et al., at § 11.11[2][b]; 14 Plitt, et al., at § 202:47. This letter was ineffective, however, because it was untimely. Western Heritage had notice of the lawsuit in May of 2008, but did not notify Asphalt Wizards of its reservation of rights until the fall of 2012. Since Western Heritage knew, or should have known, from reading the state court petition in May of 2008 that it possessed applicable coverage defenses and yet waited four years before sending a reservation of rights letter, it waived its ability to deny coverage under the Policies. Accordingly, it waived: (1) any express exclusion of coverage for TCPA violations in the 2006-07 policy; (2) any "prior publication" exclusion precluding any "advertising injury" under any of the Policies; (3) any defense that Fun Services faxes did not constitute a "products-completed

operations" risk under the Policies; (4) any defense that the class members did not suffer "property damage" or an "advertising injury" as defined by the Policies; and (5) any other coverage defense.

The Court finds no merit to Western Heritage's contention that even if it had waived its coverage defenses by not timely asserting them, it would not matter because the doctrine of waiver is "not available to bring risks within the coverage of an insurance policy that are not covered by its terms or are excluded from that policy." *Holland Corp. v. Maryland Cas. Co.*, 775 S.W.2d 531, 535 (Mo. Ct. App. 1989). Although Western Heritage has accurately described this rule, this rule is completely inapplicable to the present case. The rationale behind the rule is that "neither the doctrines of waiver or estoppel may be used to *create a new contract* for the parties." *Id.* (emphasis added). The rule applies where a party is seeking literally to create a contract between the parties out of thin air. It applies, for example, where a person who is not insured under a policy attempts to create coverage by claiming that since the insurer failed to raise the issue that he was not insured in its pleading, he became *entitled* to coverage. *See, e.g., Shelter Gen. Ins. Co. v. Siegler*, 945 S.W.2d 24, 26-27 (Mo. Ct. App. 1997). That is not the case here. There is no question that Asphalt Wizards is insured by Western Heritage. The question is, did Western Heritage waive its coverage defenses by failing to send a timely reservation of rights letter? The Court holds it did.

The Court also finds no merit to the suggestion that Asphalt Wizards acquiesced to a defense under a reservation of rights because it did not object after Western Heritage sent the 2012 letter. The record is silent as to what, if anything, Asphalt Wizards did or did not do after it received this letter, so there is no factual basis for the Court to find Asphalt Wizards did not object. Additionally, the cases cited by Western Heritage to support its position, *Brooner & Associates v. Western Casualty*, 760 S.W.2d 445 (Mo. Ct. App. 1988) and *Jacore Systems, Inc.*

15

*v. Central Mutual Ins. Co.*, 390 S.E.2d 876 (Ga. Ct. App. 1990), are not factually analogous.  In both of these cases the court found that the insurer had sent a timely reservation of rights letter, which Western Heritage failed to do here.

  **B. Western Heritage did not waive the deductible endorsement.**

  While Western Heritage waived its right to assert any coverage defense or exclusion under the Policies, it did not waive the deductible endorsement.  A deductible is "the portion of the loss to be borne by the insured before the insurer becomes liable for payment."  Black's Law Dictionary 444 (8th ed. 2004).  A deductible endorsement is not a coverage defense or exclusion; it is a means of shifting a portion of the risk from the insurer to the insured.  Even where, as here, an insurer assumes an insured's defense unconditionally, the insurer does not waive the deductible endorsement.  *See Pav-Lak Indus., Inc., v. Arch Ins. Co.*, 56 A.D.3d 287, 288 (N.Y. App. Div. 2008) (holding insurer which had waived an exclusion had not waived the deductible endorsement because the deductible endorsement did not bar coverage or implicate policy exclusions); *cf.* 14 Plitt, et al., at § 202:74 ("While the defense of the action by an insurer without reservation of rights as to its defenses may constitute a waiver of the insurer's defenses, it does not rewrite the policy so as to remove the maximum on the coverage provided.")[8]

  **C. The endorsement applies a $1,000 deductible separately to each class member's claim.**

  Next, the Court considers how the deductible endorsement applies to a class member's claim.

---

[8] Alternately, even if a deductible endorsement is a coverage defense capable of being waived, the Court would find it had not been waived in this case.  Western Heritage's June 26, 2008, letter explicitly referenced the $1,000 per-claim deductible, reminding Asphalt Wizards that "your policy deductible is $1,000.00."  This obviously put Asphalt Wizards on notice that Western Heritage intended to assert the deductible endorsement, thus there was no waiver.

The Policies' deductible endorsements set a $1,000 "per-claim" deductible for "property damage" and "advertising injury" claims[9] which "applies to all damages sustained by one person or organization as the result of any one claim." By its express terms, the deductible applies on a per-person, per-claim basis. This means the deductible applies separately to each class member's claim in the underlying lawsuit; the class members' claims cannot be added together to meet the deductible. *See Muscemi v. Schwegmann Giant Super Mkts.*, 332 F.3d 339, 353-54 (5th Cir. 2003) (holding "claim" refers to a demand by a third party against the insured, not a demand for coverage by the insured against its insurer, thus the class members' claims could not be aggregated); *Capitol Indem. Corp. v. Miles*, 978 F.2d 437 (8th Cir. 1992) (holding claims from 130 individuals whose cars were damaged by a single episode of a contractor spraying exterior foam insulation on a building could not be aggregated to meet the building owner's deductible).

The Court also holds that Western Heritage has no duty to indemnify Asphalt Wizards until the $1,000 per-person, per-claim deductible has been reached. The deductible endorsement states that "[t]he Company's *obligations* under the coverages afforded by this policy *to pay damages on behalf of the Insured apply only to the amount of damages in excess of the deductible amount* stated above." (Emphasis added.) Thus, in order for Western Heritage to owe a duty to indemnify Asphalt Wizards in the underlying case, a class member will have to have more than $1,000 in damages for each individual fax sent.

The Court finds no merit to Fun Services' assertion that Western Heritage must pay up to its policy limits in satisfaction of any judgment, regardless of whether the deductible is reached or not. Fun Services contends that while the deductible reflects an allocation of ultimate

---

[9] Consistent with its above ruling that Western Heritage waived any coverage defenses, this section assumes the class members' claims are covered under the Policies, that is, that the class members have suffered "property damage" or "advertising injury."

responsibility between the insurer and the insured, the endorsement places the risk of collecting the deductible on the insurer. Thus, the argument goes, Western Heritage must pay any judgment, subject to a right to recoup the deductible amount from Asphalt Wizards later. If Asphalt Wizards is insolvent, then Western Heritage must bear the entire loss regardless of whether the deductible amount is reached.

While the general rule may be that an insurer owes first-dollar coverage under a deductible, that is irrelevant because the express language of the policy provides otherwise. The deductible endorsement states that the insurer is only obligated to pay amounts "in excess" of the deductible: "The Company's obligations . . . apply only to the amount of damages in excess of the deductible amount . . . ." This means that if a class member has a $1,300 claim against Asphalt Wizards for a covered loss, then Western Heritage must pay $300. If Asphalt Wizards cannot pay some or all of the $1,000 deductible, then Western Heritage still owes only $300.[10] And if the class member's damages are not more than $1,000, then Western Heritage has no duty to indemnify.

The Court also rejects the suggestion that this endorsement is somehow ambiguous because the Policies do not define "claim" or explicitly discuss how it applies to class actions. Under Missouri law, "[a]n insurance policy is ambiguous if its provisions are duplicitous or difficult to understand." *Trainwreck W. Inc. v. Burlington Ins. Co.*, 235 S.W.3d 33, 40 (Mo. Ct. App. 2007). But "[t]he failure of a policy to define a term does not, in and of itself, render it ambiguous;" nor is it "ambiguous merely because the parties disagree over its meaning." *Id.* (citations omitted). This endorsement is not duplicitous or difficult to understand, and the Court applies it as written.

---

[10] To be clear, the Court also rejects Western Heritage's suggestion that it "owes no duty to pay defense or indemnity amounts until the $1,000 'per claim' deductible has been *paid* . . . ." (Doc. 92 at 6) (emphasis added). Western Heritage's obligation to pay is independent of Asphalt Wizards' ability to pay.

18

**D.  Western Heritage owes no duty to indemnify Asphalt Wizards in the underlying lawsuit, because given the facts no claim can exceed the deductible amount.**

The Court now turns to whether Western Heritage owes a duty to indemnify on the facts of this particular case.  As a threshold matter, a decision on the duty to indemnify is not premature.  Although a trial or settlement is often needed in the underlying case to resolve disputed questions of fact relevant to indemnification, such as the exact amount of damages, Missouri law recognizes that these facts can be established by other means, including summary judgment.  *McCormack Baron Mgmt. Servs., Inc. v. Am. Guar. Liab. Ins. Co.*, 989 S.W.2d 168, 173 (Mo. 1999).  Here the record clearly demonstrates that whatever the precise amount of damages per-claim may be, no class members' claim will exceed $1,000, thus Western Heritage has no duty to indemnify.

Under the deductible endorsement, whether the deductible amount is reached is determined by adding the indemnity amounts (that is, damages in the underlying case) and the cost of defense.  Under the TCPA, each unsolicited fax sent constitutes a separate violation.  47 U.S.C. U.S.C. § 227(b)(3)(B).  For Count I, Fun Services seeks statutory damages under the TCPA of $500 per fax.  For Count II, the conversion claim, it seeks the actual damages resulting from receipt of the unsolicited fax.  These actual damages would consist of the value of the recipient's fax paper, toner, ink, equipment, and personnel time.  And no rational trier of fact could find that the actual damage from receiving a single unsolicited fax exceeded $100.  *See Missouri v. Am. Blast Fax*, 323 F.3d 649, 655 (8th Cir. 2003) (noting a Congressional subcommittee estimated the *yearly* cost of all unsolicited faxes sent to a single recipient to be approximately $100).  Thus, a class member's total damages from receiving a single unsolicited fax could be no more than $600.  With respect to defense costs, assuming Western Heritage paid $100,000 to defend the underlying lawsuit and there were 33,073 faxes sent—estimates Fun

Services does not dispute—the cost of defense would be about $3.02 for each class member's claim.[11]   Accordingly, the Court finds the individual class members' claims cannot possibly exceed $650 per claim, much less the deductible amount of $1,000.  Therefore, Western Heritage does not owe Asphalt Wizards a duty to indemnify in the underlying lawsuit.

### III.   The endorsement requires Western Heritage to defend the underlying lawsuit irrespective of whether the deductible can be met.

Finally, the Court considers whether Western Heritage owes a duty to defend the underlying lawsuit.  Although Fun Services lacks standing to bring any counterclaims in this case, as a defendant in this lawsuit, it may still move for summary judgment on Western Heritage's affirmative claim that it owes no duty to defend.  *See* Fed. R. Civ. P. 56(a) (holding a party may move for summary judgment on any part of any claim or defense in the lawsuit).

An insurer has a duty to defend if, "at the outset of the case" (that is, from reading the allegations in the petition), there is a "potential or possible liability" to pay.  *McCormack Baron Mgmt. Servs.*, 989 S.W.2d at 170.  The duty to defend is not based on the probable liability to pay based on the facts as later ascertained through trial or summary judgment.  *Id.*  At the outset of the case, before Fun Services elected to limit the class members' recovery to $500 per statutory violation,[12] it appeared that the class claims against Asphalt Wizards might be risks within the scope of the Policies and result in possible liability under the Policies, thus Western Heritage owes Asphalt Wizards a duty to defend.   411 S.W.3d 258, 268-72 (Mo. 2013).  Furthermore, although no class member's claim will exceed the deductible, the deductible endorsement states, "[t]he terms of the policy, including those with respect to the Company's

---

[11] This analysis would not change even if the cost of defense were dramatically higher.  For example, quadrupling the defense costs to $400,000 would only increase the per-claim cost of defense to $12.08.

[12] The TCPA provides for treble damages if the plaintiff shows the defendant "willfully or knowingly" violated the statute.  47 U.S.C. U.S.C. § 227(b)(3).  Thus, at the outset of the litigation, the potential liability per-claim was more than $2,000.

rights and duties with respect to *the defense of suits . . . apply irrespective of the application of the deductible amount*." (Emphasis added.) This express language means Western Heritage must defend the underlying lawsuit irrespective of whether any class members' claim exceeds $1,000.

Consequently, although Western Heritage owes no duty to indemnify in the underlying action, it owes a duty to defend.

## Conclusion

For the foregoing reasons, the parties' cross-motions for summary judgment (Docs. 66 and 83) are GRANTED IN PART and DENIED IN PART. In sum, the Court holds: (1) Fun Services lacks standing to assert any counterclaims against Western Heritage; (2) Western Heritage waived its coverage defenses by failing to issue a timely reservation of rights letter to Asphalt Wizards; (3) the Policies' $1,000 deductible applies on a per-claim and per-person basis; (4) this deductible exceeds the amount of damages that could possibly be awarded to a single class member in the underlying suit, thus Western Heritage owes no duty to indemnify; but (5) Western Heritage owes a duty to defend the underlying lawsuit.

**IT IS SO ORDERED.**

Date:  June 3, 2014                                    /s/ Greg Kays                              
                                                                GREG KAYS, CHIEF JUDGE
                                                                UNITED STATES DISTRICT COURT